IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | |
|---|---|
| Jeffrey Noble,<br><br>Plaintiff,<br>v.<br><br>Town of Mooresville, North Carolina;<br>Christopher Quinn, in his official and individual capacities; Tracey Jerome, in her official capacity;<br>Chris Carney, in his individual capacity;<br><br>Defendants. | CASE NO.: 5:26-CV-6 |

## COMPLAINT AND JURY DEMAND

### Introduction

1. This is a civil-rights whistleblower retaliation action brought under 42 U.S.C. § 1983 to remedy Defendants' coordinated misuse of governmental authority to silence, punish, and remove Plaintiff, Jeffrey Noble, after he internally reported serious misconduct involving the sitting Mayor of Mooresville.

2. Plaintiff's protected activity consisted of reporting – internally and through proper channels – the existence and contents of municipal surveillance footage and access-control records showing the Mayor's extended after-hours occupancy of Town Hall with a female companion, triggering security alarms and police response.

3. Rather than investigate the misconduct, Defendants: suppressed the video evidence; restricted internal access to it; advanced pretextual narratives; accused Plaintiff of leaking information without evidence; subjected Plaintiff to coercive "administrative" investigation

tactics; placed Plaintiff on indefinite leave; and ultimately forced his separation from employment.

4. This case is not about a leak. It is about retaliation for telling the truth and weaponizing police and investigative authority to protect politically connected officials.

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the majority of events giving rise to these claims occurred in Iredell County, North Carolina, within the Western District.

8. Plaintiff Jeffrey Noble is a resident of North Carolina and was employed by the Town of Mooresville in its Innovation and Technology Department.

9. Defendant Town of Mooresville is a North Carolina municipal corporation responsible for the policies, customs, and practices challenged herein.

10. Defendant Christopher Quinn was at all relevant times a senior Town official with authority over Plaintiff's employment. He is sued in his individual and official capacities.

11. Defendant Tracey Jerome is the Town Manager of Mooresville and is sued in her official capacity as a final policymaker.

12. Defendant Chris Carney was at all relevant times the Mayor of Mooresville and is sued in his individual capacity for actions taken under color of state law.

### Plaintiff's Role and Responsibilities

13. Plaintiff's duties included administration of Town Hall access-control systems, badge credentials, surveillance systems, and related security infrastructure.

14. Plaintiff routinely reviewed door-access logs, badge activity, and surveillance footage to identify unauthorized access, security risks, and policy violations.

### Ticket #36967 and Discovery of Irregular Access Activity

15. On or about October 7, 2024, the Town created IT Ticket #36967 requesting modifications to door-access permissions.

16. On October 15, 2024, while working Ticket #36967, Plaintiff reviewed badge-access logs and identified irregular after-hours entries associated with the Mayor's credentials.

17. The logs reflected entry into Town Hall shortly after midnight on or about October 10, 2024, well outside normal business hours.

### Surveillance Footage Reviewed by Plaintiff

18. Plaintiff reviewed Town Hall surveillance footage corresponding to the access-log activity.

19. The footage showed Mayor Chris Carney entering Town Hall after midnight accompanied by an adult woman who was not readily identifiable as a Town employee.

20. The footage showed extended after-hours occupancy – approximately four and a half hours – including movement through secured areas such as the third-floor management suite.

21. Plaintiff observed conduct inconsistent with Town ethics and security policies, including the Mayor walking through Town Hall hallways without pants for an extended period.

22. Motion detectors were triggered during this period, and Mooresville Police Department officers responded to Town Hall.

23. During the police response, the woman retreated into the Mayor's office, and officers did not enter or inspect that office despite searching surrounding areas.

24. Plaintiff later learned the woman was Jamie Gatton, a communications consultant who, upon information and belief, was being paid by or contracting with the Town at the time.

### Plaintiff's Internal Reporting (Protected Speech)

25. Plaintiff did not disseminate the video publicly and did not provide the video to any media outlet.

26. Plaintiff reported his findings internally, beginning on or about October 15, 2024, to his supervisors within the IT Department.

27. Plaintiff reasonably believed the footage reflected misuse of municipal property, security breaches, ethical violations, and matters of significant public concern.

28. Plaintiff's reports were made pursuant to his job responsibilities and consistent with Town whistleblower and ethics policies.

