UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. 5:26-CV-6

| | | |
|---|---|---|
| JEFFREY NOBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF DEFENDANTS' MOTION TO** |
| TOWN OF MOORESVILLE, NORTH | ) | **DISMISS PLAINTIFF'S COMPLAINT** |
| CAROLINA; CHRISTOPHER QUINN, In | ) | **Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6)** |
| his Official and Individual Capacities, | ) | |
| TRACEY JEROME, In her Official | ) | |
| Capacity; CHRIS CARNEY, In his | ) | |
| Individual Capacity, | ) | |
| | ) | |
| Defendants. | | |

**NOW COME** Defendants Town of Mooresville, Christopher Quinn in his official and individual capacities, Tracey Jerome in her official capacity, and Chris Carney in his individual capacity, (collectively "Defendants"), by and through undersigned counsel, and pursuant to Local Rule 7.1, Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), and file this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint.

## STATEMENT OF THE CASE

Plaintiff commenced this suit on January 12, 2025, and brings claims against Defendants under 42 U.S.C. § 1983 for (1) First Amendment Retaliation; (2) Fourteenth Amendment Due Process; (3) a *Monell* claim; (4) Civil Conspiracy to Violate Civil Rights; (5) and brings a claim for Wrongful Discharge in Violation of North Carolina Public Policy. *See generally*, (DE 1). Defendants now timely move to dismiss Plaintiff's Complaint, in its entirety.

## STATEMENT OF RELEVANT FACTS

## I. Plaintiff's Employment with The Town

Plaintiff alleges he was employed by the Town in its Innovation and Technology Department, and contends his duties included "administration of Town Hall access-control systems, badge credentials, surveillance systems, and related security infrastructure." (DE 1, ¶¶ 8–9, 13). Per the Complaint, "Plaintiff routinely reviewed door-access logs, badge activity, and surveillance footage to identify unauthorized access, security risks, and policy violations." *Id*. at ¶ 14. He represents that on October 7, 2024, "the Town created IT Ticket #36967 requesting modifications to door-access permissions," and while he was working on this ticket on October 15, 2024, he "reviewed badge-access logs and identified irregular after-hours entries associated with the Mayor's credentials." *Id*. at ¶¶ 15-16.

Plaintiff claims he "reviewed Town Hall surveillance footage corresponding to the access-log activity" which purportedly depicts the Mayor "entering Town Hall after midnight accompanied by an adult woman," whom Plaintiff represents he later learned was named Jamie Gatton, "a communications consultant" Plaintiff claims was "being paid by or contracting with the Town at that the time." *Id*. at ¶¶ 19, 24. According to the Complaint, "Plaintiff observed conduct inconsistent with Town ethics and security policies, including the Mayor walking through Town Hall hallways without pants for an extended period." *Id*. at ¶ 21. "Motion detectors were triggered during this period, and Mooresville Police Department officers responded to Town Hall," and "the woman retreated into the Mayot's office," which the officers did not search. *Id*. at ¶¶ 22-23.

Plaintiff contends that he "did not disseminate the video publicly and did not provide the video to any media outlet," but did report "his findings internally, beginning on or about October 15, 2024, to his supervisors within the IT Department." *Id*. at ¶¶ 25-26. Plaintiff asserts his opinion that he "reasonably believed the footage reflected misuse of municipal property, security breaches,

ethical violations, and matters of significant public concern," and claims his "reports were made pursuant to his job responsibilities and consistent with Town whistleblower and ethics policies." *Id*. at ¶¶ 27-28.

## II.    Events Subsequent to October 15, 2024

Plaintiff alleges that following his report, the Mayor took a leave of absence, and "Town leadership restricted access to the surveillance footage and limited who within the Town and within the Police Department could be briefed on its contents." *Id*. at ¶¶ 29-30.  Plaintiff makes other assertions that the Town received a public-records request for the surveillance footage, and is engaged in separate state-court litigation concerning the footage. *Id*. at ¶¶ 31-33.  He further speculates that the "Town's litigation posture [in the state case] mirrored its internal approach: suppress the video, not investigate the conduct." *Id*. at ¶ 34.