### Suppression and Containment of the Video Evidence

29. Following Plaintiff's report Town leadership restricted access to the surveillance footage and limited who within the Town and within the Police Department could be briefed on its contents.

30. From approximately October 17, 2024 through November 12, 2024, the Mayor took a multi-week leave of absence.

31. In November 2024, WBTV submitted a formal public-records request seeking Town Hall surveillance footage for the relevant time period.

32. The Town admitted the footage existed but refused to release it, asserting broad and pretextual exemptions under the North Carolina Public Records Act.

33. The Town's refusal became the subject of separate state-court litigation (Iredell County File Number 25CVS002134-480) in which the Town admitted: the Mayor's after-hours entry; police response to Town Hall alarms; and the existence of the surveillance system.

34. The Town's litigation posture mirrored its internal approach: suppress the video, not investigate the conduct.

### Retaliation Against Plaintiff

4 of 14

Case 5:26-cv-00006-SCR-DCK    Document 1    Filed 01/12/26    Page 4 of 15

35. As public and internal scrutiny increased, Defendants shifted focus away from the Mayor's conduct and toward Plaintiff.

36. Plaintiff was accused – without evidence – of leaking information to the media.

37. Plaintiff was placed on administrative leave and subjected to escalating restrictions, isolation, and intimidation.

### Coercive "Administrative" Investigation

38. On June 17, 2025, Plaintiff was compelled to attend an "administrative interview" conducted by US ISS, a third-party investigator retained by the Town.

39. Present at the interview were US ISS investigators, a Mooresville Police Department Detective, and a police K-9 unit.

40. Plaintiff was informed he was required to answer questions as a condition of employment and was prohibited from recording the interview.

41. Plaintiff had not been provided advance notice of the allegations against him.

42. During the interview, Plaintiff was accused – based on assertions by Jamie Gatton's legal counsel – of leaking information.

43. Plaintiff denied the allegations and reiterated that he had never released the surveillance footage.

44. Investigators advised Plaintiff that approximately three terabytes of data from his work devices had been reviewed.

45. The setting, personnel, and tactics of the interview were intimidating and punitive, not neutral or fact-finding, including the deliberate placement of a police K-9 immediately adjacent to Plaintiff during questioning.

### Constructive Discharge

46. On or about July 3, 2025, Plaintiff was informed by Defendant Quinn that termination of his employment was being recommended.

47. By that time, Plaintiff had been: placed on indefinite leave; publicly and internally stigmatized; subjected to coercive investigative tactics; and stripped of any meaningful path back to employment.

48. Plaintiff's separation constituted a constructive discharge.

### Municipal Policy, Custom, and Ratification

49. Defendants' actions were undertaken pursuant to: policies or customs tolerating retaliation against whistleblowers; failure to discipline politically connected officials; and ratification by final policymakers.

50. The Town used police and investigative resources to protect the Mayor and punish the employee who reported misconduct.

### CLAIMS FOR RELIEF

### First Claim for Relief:

### First Amendment Retaliation (42 U.S.C. § 1983)

51. Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

52. Plaintiff engaged in speech and conduct protected by the First Amendment when he internally reported matters of significant public concern, including misuse of municipal property, security breaches, ethical violations, and potential unlawful conduct by high-ranking Town officials.

53. Plaintiff's speech addressed issues of public integrity, government accountability, and public safety, and was made pursuant to his professional obligations and ethical duties.

54. Defendants were aware of Plaintiff's protected speech and reporting activities.

55. Following Plaintiff's protected activity, Defendants subjected Plaintiff to adverse employment actions, including but not limited to administrative leave, professional isolation, coercive investigation tactics, reputational smearing, and constructive discharge.

56. Defendants' actions would chill a person of ordinary firmness from engaging in similar protected speech.

57. Plaintiff's protected speech was a substantial or motivating factor in Defendants' retaliatory actions.

58. Defendants' actions were not narrowly tailored to serve any legitimate governmental interest and were undertaken for the purpose of silencing, punishing, and deterring Plaintiff's protected speech.

59. By these actions, Defendants violated Plaintiff's rights under the First Amendment to the United States Constitution.

60. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined by a jury.