Plaintiff alleges he was accused of "leaking information to the media," and was placed on administrative leave, but does not identify who made that decision, or when. *Id*. at ¶¶ 36-37.  On June 17, 2025, Plaintiff participated in an "administrative interview" conducted by US ISS investigators, a "third-party," and attended by a Mooresville Police Department Detective and "police K-9 unit." *Id*. at ¶¶ 38-39.  In the investigation, he complains that he was instructed to "answer questions as a condition of employment" and was "prohibited from recording the interview." *Id*. at ¶¶ 40-41.  Plaintiff claims he was "accused — based on assertions by Jamie Gatton's legal counsel — of leaking information." *Id*. at ¶¶ 42-43.  "On or about July 3, 2025, Plaintiff was informed by Defendant Quinn that termination of his employment was being recommended." *Id*. at ¶ 46.  Plaintiff contends that the circumstances of his separation constitute a constructive discharge. *Id*. at ¶ 48.

## STANDARD OF REVIEW

4921-4551-3879, v. 2

Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 479-80 (4th Cir. 2005). Generally, a motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448,452 (4th Cir. 2012). In ruling on a motion made under Rule 12(b)(1), the Court may "regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted).[1]

A motion made pursuant to Rule 12(b)(2) challenges a Complaint for lack of personal jurisdiction. Under Rule 12(b)(2), the Plaintiff must prove by a preponderance of the evidence that the Court can exercise personal jurisdiction. *See, e.g., Grayson v. Anderson,* 816 F.3d 262, 267 (4th Cir. 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Further, a

---

[1] The Affidavit of Cheryl Johnson (**Exhibit 1**) and accompanying policy of insurance for the applicable period (**Exhibit 2**) are submitted strictly in support of Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(2), and may properly be considered accordingly without converting the Motion to one for summary judgment.

claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556-557).

The Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v. U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

## ARGUMENT

### I. Plaintiff's Duplicative Official Capacity Claims Should Be Dismissed.

When a governmental employee is sued in his or her official capacity, the Fourth Circuit has held the claim is against the governmental office the employee holds, rather than the particular individual occupying the office. *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (upholding dismissal of claims against defendants in their official capacities as Chiefs of Police, where local government that employed them was named as a party); *see also Armstrong v. City of Greensboro*, 190 F.Supp.3d 450, 463 (2016) ("[D]uplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed."); *Kentucky v. Graham*, 473 U.S. 159, 165-167 (1985) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.").

4921-4551-3879, v. 2

Here, Plaintiff has simultaneously alleged official capacity claims against Chris Quinn and Tracey Jerome, and claims against their employer, the Town. All Plaintiff's claims against Mr. Quinn and Ms. Jerome in their official capacities are redundant, unnecessary, and should be dismissed with prejudice.

## II. Plaintiff's Individual Capacity Claims Against Mayor Carney and Chris Quinn Should Be Dismissed Because Plaintiff Fails to Meet the Pleading Requirements of Rule 8.

A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Merely offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor are "naked assertions devoid of further factual enhancement" sufficient. *Id.*

Plaintiff's Complaint falls woefully short of this standard. Throughout, Plaintiff makes conclusory statements without any factual enhancement, and spouts "unadorned, the defendant-unlawfully-harmed-me accusation[s]," which are insufficient to meet the Rule 8 standard. *Id.* To make matters worse, most, if not all, of Plaintiff's claims are not directed at any specific Defendant. Due to this failure, Defendants cannot identify what Plaintiff claims each Defendant allegedly did, or decipher why that Defendant's alleged conduct constitutes a violation of law. *See McClain v. Causey*, Case No. 1:20-cv-695, 2021 U.S. Dist. LEXIS 5529, at *14, 2021 (M.D.N.C. Jan. 12, 2021) ("A pleading that vaguely attributes discrete actions to Defendants rather than to a specific party deprives [the defendants] and the court of the opportunity of determining whether there are sufficient facts to make a claim against each Defendant plausible.").

Despite naming the Mayor in his individual capacity, Plaintiff offers no factual allegations directed at any action the Mayor took towards Plaintiff with respect to Plaintiff's employment with the

4921-4551-3879, v. 2

Town. Plaintiff's only specific references to the Mayor concern his depiction in surveillance footage. He does not plead that the Mayor was involved in placing Plaintiff on administrative leave, the administrative interview, or his so-called constructive discharge. Plaintiff's only explanation as to why the Mayor has been named in this suit is a single allegation that he "is sued in his individual capacity for actions taken under color of state law." (DE 1, ¶ 12). This is utterly insufficient to meet Plaintiff's pleading burden under Rule 8, and Plaintiff's claims against the Mayor should be dismissed.