## Second Claim for Relief:

## Fourteenth Amendment Due Process – Stigma-Plus (42 U.S.C. § 1983)

61. Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62. Defendants made and disseminated false, misleading, and stigmatizing accusations against Plaintiff, including allegations that Plaintiff leaked confidential information and engaged in misconduct.

63. These accusations were made in connection with and contemporaneous to Defendants' actions to suspend, investigate, and remove Plaintiff from his employment.

64. The stigmatizing statements harmed Plaintiff's reputation, standing, and good name, and foreclosed future employment opportunities in his field.

65. Defendants imposed tangible adverse employment consequences on Plaintiff, including indefinite administrative leave and constructive discharge, without providing adequate notice, a meaningful opportunity to respond, or a name-clearing hearing.

66. Defendants' actions deprived Plaintiff of liberty and property interests protected by the Due Process Clause of the Fourteenth Amendment.

67. By failing to afford Plaintiff constitutionally required process, Defendants violated Plaintiff's rights under the Fourteenth Amendment.

68. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined by a jury.

### Third Claim for Relief:

### Municipal Liability (Monell) (42 U.S.C. § 1983)

69. Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

70. At all relevant times, Defendants acted pursuant to official policies, customs, practices, or usages of the Town of Mooresville.

71. These policies, customs, and practices included, but were not limited to: retaliating against employees who report misconduct by politically connected officials; suppressing or restricting access to evidence of official wrongdoing; utilizing police and investigative resources to protect Town leadership rather than investigate misconduct; failing to train, supervise, or discipline employees regarding whistleblower protections and constitutional rights.

72. The unconstitutional actions taken against Plaintiff were ratified and approved by final policymakers of the Town, including senior administrative leadership.

73. The Town's policies, customs, and ratification were the moving force behind the constitutional violations suffered by Plaintiff.

74. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined by a jury.

### Fourth Claim for Relief:

### Civil Conspiracy to Violate Civil Rights (42 U.S.C. § 1983)

75. Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

76. At all relevant times, Defendants, acting under color of state law, reached an agreement, understanding, or meeting of the minds to retaliate against Plaintiff for engaging in constitutionally protected activity and to deprive him of rights secured by the First and Fourteenth Amendments.

77. The object of the conspiracy included, but was not limited to: suppressing or limiting access to evidence of misconduct by a politically connected official; shifting scrutiny away from that misconduct and towards Plaintiff; accusing Plaintiff, without evidence, of leaking information; utilizing police, investigative, and administrative authority to intimidate and silence Plaintiff; and removing Plaintiff from his employment in retaliation for his protected conduct.

78. In furtherance of the conspiracy, Defendants committed overt acts, including but not limited to: restricting internal access to surveillance footage and related records; coordinating responses among Town leadership, police personnel, and outside investigators; subjecting Plaintiff to a coercive and intimidating "administrative" investigation; placing Plaintiff on

indefinite administrative leave; and recommending or effectuating Plaintiff's termination or constructive discharge.

79. Defendants knew or reasonably should have known that their actions would violate Plaintiff's clearly established constitutional rights.

80. As a direct and proximate result of Defendants' conspiratorial conduct, Plaintiff was deprived of his rights under the First and Fourteenth Amendments to the United States Constitution.

81. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined by a jury.

## Fifth Claim for Relief:

## Declaratory and Injunctive Relief (42 U.S.C. §§ 2201-2202)

82. Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

83. An actual and justiciable controversy exists between Plaintiff and Defendants concerning whether Defendants' acts, policies, customs, and practices violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and North Carolina public policy.

84. Defendants' conduct, unless declared unlawful and enjoined, is capable of repetition and continues to cause Plaintiff ongoing harm, including reputational injury and impairment of future employment opportunities.

85. Plaintiff seeks a declaration that Defendants' actions, policies, customs, and practices: constituted unlawful retaliation for protected speech; deprived Plaintiff of procedural due process and a meaningful name-clearing opportunity; and violated clearly established constitutional rights.

86. Plaintiff further seeks prospective injunctive relief to prevent ongoing and future violations, including relief necessary to restore Plaintiff's good name and prevent continued retaliation.

87. Declaratory and injunctive relief are appropriate, necessary, and in the public interest to ensure governmental accountability and to deter similar constitutional violations in the future.