The same is equally true of Plaintiff's threadbare allegations against Chris Quinn. Plaintiff's only specific allegation addressed to Mr. Quinn is that "[o]n or about July 3, 2025, Plaintiff was informed by Defendant Quinn that termination of his employment was being recommended." *Id*. at ¶ 36. Plaintiff does not even plead that <u>Mr. Quinn</u> recommended that Plaintiff's employment be terminated, and pleads no facts establishing that Mr. Quinn had any involvement or role in the claimed administrative leave or administrative investigation. In fact, the opposite is true, as Plaintiff names the individuals present at the interview as "US ISS investigators, a Mooresville Police Department Detective, and a police K-9 unit." *Id*. at ¶ 39. From his own pleading, it is readily apparent that neither Mr. Quinn, nor Mayor Carney, were present at that interview, which Plaintiff himself admits was conducted by a third-party investigator.

Because Plaintiff fails to meet the pleading standards set by the Federal Rules, his individual capacity claims against Mayor Carney and Mr. Quinn must be dismissed.

## III. Plaintiff's Fourteenth Amendment Claim Fails.

To establish a protected liberty interest and proceed on his Fourteenth Amendment claim, Plaintiff must plead facts sufficient to show the charges against him "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his

termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). In such instances, a hearing is necessary "to provide the person an opportunity to clear [her] name." *Board of Regents v. Roth*, 408 U.S. 564, 573 n.12 (1972). "Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny his future employment for other reasons." *Id*. "If the public employee can establish a protected liberty interest under this framework, the employee is entitled to due process, which in this context involves a 'name-clearing hearing.'" *Harrell v. City of Gastonia*, 392 F. App'x 197, 203 (4th Cir. 2010).

But the Due Process Clause "'is not a guarantee against incorrect or ill-advised personnel decisions.'" *Sciolino,* 480 F.3d at 649 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Rather, "due process requires simply the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Harrell*, 392 F. App'x at 203, citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Here, the only protected liberty interest Plaintiff asserts is that "Defendants made and disseminated false, misleading, and stigmatizing accusations against Plaintiff, including allegations that Plaintiff leaked confidential information and engaged in misconduct." (DE 1, ¶ 62). But Plaintiff provides no support whatsoever establishing the required second element of this claim, i.e., that any Defendant <u>publicly</u> accused him of leaking confidential information and engaging in misconduct. *Sciolino,* 480 F.3d at 646. In *Sciolino*, the Fourth Circuit held "that a *purely private* communication of the reasons for an employee's termination cannot form the basis for a due process claim, because there is no possibility of the allegation affecting the individual's Fourteenth Amendment liberty interests." *Id.*, 480 F.3d at 647 (emphasis in original) (relying on *Bishop v. Wood* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

In fact, the exact opposite is true, as Plaintiff specifically alleges that "[d]uring the interview" on June 17, 2025, "Plaintiff was accused — based on assertions by Jamie Gatton's legal counsel — of leaking information." (DE 1, ¶ 42) (emphasis added). While Plaintiff does not even identify who in the interview accused him, it plainly could not have been one of the named individual Defendants, who were not present at the interview. Moreover, Plaintiff contends the accusation was made based on information provided by Ms. Gatton's legal counsel, who is neither a named Defendant in this case or the Town's attorney.

Nor can Plaintiff satisfy the required element that the statements purportedly placing a "stigma" on his reputation were made in conjunction with his termination or demotion. *Sciolino*, 480 F.3d at 646. Plaintiff continuously refers to his separation as a "constructive discharge," and it is apparent from his own pleading that he resigned. (DE 1, ¶¶ 48, 55, 65, 78, 90, 95). Plaintiff's decision to resign rather than face possible termination for cause (*Id*. at ¶ 90) "'effectively dispose[s] of any liberty interest claim he might assert.'" *Harrell*, 392 F. App'x at 203, citing *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172–74 n. 5 (4th Cir. 1988).

## IV.    Plaintiff Was Not Retaliated Against In Violation of The First Amendment.

A public employee suing under 42 U.S.C. § 1983 for First Amendment retaliation must show that:

(1)    they spoke as a citizen about a public concern and not a personal interest;

(2)    they had an interest in speaking out that outweighed the government's interest in providing public services; and

(3)    their speech was a substantial factor in the adverse employment action.

*Penley v. McDowell Cnty. Bd. of Educ.,* 876 F.3d 646, 654 (4th Cir. 2017) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)).