## Sixth Claim for Relief:

## Wrongful Discharge in Violation of North Carolina Public Policy

88. Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

89. At all relevant times, Plaintiff was an employee of Defendant Town of Mooresville and performed his duties in good faith and in accordance with his job responsibilities.

90. Defendants terminated Plaintiff's employment, or in the alternative, subjected Plaintiff to working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign, constituting a constructive discharge.

91. North Carolina public policy, as expressed in the North Carolina Constitution, the North Carolina General Statutes, and controlling judicial decisions, prohibits the discharge of an employee for refusing to engage in unlawful or unethical conduct, for reporting governmental misconduct, or for refusing to suppress, conceal, or misrepresent evidence relating to public wrongdoing.

92. This public policy includes, but is not limited to, the protection of public integrity, transparency in government, the preservation of evidence, and the prevention of obstruction of justice and abuse of public office.

93. North Carolina public policy is expressly embodied in, inter alia, the North Carolina Whistleblower Act, N.C. Gen. Stat. §§ 126-84 and 126-85, which prohibit retaliation against

public employees who report misuse of public resources, abuse of authority, or violations of law; the North Carolina Public Records Act, N.C. Gen. Stat. § 132-1 et seq., which mandates transparency, preservation, and public access to government records and prohibits their concealment or suppression; and Article I, Sections 14 and 18 of the North Carolina Constitution, which protect freedom of speech, due process, and governmental accountability. Defendants' actions violated these clearly established public policies by retaliating against Plaintiff for reporting governmental misconduct and refusing to participate in the suppression, concealment, or misrepresentation of public records and evidence.

94. Plaintiff acted in furtherance of these clearly established public policies by internally reporting governmental misconduct and by refusing to participate in or acquiesce to the suppression, concealment, or misrepresentation of evidence.

95. Defendants discharged Plaintiff, or forced his constructive discharge, because of Plaintiff's protected conduct and refusal to violate public policy.

96. Plaintiff's protected conduct was a substantial and motivating factor in Defendants' decision to terminate his employment.

97. Defendants' actions were willful, retaliatory, and undertaken in knowing disregard of North Carolina public policy and the public interest.

98. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and grant the following relief:

1. Plaintiff hereby requests that this pleading be accepted as an affidavit for all purposes permitted by law.

2. Declaratory relief declaring that Defendants' acts, policies, customs, and practices violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and North Carolina public policy;

3. Compensatory damages against all Defendants, jointly and severally, for lost wages, lost benefits, loss of earning capacity, emotional distress, reputational harm, and other injuries, in an amount to be determined by a jury;

4. Punitive damages against the individual Defendants for their willful, malicious, and reckless disregard of Plaintiff's federally protected rights;

5. Injunctive relief, including but not limited to: i. a prompt and meaningful name-clearing hearing; ii. Correction, expungement, or annotation of adverse personnel records; and iii. An order prohibiting further retaliation against Plaintiff for engaging in protected activity;

6. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

7. Pre-judgment and post-judgment interest as allowed by law;

8. Plaintiff demands a trial by jury on all issues so triable; and

9. Any and all other relief as the Court deems just, proper, and appropriate.

Dated: January 12, 2026

/s C. Christopher Adkins

C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

/s Christerfer R. Purkey
N.C. Bar No. 53584
Rech Law, P.C.
18125 W. Catawba Avenue
Cornelius, North Carolina 28031

(704) 228-2790 phone
(704) 909-7410 fax
cpurkey@rechlaw.com
*Admission in W.D.N.C. pending

*Counsel for Plaintiff*

\*\*\* <u>Verification Page to Follow</u> \*\*\*

## VERIFICATION

I, **Jeffrey Noble**, being duly sworn, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Complaint and know the contents thereof; that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief; and that the matters stated upon information and belief are believed by me to be true.

Executed on this 11 day of January, 2026.

_____
**Jeffrey Noble**

STATE OF NORTH CAROLINA

COUNTY OF Mecklenburg

Subscribed and sworn to (or affirmed) before me this 11 day of January, 2026, by **Jeffrey Noble**, who is personally known to me or who has produced _Drivers License_ as identification.

_____
Notary Public

My Commission Expires: Aug. 16, 2028

[Notary Seal]

CHARLES CHRISTOPHER ADKINS
Notary Public
North Carolina
Mecklenburg County