4921-4551-3879, v. 2

Here, Plaintiff cannot show that the alleged speech was made outside of his official duties as a member of the Town's IT Department. The Supreme Court has held the "the First Amendment does not protect statements that public employees make 'pursuant to their official duties.'" *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 587 (4th Cir. 2017), citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014). The relevant inquiry concerns the employee's actual, ordinary job duties, *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009), to "discern whether the speech at issue occurred in the normal course of those ordinary duties." *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015) (quoting *Garcetti*, 547 U.S. at 422).

In this case, Plaintiff pleads that his "duties included administration of Town Hall access-control systems, badge credentials, <u>surveillance systems</u>, and <u>related security infrastructure</u>." (DE 1, ¶ 13) (emphasis added). He further alleges that as part of his job, he "<u>routinely reviewed</u> door-access logs, <u>badge activity</u>, and <u>surveillance footage to identify unauthorized access, security risks, and policy violations</u>." *Id*. at ¶ 14 (emphasis added). He readily admits that when he "reviewed badge-access logs and identified irregular after-hours entries associated with the Mayor's credentials," he was working in his capacity as a member of the IT Department, and was actively "working Ticket #36967," submitted by the Town to request "modifications to door-access permissions." *Id*. at ¶¶ 15-16. Plaintiff then "reported his findings internally, beginning on or about October 15, 2024, to his supervisors within the IT Department." *Id*. at ¶ 26.

In short, per his own admission, Plaintiff's "speech," i.e., the report to his supervisors in the IT Department, consisted of nothing more than statements he made pursuant to his official

duties, that occurred in the normal course of performing those ordinary duties, while he was engaged in work he "routinely" performed as an employee of the Town. Consequently, Plaintiff has not, as a matter of law, alleged that he engaged in speech protected by the First Amendment.

Nor can Plaintiff show a causal connection exists, i.e., that his unprotected speech was a substantial factor in any adverse action, as no such adverse action was taken. The First Amendment causation analysis is "rigorous" because the "protected expression must have been the 'but for' cause of the adverse employment action" before liability can attach. *Penley*, 876 F.3d at 654 (quoting *Ridpath v. Bd. of Gov'rs Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006)).

While the law prohibits government officials from engaging in retaliatory acts in response to speech in fear of a chilling effect, "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (*quoting DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir. 1995). With respect to showing the retaliatory action adversely affected constitutionally protected speech, Plaintiff must show the conduct "would deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Here, Plaintiff fails to establish any causal connection between the alleged protected speech and an adverse action, as no such adverse action was taken within the meaning of the applicable law. In the analogous context of Title VII retaliation claims, considering administrative leave in the context of Title VII, courts in this jurisdiction have consistently declined to find that administrative leave constitutes an adverse action. *See Lacasse v. Didlake, Inc*., 194 F. Supp. 3d 494, 504 (E.D. Va. 2016) (placing employee on paid administrative leave following employee's report about supervisor's harassment was "not an adverse employment action."); *see also Grice v.*

*Balt. Cty.*, No. JFM 07-1701, 2008 U.S. Dist. 91114, at *23 (D. Md. Nov. 5, 2008) (paid leave pending investigation not materially adverse); *Sturdivant v. Geren*, Civil Action No. 1:09-cv-586, 2009 U.S. Dist. LEXIS 109953, at *18 (E.D. Va. Nov. 19, 2009) (collecting cases and finding "no reasonable employee would have been dissuaded from making or supporting a charge of discrimination if he was put on paid administrative leave"); *Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (administrative leave with pay to allow investigation into employee was not an adverse action for retaliation purposes), *abrogated on other grounds by Burlington Northern*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Additionally, as Plaintiff notes in his Complaint, the investigation was initiated following allegations by a third party of Plaintiff leaking confidential information. (DE 1, ¶¶ 42-43). Investigation stemming from a third party complaint cannot be causally connected to alleged protected speech by Plaintiff.

**V.    Defendants Are Entitled to Qualified Immunity As to Plaintiff's First and Fourteenth Amendment Claims.**

Even if Defendants had violated Plaintiff's constitutional rights, which they did not, Plaintiff's claims are still barred by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials who are sued for civil damages are entitled to qualified immunity unless (1) the Complaint sufficiently alleges a violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). Notably, the right at issue must be defined with specificity. *City of Escondido, Cal v. Emmons,* ---U.S.----, 139 S.Ct. 500, 503, 202 L.Ed.2d 455 (2019).

Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In the First Amendment retaliation setting, Defendants are unaware of any Fourth Circuit case where our courts have ruled that a plaintiff has a clearly established constitutional right to not be placed on paid administrative leave pending an investigation following that employee's report of a concern that was made within the course of their duties. Nor are Defendants aware of any Fourth Circuit case where a court has found a plaintiff stated a claim for due process violations under a stigma-plus analysis where the plaintiff resigned, and the alleged stigmatizing remarks were not publicized.

## VI. Plaintiff Fails to State a Cognizable *Monell* Claim Against Defendants.

Since Plaintiff cannot establish liability under § 1983, His *Monell* claim must necessarily fail. *See, e.g., Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir. 1996); *Young v. City of Mt. Ranier,* 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear...that a section 1983 failure to train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."). Significantly, a municipality cannot "be held liable under § 1983 on a *respondeat superior* theory," as liability attaches to the Town and the Defendants in their official capacities only if the alleged deprivation of Plaintiff's constitutional rights was caused by an official Town policy or custom. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2035-2038 (1978); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

4921-4551-3879, v. 2

To properly allege a *Monell* claim under § 1983, Plaintiff "must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Jordan ex rel. Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994).

A municipal policy may arise: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority;" or "(3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens." [2] *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). Conversely, a municipal custom arises if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. The policies or customs must be the "moving force" behind the constitutional violation. *Id.*, 436 U.S. at 694, 98 S.Ct. at 2037-38.

## A. Plaintiff Fails to Allege The Existence of An Express Policy Under *Monell*.

First, Plaintiff does not plead, even in conclusory fashion, that an alleged constitutional deprivation arose pursuant to an <u>official, written Town policy</u>, such as a written directive, ordinance or regulation. Instead, Plaintiff asserts various deprivations purportedly attributable to Defendants, without identifying any actual underlying policy. In so doing, Plaintiff paints in exceptionally broad strokes, alleging:

> [t]hese policies, customs, and practices included, but were not limited to: retaliating against employees who report misconduct by politically connected officials; suppressing or

---

[2] It is unclear whether Plaintiff also contends a policy arose through an omission or failure to train theory. To the extent his cursory allegation that the Town's purported "policies, customs, and practices" included "failing to train, supervise, or discipline employees regarding whistleblower protections and constitutional rights," (DE 1, ¶ 71) this cannot establish *Monell* liability under a failure to train theory. *See Connick v. Tompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) ("A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability."). Accordingly, Plaintiff cannot establish a policy arose under this prong either.

restricting access to evidence of official wrongdoing; utilizing police and investigative resources to protect Town leadership rather than investigate misconduct; failing to train, supervise, or discipline employees regarding whistleblower protections and constitutional rights.

(DE 1, ¶ 71).

Plaintiff's oblique reference to "policies," lacking any further details, plainly does not describe an "express policy, such as a written ordinance or regulation." Accordingly, Plaintiff has not alleged an express municipal policy existed that caused the claimed deprivations, and cannot proceed under the first prong of *Monell*.

**B. Plaintiff Does Not Allege *Monell* Liability Arose Through Decisions of A Defendant with Final Policymaking Authority for The Town.**

Next, Plaintiff likewise fails to plead that a municipal policy arose through the decisions of a Defendant with final policymaking authority for the Town. A "final policymaker" has "the responsibility and authority to implement final municipal policy with respect to a particular course of action," and a municipality may be liable for an individual's decision "whose edicts or acts may fairly be said to represent official policy." *Lytle*, 326 F.3d at 472 (internal citation omitted). For the action to properly be considered a municipal policy, the decisionmaker must possess authority to establish "final policy <u>with respect to the subject matter in question</u>." *Lorbacher v. Housing Auth.*, 127 N.C. App. 663, 670, 493 S.E.2d 74 (1997) (emphasis added); *see also Lambert v. Town of Sylva*, 259 N.C. App. 294, 304, 816 S.E.2d 187 (2018) (municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered).

Here too, Plaintiff does not even attempt to claim Mayor Carney or Chris Quinn had policymaking authority for the Town, but alleges only that Tracey Jerome "is sued in her official capacity as a final policymaker." (DE 1, ¶ 11). However, Plaintiff does not allege any specific

facts directed at Ms. Jerome's purported policymaking authority, and instead, only vaguely alleges the "unconstitutional actions taken against Plaintiff were ratified and approved by final policymakers of the Town, including senior administrative leadership." *Id*. at ¶ 72. Plaintiff's conclusory allegations, devoid of any factual support, bar his *Monell* claim under this prong as well.

### C. Plaintiff Has Not Pled The Existence of A Custom Under *Monell*.

Nor does Plaintiff adequately plead that liability exists for a widespread illegal custom or usage under *Monell*, which requires him to allege facts sufficient to show (1) the Town had "'actual or constructive knowledge' of the custom and usage by its responsible policymakers,' and (2) that there was a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 210 (4th Cir. 2002) (quoting *Spell,* 824 F.2d at 1391).

Plaintiff wholly fails to plead an illegal custom or usage exists, but simply makes repeated references to "policies, customs, and practices" as a collective whole, without support. (DE 1, ¶¶ 9, 49, 70-71, 73, 83, 85). However, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle*, 326 F.3d at 474 (quoting *Carter*, 164 F.3d at 220). Rather, it is only where a history of widespread abuse of constitutional rights exists that knowledge can be imputed to a municipality. *Monell*, 436 U.S. at 691.

Plaintiff's complaints concerning any specific actions taken towards him boil down to two assertions: 1) he was placed on administrative leave, although he never states when he was placed on such leave or who placed him on leave, and 2) he was subject to an administrative interview conducted by a third-party investigator on June 17, 2025. (DE 1, ¶¶ 37-38). Neither of these

allegations can establish a history of widespread abuse of constitutional rights, as they reflect the exact type of "isolated incidents" the Supreme Court has long deemed insufficient.

In sum, Plaintiff has not alleged sufficient facts from which one could reasonably infer that an unconstitutional policy or custom exists, much less that such policy or custom caused the alleged constitutional violations complained of, as *Monell* requires.

## VII. The Intracorporate Conspiracy Doctrine Bars Plaintiff's Civil Conspiracy Claim.

First, Plaintiff's civil conspiracy claim must fail since he has failed to plead a claim under § 1983, as noted above. There must be an underlying Constitutional deprivation to prevail on a conspiracy claim under § 1983. *See Nance v. City of Albemarle, North Carolina*, 520 F.Supp.3d 758, 801 (M.D.N.C. 2021) (dismissing § 1983 civil conspiracy claim where plaintiffs "failed to plausibly allege" constitutional deprivations); *Byrd v. Hopson*, 265 F.Supp. 2d 594, 599 (W.D.N.C. 2003) (Under North Carolina law, "there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct.").

To plead a cognizable civil conspiracy claim under § 1983, Plaintiff "must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg. W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). This burden is "weighty." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Hinkle*, 81 F.3d at 421). "While they need not produce direct evidence of a meeting of the minds, [plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to

4921-4551-3879, v. 2

accomplish a common and unlawful plan." *Id.* "[R]ank speculation and conjecture" are not enough. *Id.* at 422. Here, Plaintiff's conspiracy allegations amount to precisely the sort of "rank speculation and conjecture" our courts deem wholly insufficient to establish a cognizable claim. As noted above, Plaintiff has failed to even plead facts specific to the individual Defendants.

Even if Plaintiff had sufficiently pled a claim under 42 U.S.C. § 1983 for constitutional violations, the intracorporate conspiracy doctrine still dooms this claim. This doctrine, which applies to municipalities, "recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013); *Fox v. City of Greensboro*, 807 F.Supp.2d 476, 499 (M.D.N.C. 2011). Specifically, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy" because two agents of the same legal entity are not considered to be "two or more separate people" forming an agreement. *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769—771 (1984).

To put it succinctly, "a conspiracy between a corporation and its agents, acting within the scope of employment, is a legal impossibility." *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986) (upholding district court's ruling that plaintiff failed to allege a conspiracy because the complaint only named the company and its employees as conspirators). Plaintiff's threadbare civil conspiracy claim complains of "conspiratorial conduct" purportedly engaged in solely by Defendants, all of whom he contends are either officials or employees of the Town. (DE 1, ¶¶ 76-81).

## VIII. Plaintiff's Claim for Wrongful Discharge in Violation of North Carolina Public Policy Fails Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

### A. North Carolina Does Not Recognize A Claim for Constructive Discharge.

4921-4551-3879, v. 2

"North Carolina is an employment-at-will state." *Kurtzman v. Applied Analytical Indus.,* 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). As such, according to the North Carolina Supreme Court, "in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Id.* (citations omitted). "As a general rule, an employee-at-will has no claim for relief for wrongful discharge." *Tompkins v. Allen*, 107 N.C. App. 620, 622, 421 S.E.2d 176, 178 (1992).

In other words, absent <u>limited exceptions</u>, an employee "could generally be discharged for arbitrary, irrational, indifferent, or illogical reasons without any legal recourse." *Woods v. City of Wilmington*, 125 N.C. App. 226, 229, 480 S.E.2d 429, 432 (1997). One "narrow exception" to the at-will doctrine arises when an employee is terminated for a purpose in contravention of public policy. *Id.* at 320, 551 S.E.2d at 183; *Gibson v. Corning Inc.*, No. 5:14-CV-105-BO, 2015 WL 1880188, at *9 (E.D.N.C. Apr. 13, 2015).

Both North Carolina state courts and federal courts applying state law have repeatedly declined to expand "the public policy exception to the employment-at-will doctrine to include claims of constructive discharge." *Mitchell v. Bandag, Inc.*, 147 F. Supp. 2d 395, 400 (E.D.N.C. 1998) (citing *Graham v. Hardee's Food Systems, Inc.*, 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996)); *Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002); *DeWitt v. Mecklenberg County,* 73 F. Supp. 2d 589, 599 n.6 (W.D.N.C. 1999).

Throughout his Complaint, Plaintiff unmistakably characterizes his separation as "a constructive discharge." (DE 1, ¶¶ 48, 55, 65, 78, 90, 95). Plaintiff's attempts to salvage this claim by characterizing the various reasons he "felt compelled to resign" cannot save this cause of

4921-4551-3879, v. 2

action, as it is simply not recognized by our courts.[3]

### B. Plaintiff's State Law Claim for Wrongful Discharge Is Barred Because Defendants Are Entitled to Governmental Immunity.

Second, even if North Carolina law did recognize such a claim, the Town, and the Defendants named in their official capacities are entitled to governmental immunity. "Municipalities in North Carolina are immune from liability for their negligent acts arising out of governmental activities unless the municipality waives such immunity by purchasing liability insurance." *Anderson v. Town of Andrews,* 127 N.C. App. 599, 600, 492 S.E.2d 385, 386 (1997); *see also Patrick v. Wake Cnty. Dep't of Human Servs.,* 188 N.C. App. 592, 655 S.E.2d 920, 923 (2008).

"Governmental immunity is immunity from suit – not just immunity from having to pay damages at the conclusion of years of litigation." *Arrington v. Martinez*, 215 N.C. App. 252, 263, 716 S.E.2d 410, 417 (2011) (citing *Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 337-38, 678 S.E.2d 351, 354 (2009)). In the absence of some statute that subjects them to liability, the State, its municipalities, and officers and employees sued in their official capacities, are shielded from tort liability when discharging or performing a governmental function. *Thompson v. Town of Dallas, et al.*, 142 N.C. App. 688, 654, 543 S.E.2d 901, 904 (2001).

In this case, governmental immunity bars Plaintiff's wrongful discharge claim as <u>Plaintiff did not allege the Town waived immunity by purchase of insurance.</u> *See generally*, (DE 1). "Because it is a jurisdictional matter, a plaintiff's complaint must affirmatively demonstrate the basis for the waiver of immunity." *Arrington v. Martinez*, 215 N.C. App. at 263, 716 S.E.2d at

---

[3]Even if North Carolina did recognize claims for constructive discharge, a claim for wrongful discharge is only proper against the plaintiff's <u>employer</u>, which in this case, was the <u>Town</u> (DE 1, ¶8), not any of the individually named Defendants. *See Houpe v. City of Statesville*, 128 N.C. App. 334, 344 (1998).

417. A waiver of governmental immunity must be expressly pled in the complaint. *Clark v. Burke Cty.*, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994). "Absent such an allegation, the complaint fails to state a cause of action.'" *Can Am S., LLC v. State*, 234 N.C. App. 119, 125, 759 S.E.2d 304, 309 (2014) (internal citation omitted).

Further, the Town has not waived immunity by purchase of insurance applicable to this claim.[4] *See* (Ex. 1 - Johnson Aff.); (Ex. 2 - Policy). The Town only had one insurance policy in effect during the time period applicable to this lawsuit. *Id*. at ¶¶ 3-5. That policy contains a "non-waiver of governmental immunity endorsement" which indicates "[y]our purchase of this policy is not a waiver, under [N.C.G.S.] Section 160A-485 or [N.C.G.S.] Section 153A-435 or any amendments to those sections, of any governmental immunity that would be available to any insured had you not purchased this policy." (Ex. 2, p. 89).

North Carolina courts, including our federal district courts, have routinely recognized that purchasing insurance with a non-waiver provision such as the one in the Town's policy does not waive governmental immunity. *Craven v. Novelli*, 661 F. Supp. 3d 430, 454 (W.D.N.C. 2023) (analyzing the same provision in the Town of Mooresville's policy and finding "the Town has retained its governmental immunity from liability[.]"); s*ee also Evans v. Chalmers*, 703 F.3d 636, 656 (4th Cir. 2012) (citing North Carolina authority). As this Court previously held in *Craven*, the non-waiver provision contained in the Town's policy clearly establishes that the purchase of liability coverage does not constitute a waiver of available governmental immunity defenses.

### C. Plaintiff Is Not Entitled to Declaratory or Injunctive Relief.

---

[4] The Town has attached a true and accurate copy of the relevant general liability policy: The Princeton Excess & Surplus Lines Insurance Company, policy number 64-A3-EX-0000074-02 that was in effect from February 15, 2025 to March 1, 2026. *See* (Ex. 1); (Ex. 2). The insurance policy submitted and authenticated by the Affidavit of Ms. Johnson may properly be considered on a motion to dismiss for lack of jurisdiction. *Masselli & Lane, PC v. Miller & Schuh, PA,* 215 F3d 1320 (4th Cir. 2000).

Finally, Plaintiff cannot prevail on his claim for declaratory or injunctive relief. (DE 1, ¶¶ 85-86). Where, as here, a declaratory judgment would not clarify legal relations between the parties, the action serves no useful purpose and courts will not entertain it. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 592 (4th Cir. 2004). Plaintiff fails to advance any credible allegations supporting his claims against Defendants, and therefore, a declaratory judgment cannot clarify the parties' legal relations. Moreover, a court should only grant a declaratory judgment "when the judgment will serve a useful purpose in clarifying and settling legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). "Alternatively, when there is no risk of accrual of damages stemming from past actions, many courts have recognized that a declaratory judgment is generally unavailable when 'claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Port City Logistics, Inc. v. Chasewater Logistics*, *LLC*, No. 3:23-CV-541-RJC-DCK, 2024 U.S. Dist. LEXIS 146366, at *10 (W.D.N.C. July 17, 2024) (internal citation omitted). A declaratory judgment entered here would therefore necessarily address only the constitutionality of Defendants' alleged past acts, not future conduct, and its issue would be improper.

## CONCLUSION

WHEREFORE, Defendants respectfully request that their Motion to Dismiss be GRANTED and that each of Plaintiff's claims be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

This the 13th day of March, 2026.

**CRANFILL SUMNER LLP**

By: /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Kayla N. McDaniel, NC Bar #57995
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone: (704) 332-8300
Facsimile: (704) 332-9994
E-mail: jstewart@cshlaw.com
E-mail: kmcdaniel@cshlaw.com

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line

4921-4551-3879, v. 2

legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 13th day of March, 2026.

CRANFILL SUMNER LLP

BY:    */s/ Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Kayla N. McDaniel, NC Bar #57995
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone: (704) 332-8300
Facsimile: (704) 332-9994
E-mail: jstewart@cshlaw.com
E-mail: kmcdaniel@cshlaw.com

4921-4551-3879, v. 2

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this day electronically filed the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

C. Christopher Adkins
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, NC 28078
Telephone: (704) 274-5677
Facsimile: (877) 208-7577
Emails: chris@huntersvillelawyer.com
*Attorney for Plaintiff*

Christerfer R. Purkey
Rech Law, P.C.
18125 W. Catawba Avenue
Cornelius, NC 28031
Telephone: (704) 228-2790
Facsimile: (704) 909-7410
Email: cpurkey@rechlaw.com
*Attorney for Plaintiff*

This the 13th day of March, 2026.

**CRANFILL SUMNER LLP**

BY:     /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Kayla N. McDaniel, NC Bar #57995
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
kmcdaniel@cshlaw.com

4921-4551-3879, v. 2