EXHIBIT **2**

# THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

Administration Office:
555 College Road East, Princeton NJ 08543-5241
800.305.4975

Statutory Office:
2711 Centerville Road, Suite 400, Wilmington, DE 19805
(a stock insurance company)

## COMMON POLICY DECLARATIONS

**The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.**

POLICY NUMBER:   64-A3-EX-0000074-02                          Date Issued:   3/5/2025

**THIS POLICY MAY INCLUDE CLAIMS-MADE COVERAGE PART(S).  PLEASE READ THE ENTIRE POLICY CAREFULLY**

| Item 1. Named Insured and Mailing Address: | Program Administrator Name and Address: |
|---|---|
| Town of Mooresville<br>413 North Main St.<br>Mooresville, NC  28117 | PSI Program Managers<br>A division of Risk Placement Services, Inc.<br>2850 Golf Road<br>Rolling Meadows, IL 60008-4050 |
| | Licensed Surplus Lines Producer:<br>Risk Placement Services, Inc. – License #1000010369 |

Item 2. Policy Period:     From:    2/15/2025   To:    3/1/2026       At 12:01 A.M. Standard Time at your mailing address shown above.

Item 3. Retroactive Date: See **DECLARATIONS, PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE, COVERAGE SECTION V ERRORS AND OMISSIONS** and **COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY**

Item 4. Third Party Claims Administrator:     PMA

Item 5. Business Description:     Municipality                    Form of Business:     Government

Item 6. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**This policy consists of the following coverage parts for which a premium is indicated.**
**Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.**

| PROTECTED SELF INSURANCE PACKAGE POLICY COVERAGE PARTS | | Premium |
|---|---|---|
| **COVERAGE SECTION PART I PROPERTY** | $ | **427,051** |
| **COVERAGE SECTION PART II GENERAL LIABILITY** | $ | **Included** |
| **COVERAGE SECTION PART III LAW ENFORCEMENT ACTIVITIES** | $ | **Included** |
| **COVERAGE SECTION PART IV AUTOMOBILE LIABILITY** | $ | **Included** |
| **COVERAGE SECTION PART V ERRORS AND OMISSIONS** | $ | **Included** |
| **COVERAGE SECTION PART VI WORKERS' COMPENSATION & EMPLOYERS' LIABILITY FOR A QUALIFIED SELF INSURER** | $ | **Included** |
| **COVERAGE SECTION PART VII EMPLOYEE BENEFITS LIABILITY** | $ | **Included** |
| **COVERAGE SECTION PART VIII CRIME** | $ | **Included** |
| **Terrorism Premium (TRIPRA):** | $ | **341** |
| *Premium is minimum and deposit* | Total Policy Premium:   $ | **427,392** |

| Authorization: | In Witness Whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the Company. |
|---|---|

**The Princeton Excess and Surplus Lines Insurance Company**
Hereinafter Referred to as The Company

_Roi Willap_

**Secretary**

_Jennnin W. Hgins_

**President**

Date:   3/5/2025

Bill Davidson
Authorized Representative

Date:

Licensed Producer Signature, if required by law

THIS COMMON POLICY DECLARATIONS AND OTHER APPLICABLE DECLARATION(S), TOGETHER WITH THE GENERAL POLICY CONDITIONS, GENERAL POLICY DEFINITIONS, GENERAL POLICY EXCLUSIONS, COVERAGE FORM(S), AND OTHER FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

Princeton Excess & Surplus Lines Insurance is not responsible for the determination of or the collection of or the remittance of statutorily required Excess and Surplus Lines Taxes or Excess and Surplus Lines Stamping Fees nor are such statutorily required taxes and fees included in our quoted premium.

## Schedule of Forms and Endorsements

Effective date of this Schedule:   2/15/2025      Issue date:   3/5/2025

Attached to and forming part of
Policy Number:   64-A3-EX-0000074-02

Issued to:   Town of Mooresville, NC

The following is a schedule of Forms and Endorsements issued with the policy at inception:

| Form Number: | Edition Date: | Form Name: |
|---|---|---|
| AO 2502 | 01-19 | Common Declarations Page |
| AE 2502 | 01-19 | Declarations Page |
| AE 0003 | 12-14 | PSI Package Policy Form |
| AE 2206 | 02-13 | Statutory Requirement Endorsement |
| SLSOP | 02-13 | Service of Process Endorsement |
| AE 2118 | 04-14 | Terrorist Activity Exclusion – State Exception |
| AE 2209 | 01-20 | Violation of Economic or Trade Sanctions |
| AE 2210 | 08-20 | General Liability Communicable Disease Exclusion |
| AE 2401 | 01-19 | Exclusion – Access or Distribution of Confidential or Personal Information and Data Related Liability |
| AE 1200 | 10-21 | Failure to Supply Sub-Limit - Water Operations |
| AE 1200 | 01-21 | Property – Auto Physical Damage Only |
| AE 2321 | 02-13 | Excess Uninsured and/or Underinsured Motorists Coverage |
| AE 2420 | 03-23 | PFAS Chemicals Exclusion |
| PESFG1161 | 03-12 | General Change Endorsement – Excess Loss Fund Protection Exception |
| AE1200 | 02-13 | Non Waiver of Immunity |
| AE1200 | 01-21 | Primary & Non Contributory – Norfolk Permit |

# THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

## ALL LINES AGGREGATE INSURANCE

**Date Issued:** 3/5/2025

| | |
|---|---|
| **INSURED** | **Town of Mooresville, NC** |

| | | |
|---|---|---|
| **Policy No.** | 64-A3-EX-0000074-02 | **Effective:** 2/15/2025 |
| | | (12:01 A.M.) |

## DECLARATIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered. Titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Throughout this policy the words *you* and *your* refer to the **NAMED INSURED** shown in the **COMMON POLICY DECLARATIONS**. The words *we*, *us*, and *our* refer to the Company providing this insurance. Words and phrases that appear in **bold** have special meaning. Refer to **DEFINITIONS**.

We have no duty to pay for direct physical loss or damage or to indemnify any insured for sums paid to which this insurance does not apply.

## PART I A.  SPECIFIC INSURANCE

**1.** This policy may contain various **MAINTENANCE DEDUCTIBLES** as listed in the **SCHEDULE OF SELF INSURED RETENTIONS**. The **INSURED** is responsible for payment of each applicable **MAINTENANCE DEDUCTIBLE**. The **MAINTENANCE DEDUCTIBLE** is paid for each loss prior to the application of the applicable **SELF INSURED RETENTION**, and does not reduce the applicable **SELF INSURED RETENTION**. Maintenance deductibles do not apply to the erosion of the **INSURED'S LOSS FUND**.

**2.** This policy contains various **SELF INSURED RETENTIONS** as listed in the **SCHEDULE OF SELF INSURED RETENTIONS**. The **INSURED** is responsible for payment of each applicable **SELF INSURED RETENTION** except as otherwise stated in **PART I B. MULTIPLE LINES LOSS PROTECTION** and **PART II EXCESS LOSS FUND PROTECTION**.

**3.** This policy contains various **LIMITS OF INSURANCE** which are inclusive of, and not in excess of, the **SELF INSURED RETENTIONS** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**4.** This policy contains various Annual Aggregate **LIMITS OF INSURANCE** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**. Our liability ends when the applicable Annual Aggregate **LIMIT OF INSURANCE** has been exhausted by payments to the **INSURED**.

**5.** This policy may contain various sublimits as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** which are less than the applicable **LIMIT OF INSURANCE.** Sublimits are part of, not in addition to, the **LIMIT OF INSURANCE** shown for the applicable **COVERAGE SECTION**.

**6.** This policy provides coverage in accordance with all of the terms of each **COVERAGE SECTION** attached to and forming part of this policy. For **SECTION V ERRORS AND OMISSIONS** and **SECTION VII EMPLOYEE BENEFITS LIABILITY**, coverage is provided on a Claims Made basis. Claims Made coverage applies only to claims made against the **INSURED** during the **PERIOD OF INSURANCE** or Extended Reporting Periods, if applicable. **Please read carefully**.

## PART I A.  SCHEDULE OF SPECIFIC LIMITS OF INSURANCE

**COVERAGE SECTION I PROPERTY – APD Coverage Only**:

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

    All coverages under **SECTION I PROPERTY** combined:

    Subject to the following sublimits and aggregates:

| | | |
|---|---|---|
| **FLOOD AND SURFACE WATER APD Only:** | $1,000,000_____ | $1,000,000_____Annual Aggregate |
| **EARTHQUAKE APD Only:** | $1,000,000_____ | $1,000,000_____Annual Aggregate |
| **AUTOMOBILE PHYSICAL DAMAGE:** | $1,000,000_____ | |
| **GARAGEKEEPERS LEGAL LIABILITY:** | $Not Covered ___ | |
| **EXTRA EXPENSE:** | $Not Covered ___ | |
| **BUSINESS INCOME:** | $Not Covered ___ | |
| **TUITION AND FEES:** | $Not Covered ___ | |
| **RENTAL AND FEES:** | $Not Covered ___ | |

(Rental Value & Tuition and Fees sublimits are part of and not in addition to the Business Income limit stated above)

| | | |
|---|---|---|
| **PERSONAL PROPERTY IN TRANSIT:** | $Not Covered | |
| **DEBRIS REMOVAL:** | $Not Covered ___ | |
| **ASBESTOS AND LEAD CLEANUP AND REMOVAL:** | $Not Covered ___ | $ Not Covered ___ Annual Aggregate |
| **ARCHITECTS' AND ENGINEERS' FEES:** | $Not Covered ___ | |
| **ORDINANCE OR LAW:** | $Not Covered ___ | |
| **UNINTENTIONAL ERRORS AND OMISSIONS:** | $Not Covered ___ | |
| **AUTOMATIC ACQUISITION APD Only:** | $1,000,000 | |

**COVERAGE SECTION II GENERAL LIABILITY**:

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

    All coverages under **SECTION II GENERAL LIABILITY** combined:

                                  $5,000,000_____Any one **OCCURRENCE**

                                  $5,000,000_____ Annual Aggregate

    Subject to the following sublimit:

    Failure to Supply – Water Operations - $5,000,000 per occ – See Endt

    **PREMISES MEDICAL PAYMENTS:**          $ 10,000_____Any one person

                                      $ 10,000_____Any one **OCCURRENCE**

**COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES**:

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

    All coverages under **SECTION III LAW ENFORCEMENT ACTIVITIES** combined:

                                  $5,000,000_____Any one **OCCURRENCE**

                                  $5,000,000_____ Annual Aggregate

**COVERAGE SECTION IV AUTOMOBILE LIABILITY**:

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

    All coverages under **SECTION IV AUTOMOBILE LIABILITY** combined:

                         $5,000,000____Any one **OCCURRENCE**

    Subject to the following sublimit:

    **AUTOMOBILE MEDICAL PAYMENTS:**       $ Not Covered___Any one person

                         $ Not Covered___Any one **OCCURRENCE**


**COVERAGE SECTION V ERRORS AND OMISSIONS**:

    **LIMIT OF INSURANCE** for each **CLAIM**:

    All coverages under **SECTION V ERRORS AND OMISSIONS** combined:

                         $5,000,000_____Any one CLAIM

                         $5,000,000_____Annual Aggregate

    **Retroactive Date:**  2/15/2002

    Subject to the following sublimits and aggregates:

    **EMPLOYMENT PRACTICES LIABILITY:**    $5,000,000_____Any one **CLAIM**

                         $5,000,000_____Annual Aggregate

    **Retroactive Date:** 2/15/2002

    **SEXUAL HARASSMENT:**            $5,000,000_____Any one **CLAIM**

                         $5,000,000_____Annual Aggregate

    **Retroactive Date:** 2/15/2002

    **SEXUAL ABUSE:**               $5,000,000_____Any one **CLAIM**

                         $5,000,000_____Annual Aggregate

    **Retroactive Date:**  2/15/2021


**COVERAGE SECTION VI WORKERS' COMPENSATION & EMPLOYER'S LIABILITY FOR A QUALIFIED SELF-INSURER**:

    **LIMIT OF INSURANCE** for each accident or disease:    $650,000

    All coverages under **SECTION VI WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY FOR A QUALIFIED SELF-INSURER** combined:

                         $650,000

**COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY**:

    **LIMIT OF INSURANCE** for each **CLAIM**:

    All coverages under **SECTION VII EMPLOYEE BENEFITS LIABILITY** combined:

                              $5,000,000_____Any one **CLAIM**

                              $5,000,000_____Annual Aggregate

    **Retroactive Date:**  2/15/2002

**COVERAGE SECTION VIII CRIME**:

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

    **MONEY AND SECURITIES**:                $500,000

    **FORGERY OR ALTERATION**:             $500,000

    **EMPLOYEE DISHONESTY**:               $500,000

**SCHEDULE OF SELF INSURED RETENTIONS**

This policy has the following **SELF INSURED RETENTIONS** which apply to a covered loss for each **OCCURRENCE**, accident or **CLAIM** under:

**(1)**  **SPECIFIC INSURANCE** coverage provided under **PART I**;

**(2)**  **EXCESS LOSS FUND PROTECTION** provided under **PART II**.

**MAINTENANCE DEDUCTIBLES** are payable by the **INSURED** and only apply when an amount is filled in below. **MAINTENANCE DEDUCTIBLES** do not apply to the erosion of the **INSURED'S LOSS FUND**.

| **COVERAGE SECTION** | | **SELF-INSURED RETENTION** | **MAINTENANCE DEDUCTIBLE** |
|---|---|---|---|
| **I** | **PROPERTY** unless listed below: | $100,000_____ | $NA_____ |
| | **FLOOD AND SURFACE WATER**: | $100,000_____ | $ NA_____ |
| | **EARTHQUAKE** (greater of): | $100,000_____ | $ NA_____ |
| | | OR | |
| | % of Total Insured Values Subject to Loss | _____Not Covered % | $Not Covered_____ |
| | **WINDSTORM** (greater of): | $Not Covered_____ | $Not Covered_____ |
| | | OR | |
| | % of Total Insured Values Subject to Loss | _____Not Covered % | $Not Covered_____ |
| | **AUTOMOBILE PHYSICAL DAMAGE**: | $ Not Covered_____ | $Not Covered_____ |

For **COVERAGE SECTION I PROPERTY**, if more than one peril covered hereunder is involved in an **OCCURRENCE**, then the highest **SELF INSURED RETENTION** with respect to **COVERAGE SECTION I PROPERTY** shall apply.

| | | |
|---|---|---|
| **II** | **GENERAL LIABILITY**: | $100,000 |
| **III** | **LAW ENFORCEMENT ACTIVITIES**: | $100,000 |
| **IV** | **AUTOMOBILE LIABILITY**: | $100,000 |
| **V** | **ERRORS AND OMISSIONS**: | $100,000 |
| | **EMPLOYMENT PRACTICES LIABILITY**: | $100,000 |
| | **SEXUAL HARASSMENT**: | $100,000 |

**SEXUAL ABUSE**: $100,000

**VI** **WORKERS' COMPENASTION AND EMPLOYERS' LIABILITY FOR A QUALIFIED SELF-INSURER**: $500,000

**VII** **EMPLOYEE BENEFITS LIABILITY**: $100,000

**VIII** **CRIME**

| | | |
|---|---|---|
| **MONEY AND SECURITIES**: | $25,000_____ | $NA |
| **FORGERY OR ALTERATION**: | $25,000_____ | $NA |
| **EMPLOYEE DISHONESTY**: | $25,000_____ | $NA |

### PART I B.  MULTIPLE LINES LOSS PROTECTION

Subject to the policy limitations, terms and conditions, the following applies in the event of a covered loss involving more than one **COVERAGE SECTION** under **PART I A.**:

**1.** We will indemnify the **INSURED** for all of those sums of **SELF INSURED RETENTIONS** described in the **SCHEDULE OF SELF INSURED RETENTIONS** for which the **INSURED** is responsible for all of the **COVERAGE SECTIONS** involved in a covered loss, less the amount of the **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** described in Paragraph **3.** below.

**2.** The maximum **LIMIT OF INSURANCE** we will pay in excess of the **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** will be: $425,000

**3.** The amount of the **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** that the **INSURED** is responsible for will be calculated by us as follows:

    **a.** For each applicable **COVERAGE SECTION** involved in the covered loss (including all applicable coverage options under such **COVERAGE SECTION**), identify (i) the applicable **SELF INSURED RETENTION**, and (ii) payments for the covered loss made by the **INSURED**;

    **b.** From the amounts identified in **a.** above, for each **COVERAGE SECTION** identify the amount that is the lesser of the applicable **SELF INSURED RETENTION** or the payments for the covered loss made by the **INSURED**;

    **c.** Add together all amounts identified in **b.** above;

    **d.** The **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** will be the lesser of:

        **i.** The total sum identified in **c.** above; or

        **ii.** The largest **SELF INSURED RETENTION** from all of the **COVERAGE SECTIONS** involved in the covered loss, identified in **a.** above.

# PART II EXCESS LOSS FUND PROTECTION

**INSURED'S LOSS FUND**:              $1,210,000_____ Annual Aggregate

**INSURED'S LOSS FUND** is fully earned at inception of this policy.

**EXCESS LOSS FUND PROTECTION LIMIT**:       $1,000,000_____Annual Aggregate

1. This policy contains various **SELF INSURED RETENTIONS** as listed in the **SCHEDULE OF SELF INSURED RETENTIONS** of this policy. The **INSURED** is responsible for the payment of applicable **SELF INSURED RETENTIONS** in accordance with the terms and conditions of this policy.

2. The **INSURED'S LOSS FUND** is the Annual Aggregate amount stated above to be paid by the **INSURED** for covered losses incurred during the **PERIOD OF INSURANCE** to satisfy the **INSURED'S SELF INSURED RETENTION** obligation, before our obligation to indemnify the **INSURED** for **SELF INSURED RETENTIONS** begins.

   If the **PERIOD OF INSURANCE** consists of multiple terms, this provision shall apply separately to each term in accordance with the amounts specified in this policy.

3. If there is an applicable **MAINTENANCE DEDUCTIBLE** underlying the **SELF INSURED RETENTION**, this **MAINTENANCE DEDUCTIBLE** is not considered part of the **SELF INSURED RETENTION**, and does not apply to the erosion of the **INSURED'S LOSS FUND**.

4. Each payment made by the **INSURED** within such applicable **SELF INSURED RETENTION** shall reduce the outstanding **INSURED'S LOSS FUND** by the amount of such payment until such **INSURED'S LOSS FUND** is exhausted. Upon exhaustion of the **INSURED'S LOSS FUND** stated above, our obligation to indemnify the **INSURED** begins under the **EXCESS LOSS FUND PROTECTION** for covered losses incurred during the **PERIOD OF INSURANCE**.

5. The amount of **EXCESS LOSS FUND PROTECTION** payment(s) made by us to the **INSURED**:

   a. Shall not be for more than the applicable **SELF INSURED RETENTION**;

   b. Shall be excess of any **MAINTENANCE DEDUCTIBLES**; and

   c. Shall not be greater than the **EXCESS LOSS FUND PROTECTION LIMIT**, as stated above.

6. Each **EXCESS LOSS FUND PROTECTION** payment made reduces our **EXCESS LOSS FUND PROTECTION LIMIT** by the amount of such payment.

7. Our liability under the **EXCESS LOSS FUND PROTECTION** ends when the **EXCESS LOSS FUND PROTECTION LIMIT** has been exhausted by payments to the **INSURED**.

8. Upon exhaustion of the **EXCESS LOSS FUND PROTECTION LIMIT**, the **INSURED** is once again responsible for the applicable **SELF INSURED RETENTION**.

**TABLE OF CONTENTS**

1. Introduction ....................................................................................................................2

2. General Policy Definitions ..............................................................................................2

3. General Policy Conditions..............................................................................................7

4. General Policy Exclusions ...........................................................................................13

5. Coverage Section I Property.........................................................................................20

6. Coverage Section II General Liability ..........................................................................34

7. Coverage Section III Law Enforcement Activities .......................................................37

8. Coverage Section IV Auto Liability...............................................................................40

9. Coverage Section V Errors and Omissions .................................................................42

10. Coverage Section VI Workers' Compensation and Employers' Liability for a Qualified Self-Insurer ....48

11. Coverage Section VII Employee Benefits Liability........................................................53

12. Coverage Section VIII Crime ........................................................................................56

**INTRODUCTION**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered. Exclusion titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Throughout this policy the words *you* and *your* refer to the **NAMED INSURED** shown in the Declarations. The words *we*, *us*, and *our* refer to the Company providing this insurance. The word **INSURED** means any person or organization qualifying as such under the terms of this policy. Words and phrases that appear bolded and in capitals have special meaning. Refer to **GENERAL POLICY DEFINITIONS** or **DEFINITIONS** under each coverage.

We have no duty to pay for direct physical loss or damage or to indemnify any **INSURED** for sums paid to which this insurance does not apply.

**GENERAL POLICY DEFINITIONS**

The following definitions apply to all **COVERAGE SECTIONS** of this policy, except as otherwise indicated.

1. **ADMINISTRATION** means:

   (a) Providing information, other than legal advice, to employees including their dependents and beneficiaries with respect to **EMPLOYEE BENEFIT PROGRAMS**;

   (b) Interpreting **EMPLOYEE BENEFIT PROGRAMS**;

   (c) Handling of records in connection with **EMPLOYEE BENEFIT PROGRAMS**; and

   (d) Effecting enrollment, termination, or cancellation of employees' participation under **EMPLOYEE BENEFIT PROGRAMS**;

   provided all such acts are authorized by the **NAMED INSURED**.

2. **AUTOMOBILE** means a land motor vehicle, trailer or semi-trailer intended or designed for travel on public roads; or any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   **AUTOMOBILE** does not include **MOBILE EQUIPMENT**. However, self propelled vehicles with the following types of permanently attached equipment are considered an **AUTOMOBILE**:

   Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning.

3. **BODILY INJURY** means physical injury to any person, and any mental anguish or shock, sickness, disease, disability or death associated with or arising from such physical injury, sickness, disease or disability.

4. **CLAIM** means:

   (a) A written demand for damages or a notice advising an **INSURED** of an intent to sue;

   (b) A notice of a charge or violation from any government agency;

   (c) An arbitration notice; or

   (d) A civil proceeding commenced by the service of a summons, complaint or similar pleading received by an **INSURED** alleging a **WRONGFUL ACT**.

   **CLAIM** shall not include any criminal action.

5. **DESIGNATED INSURED** means the **NAMED INSURED**, an executive officer or director; or other persons in a supervisory capacity; risk management position; or the department or person the **NAMED INSURED** has delegated the responsibility of giving or receiving notice of an **OCCURRENCE** or **CLAIM**.

6. **EARTHQUAKE** means seismic geologic activity, including, but not limited to, volcanic eruptions, subterranean fire, landslide, subsidence, earth sinking and earth rising or shifting or any such convulsion of nature, which causes movement in the earth's surface including loss or damage from any other cause or event that contributes concurrently or in any sequence to the loss, except direct loss of or damage to **PROPERTY OF THE INSURED** caused by ensuing fire and/or explosion. If more than one **EARTHQUAKE** shock occurs within any period of one hundred and sixty-eight (168) hours during the **PERIOD OF INSURANCE**, such **EARTHQUAKE** shock is deemed to be a single **EARTHQUAKE OCCURRENCE**.

7. **ELECTRONIC DATA** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. **EMPLOYEE BENEFIT PROGRAMS** means group life insurance, group accident or health insurance, pension plans, profit sharing plans, employee savings and investment plans, 401K or deferred compensation plans, retirement plans, employee stock subscription plans, travel, holiday or vacation plans, workers' compensation, unemployment insurance, social security, disability benefits insurance, expense reimbursement plan, employee welfare benefit plans, welfare plans, leave of absence programs, including military, maternity, family, civil leave, tuition assistance plans, transportation and health club subsidies, and any other similar **EMPLOYEE BENEFIT PROGRAMS** provided for the **NAMED INSUREDS** employees.

9. **EMPLOYEE BENEFITS WRONGFUL ACT** means the failure to execute required actions, or mistaken actions committed in the **ADMINISTRATION** of the **INSURED'S EMPLOYEE BENEFIT PROGRAMS**.

   All **CLAIMS** based on or arising out of the same **EMPLOYEE BENEFITS WRONGFUL ACT** or a series of related **EMPLOYEE BENEFITS WRONGFUL ACTS** by one or more **INSUREDS** shall be deemed one **EMPLOYEE BENEFITS WRONGFUL ACT**. Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **EMPLOYEE BENEFITS WRONGFUL ACT**.

10. **EMPLOYMENT PRACTICE VIOLATION** means any of the following actual or alleged acts which are employment related:

    (a) Wrongful reassignment, dismissal, discharge, termination or constructive termination of employment;

    (b) Harassment of any type;

    (c) Discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

    (d) Retaliation;

    (e) Misrepresentation to an employee or applicant for employment;

    (f) Libel, slander, humiliation, defamation or invasion of privacy;

    (g) Wrongful failure to employ or promote;

    (h) Wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

    (i) Wrongful discipline, coercion or criticism;

    (j) Failure to grant tenure or practice privileges;

(k) Failure to provide or enforce adequate or consistent organizational policies or procedures;

(l) Violation of an individual's civil rights.

11. **FIRST NAMED INSURED** means the person or organization first named in Item 1. of the **COMMON POLICY DECLARATIONS**. The **FIRST NAMED INSURED** is primarily responsible for the payment of all premiums. In addition, the **FIRST NAMED INSURED** will act on behalf of all other **INSUREDS** for the giving and receiving of notice of cancellation or non-renewal and the receiving of any return premiums that become payable under this policy.

12. **FLOOD AND SURFACE WATER** means:

(a) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(b) Mudslide or mudflow;

(c) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(d) Water under the ground surface pressing on, or flowing or seeping through:

(1) Foundations, walls, floors or paved surfaces;

(2) Basements, whether paved or not; or

(3) Doors, windows or other openings; or

(e) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (a), (c) or (d), or material carried or otherwise moved by mudslide or mudflow.

13. **FUNGAL PATHOGENS** means any fungus or mycota or any byproduct or type of infestation produced by such fungus or mycota, including but not limited to, mold, mildew, mycotoxins, spores or any biogenic aerosols.

14. **INSURED** means not only the **NAMED INSURED** as stated on the **COMMON POLICY DECLARATIONS**, but also includes any past, present or future officials, members of boards or commissions, trustees, directors, officers, partners, volunteers, or employees of the **NAMED INSURED** while acting within the scope of their duties as such; and any person, organization, trustee or estate, to be known as additional **INSUREDS**, to whom the **NAMED INSURED** is obligated by virtue of a written contract or agreement to provide insurance such as is offered by this policy. The coverage provided such additional **INSUREDS** does not apply to liability arising out of the sole negligence of such additional **INSUREDS**.

15. **LAW ENFORCEMENT ACTIVITIES** means the activities of any **INSURED** while acting as a law enforcement official, officer, reserve officer, officer of a jail, auxiliary officer, employee, official representing a law enforcement agency or volunteer of a law enforcement agency or department of the **NAMED INSURED**. **LAW ENFORCEMENT ACTIVITIES** do not include **EMPLOYMENT PRACTICE VIOLATIONS**.

16. **MEDICAL PAYMENTS** means reasonable expenses for first aid, necessary medical, surgical, X-ray and dental services, including prosthetic devices, ambulance, hospital, professional nursing and funeral services as are necessary as a result of an **OCCURRENCE** not otherwise excluded on account of **BODILY INJURY** provided the **MEDICAL PAYMENTS** are incurred within 1 (one) year of the **OCCURRENCE**.

17. **MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:

(a) Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

(b) Vehicles maintained for use solely on or next to premises the **INSURED** owns or rents;

(c) Vehicles that travel on crawler treads;

(d) Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or

    (2) Road construction or resurfacing equipment such a graders, scrapers or rollers;

(e) Vehicles not described in (a), (b), (c), or (d) above, that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers;

(f) Vehicles not described in (a), (b), (c), or (d) above, maintained primarily for purposes other than the transportation of persons or cargo.

However, **MOBILE EQUIPMENT** does not include land vehicles that are subject to compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **AUTOMOBILES**.

18. **MONEY** means:

(a) Currency, coins, and bank notes in current use and having a face value; and

(b) Traveler's checks, register checks and money orders held for sale to the public.

But **MONEY** does not include **SECURITIES**.

19. **NAMED INSURED** means a person or organization named in Item 1. of the **COMMON POLICY DECLARATIONS**.

20. **PERIOD OF INSURANCE** means the period of time stated in Item 2. Policy Period in the **COMMON POLICY DECLARATIONS**.

21. **PERSONAL INJURY** means any injury (other than **BODILY INJURY** or **PROPERTY DAMAGE**) arising out of one or more of the following:

Wrongful entry; wrongful eviction; malicious prosecution; humiliation; piracy; infringement or misappropriation of any intellectual property rights (including: copyrights; patents; trademarks; servicemarks; and advertising, broadcasting, and publishing ideas); invasion of rights of privacy; libel; slander; defamation of character; disparagement of property; erroneous service of civil papers; false arrest; false imprisonment; and detention.

Injury includes: Mental anguish, shock, sickness, disease, disability or death, which do not arise from **BODILY INJURY** or **PROPERTY DAMAGE**.

In addition, as respects **LAW ENFORCEMENT ACTIVITIES** only, **PERSONAL INJURY** also includes any injury (other than **BODILY INJURY** or **PROPERTY DAMAGE**) arising out of discrimination or violation of civil rights.

22. **POLLUTANTS** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

23. **PROPERTY DAMAGE** means physical injury to tangible property, including all resulting loss of use of property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. **PROPERTY DAMAGE** also means loss of use of property that is not physically injured. **PROPERTY DAMAGE** does not include damage to the **PROPERTY OF THE INSURED**.

For the purposes of this insurance, **ELECTRONIC DATA** is not tangible property.

24. **PROPERTY OF THE INSURED** or **INSURED'S PROPERTY** means all Real and Personal Property which the **INSURED** owns or is in the **INSURED'S** care, custody or control or agrees to insure by any contractual agreement normal to its operation, including: leasehold improvements and betterments; Personal Property in transit; property in the course of construction, installation, repair, renovation and the like: **AUTOMOBILES**; **ACCOUNTS RECEIVABLE**; **COMPUTER SYSTEMS**; **ELECTRONIC DATA**; **FINE ARTS**; **MOBILE EQUIPMENT**; and **VALUABLE PAPERS**.

25. **SECURITIES** means negotiable and non-negotiable **INSTRUMENTS** or contracts representing either **MONEY** or other property and includes:

    (a) Tokens, ticket revenues and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    (b) Food stamps or other evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include **MONEY** or lottery tickets held for sale.

26. **SELF INSURED RETENTION** means that dollar amount specified in the **SCHEDULE OF SELF INSURED RETENTIONS** which the **INSURED** is obligated to pay because of loss or damage covered under any **COVERAGE SECTIONS** of this policy, before this policy indemnifies the **INSURED** for the same loss.

27. **SEXUAL ABUSE** means any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, regardless if criminal charges or proceedings are brought, which causes physical and/or mental injuries. **SEXUAL ABUSE** also includes actual, attempted or alleged criminal: sexual molestation, sexual assault, sexual exploitation or sexual injury.

    But **SEXUAL ABUSE** does not include **SEXUAL HARASSMENT**.

    All **CLAIMS** based on or arising out of the same **SEXUAL ABUSE** or a series of related **SEXUAL ABUSE** by one or more employees or volunteer workers shall be deemed one **SEXUAL ABUSE**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL ABUSE**.

28. **SEXUAL HARASSMENT** means any actual, attempted or alleged unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature of a person by another person, or persons acting in concert, which causes mental injuries. **SEXUAL HARASSMENT** also includes the above conduct when:

    (a) Submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person;

    (b) Such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile or offensive work environment.

    But **SEXUAL HARASSMENT** does not include **SEXUAL ABUSE**.

    All **CLAIMS** based on or arising out of the same **SEXUAL HARASSMENT** or a series of related **SEXUAL HARASSMENT** by one or more employees or volunteer workers shall be deemed one **SEXUAL HARASSMENT**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL HARASSMENT**.

29. **SUIT** means a civil proceeding in which injuries or damages to which this policy applies are alleged. **SUIT** includes:

    (a) An arbitration proceeding in which such damages are claimed and to which the **INSURED** must submit or does submit to with or without our consent; or

    (b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **INSURED** submits to with or without our consent.

30. **ULTIMATE NET LOSS** means:

(a) With respect to the **COVERAGE SECTIONS II**, **III**, **IV**, **V** and **VII** of this policy:

The total sum which the **INSURED** is obligated to pay because of loss or damage covered under any **COVERAGE SECTION** of this policy, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.

**ULTIMATE NET LOSS** includes: hospital, medical and funeral charges and all sums paid as salaries; wages; compensation; fees; expenses for doctors, nurses, and legal; premium on attachment, appeal or similar bonds (but without any obligation to us to apply for or furnish such bonds); expenses of lawyers and investigators and other persons and for litigation, settlement, adjustment and investigation of claims and **SUITS** which are paid as a consequence of any loss or damage covered hereunder.

(b) With respect to **COVERAGE VI** of this policy:

(1) **ULTIMATE NET LOSS**, as respects **COVERAGE A WORKERS' COMPENSATION**, means the total sum which the **NAMED INSURED** is legally obligated to pay as benefits required of the **NAMED INSURED** by the applicable **WORKERS' COMPENSATION LAW** and related **CLAIMS EXPENSES**.

(2) **ULTIMATE NET LOSS**, as respects **COVERAGE B EMPLOYERS' LIABILITY** means the total sum which the **NAMED INSURED** is legally obligated to pay as **DAMAGES** (as defined in **COVERAGE SECTION VI**) because of bodily injury to the employees of the **NAMED INSURED** and **CLAIMS EXPENSES** related to such **DAMAGES** (as defined in **COVERAGE SECTION VI**).

(c) With respects to **COVERAGE SECTIONS I** and **VIII**, **ULTIMATE NET LOSS** means all losses, damages or expenses arising out of any one **OCCURRENCE**, reduced by any recoveries or salvages which have been paid or will be collected.

The salaries, expense and administrative costs of the **INSURED** or the **INSURED'S** Third Party Claims Administrator are not included within the meaning of **ULTIMATE NET LOSS** and are to be paid by the **INSURED.**

31. **WRONGFUL ACT** means any actual or alleged tortious: error, act, omission, misstatement, misleading statement, neglect or breaches of duty committed by an **INSURED**, misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or collectively that results directly but unexpectedly and unintentionally in damages to others.

All **CLAIMS** involving the same **WRONGFUL ACT** or a series of continuous or interrelated **WRONGFUL ACTS**, by one or more **INSUREDS**, will be considered as arising out of one **WRONGFUL ACT**. Only one policy issued by us, one **SELF INSURED RETENTION** and one **LIMIT OF INSURANCE** is applicable to any one **WRONGFUL ACT**.

## GENERAL POLICY CONDITIONS

The following conditions apply to all **COVERAGE SECTIONS** of this policy, except as otherwise indicated.

1. **ARBITRATION**: In the event the **INSURED** and we are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of indemnity to be paid, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.

The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their arbitrator and equally pro rate the cost of the umpire. The **INSURED'S** portion of such fee does not accrue to the **INSURED'S LOSS FUND**.

The decision by the arbitrators shall be binding on us and the **INSURED**, and that judgment may be entered in any court of competent jurisdiction.

2. **ASSIGNMENT**: Assignment of interest under this policy does not bind us until our consent is endorsed hereon.

3. **AUDITS / VERIFICATION OF VALUES**: We or our duly authorized representatives may audit the **INSURED'S** books or records at any time during the **PERIOD OF INSURANCE** or within three years after its expiration or termination. There is no time limit on auditing the **INSURED'S** books and records with respects to **CLAIMS** under this policy.

4. **BANKRUPTCY AND INSOLVENCY**: Bankruptcy, insolvency, rehabilitation, receivership, liquidation, any equivalent proceeding in a foreign jurisdiction or other financial impairment or unwillingness to pay of any **INSURED** or any insurer providing Underlying Insurance, if applicable, shall neither relieve nor increase any of our obligations under this policy.

   In the event there is a diminished recovery or no recovery available to any **INSURED** as a result of such financial impairment or unwillingness of any insurer providing Underlying Insurance, if any, the coverage under this policy shall apply only in excess of the **SELF INSURED RETENTIONS** in the **SCHEDULE OF SELF INSURED RETENTIONS** or the **LIMITS OF INSURANCE** stated in the **SCHEDULE OF UNDERLYING INSURANCE**, if any. Under no circumstances shall we be required to drop down and replace any **SELF INSURED RETENTION** or underlying **LIMITS OF INSURANCE**, or assume any other obligations of a financially impaired insurer or **INSURED** or increase any of our obligations under this policy.

5. **CANCELLATION/NON-RENEWAL**: In the event of non-payment of premium by the **INSURED**, we will give ten (10) days notice of cancellation in writing to the **FIRST NAMED INSURED** and all coverage will terminate ten (10) days after the mailing of such notice. If we cancel, the earned premium is calculated pro rata, and the **INSURED** is responsible for the full annual amount of the **INSURED'S LOSS FUND** as stipulated in **PART II EXCESS LOSS FUND PROTECTION**.

   We may elect to non-renew or cancel this policy at the anniversary or expiration date, upon written notice to the **FIRST NAMED INSURED**, provided said notice is issued at least ninety (90) days prior to the anniversary or expiration date.

   If the period of limitation relating to the giving of notice is prohibited or made void by any law, such period is amended to provide the minimum period of limitation permitted by such law.

   We will mail or deliver our cancellation notice to the **FIRST NAMED INSURED'S** last mailing address known to us, and shown on the **COMMON POLICY DECLARATIONS**. Notice of cancellation will state the effective date of cancellation. If notice is mailed, proof of mailing will be sufficient proof of notice.

   The **FIRST NAMED INSURED** shown on the **COMMON POLICY DECLARATIONS** may cancel this policy by giving thirty (30) days notice of cancellation in writing. If the **FIRST NAMED INSURED** cancels during the **PERIOD OF INSURANCE**, the earned premium is equal to 100% of the premium shown on the **COMMON POLICY DECLARATIONS** and on any endorsements, and the **FIRST NAMED INSURED** is responsible for the full annual amount of the **INSURED'S LOSS FUND** as stipulated in **PART II EXCESS LOSS FUND PROTECTION**.

6. **CHANGES**: By acceptance of this policy, the **FIRST NAMED INSURED** agrees that it embodies all agreements existing between the **INSURED** and us or any of its agents relating to this policy. The **FIRST NAMED INSURED** is authorized to make changes in the terms of the policy with our consent. None of the provisions, conditions or other terms of this policy shall be waived or altered except by endorsement issued by us and attached to this policy; nor shall notice to any agent or knowledge possessed by any agent or by any other person be held in effect a waiver or change to any part of this policy.

7. **CLAIMS**, **OCCURRENCES, WRONGFUL ACTS** or **SUITS**: The **INSURED** shall as soon as practical notify us through the **INSURED'S** Third Party Claims Administrator of any **OCCURRENCE**, **WRONGFUL ACT**, **CLAIM** or **SUIT** meeting the following criteria:

   (a) The cost of which is likely to result in payment by us under this policy;

   (b) All **CLAIMS** reserved at 25% of **SELF INSURED RETENTION** for any loss covered under **COVERAGE SECTION VI WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY FOR**

**A QUALIFIED SELF-INSURER** or 50% of **SELF INSURED RETENTION** for all other **COVERAGE SECTIONS**;

(c) Catastrophic losses:

    (1) Fatality;

    (2) Amputation;

    (3) Serious burns;

    (4) Paralysis;

    (5) Head injuries involving brain damage;

    (6) Spinal injury;

    (7) Multiple fractures;

    (8) Loss of sight;

    (9) Use of any impact weapon by a law enforcement officer which results in **BODILY INJURY**;

    (10) **EMPLOYMENT PRACTICES VIOLATION**;

    (11) Actual or alleged criminal conduct by any **INSURED**;

    (12) Land use;

    (13) Any **SUIT** filed as a class action;

(d) **SEXUAL ABUSE** or physical abuse;

(e) Discrimination or Violation of Civil Rights;

(f) Third party claims, other than **AUTOMOBILE LIABILITY**, involving **LAW ENFORCEMENT ACTIVITIES**; or

(g) All **CLAIMS**, **OCCURRENCES, WRONGFUL ACTS** or **SUITS** under any **COVERAGE SECTION** where the reporting of a **CLAIM**, **OCCURRENCE**, **WRONGFUL ACT or SUIT** to us is required or is a condition of coverage.

**8. CONFLICTING STATUTES**:  If any terms of this policy conflict with the statutes of the state in which this policy is issued, those terms are amended to conform to such statutes.

**9. DUTIES, DEFENSE AND INDEMNIFICATION**:

(a) We have no duty to investigate, handle, settle or defend a **CLAIM**, **OCCURRENCE**, **WRONGFUL ACT**, proceeding or **SUIT** against an **INSURED** or against any person or organization for whom the **NAMED INSURED** is or may be found to be legally liable.

(b) We have no obligation to pay or indemnify an **INSURED** for any amount under **COVERAGE SECTIONS II, III, IV, V, VI** and **VII** of this policy, if an **INSURED'S** obligation to pay **ULTIMATE NET LOSS** is within or equal to the applicable **SELF INSURED RETENTION**.

(c) The **INSURED** has the duty to defend any **CLAIM** to which this insurance applies under **COVERAGE SECTIONS II, III, IV, V, VI** and **VII** of this policy and shall be responsible for the **ULTIMATE NET LOSS** up to the applicable **SELF INSURED RETENTION**.

(d) When the **ULTIMATE NET LOSS** exceeds the **SELF INSURED RETENTION**, for which the **INSURED** becomes legally obligated to pay because of an **OCCURRENCE**, **WRONGFUL ACT** or **CLAIM**, the **INSURED** will be entitled to indemnification from us under the applicable **COVERAGE SECTION** of this policy. The **INSURED** shall apply for indemnification as soon as practicable after the **ULTIMATE NET LOSS** has been determined to exceed the applicable **SELF INSURED RETENTION**. We will promptly indemnify the **INSURED** subject to the **LIMIT OF INSURANCE** less the **SELF INSURED RETENTION** for the applicable **COVERAGE SECTION** of this policy shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

(e) The **INSURED** must obtain our prior written approval before assuming any obligation, incurring any expenses or offering or agreeing to pay an amount which is in excess of the applicable **SELF INSURED RETENTION**.

(f) We have the right, at our discretion, and the **INSURED** will avail us the opportunity, to associate with the **INSURED** in the defense of any **CLAIM** that in our opinion may create indemnification obligations for us under this policy.

(g) If we determine that the cost to investigate, settle or defend a **CLAIM** or **SUIT** covered by **SPECIFIC INSURANCE** in the **DECLARATIONS** will be more than the applicable **SELF INSURED RETENTION(s)** or for any **CLAIM** or **SUIT** covered by **PART II EXCESS LOSS FUND PROTECTION** in the **DECLARATIONS**, then at our sole discretion, we may assume control and direction of the investigation, settlement or defense of that **CLAIM** or **SUIT**.

Amounts we pay, or authorize **INSUREDS** to pay, to investigate, settle or defend any **CLAIM** or **SUIT** are considered part of a loss or **CLAIM**.

However, if we incur costs that are not otherwise covered by this policy, then we will pay those costs at our own expense.

This condition shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

**10. INSPECTIONS/ RISK CONTROL SERVICES**:

(a) We have the right to:

(1) Make inspections and surveys at any time;

(2) Give the **NAMED INSURED** reports on the conditions we find; and

(3) Recommend changes.

(b) We are not obligated to make any inspections, surveys, reports or recommendations; and any such actions we undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

(1) Are safe or healthful; or

(2) Comply with laws, regulations, codes or standards.

(c) We assume no liability for, nor will we be made liable by any person or organization for risk control or consulting services, including the results or failure of results, findings or failure of findings, or performance or failure of performance of said services. This condition shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

**11. LEGAL ACTION AGAINST US**: No person or organization has a right under this policy:

(a) To join us as a party or otherwise bring us into a **SUIT** asking for damages from an **INSURED**; or

(b) To sue us under this policy unless all of its terms and conditions have been fully complied with.

A person or organization may sue us to recover on an agreed settlement as defined below, or on a final judgment against an **INSURED** obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the **LIMITS OF INSURANCE**. An agreed settlement means a settlement and release of liability signed by us, an **INSURED** and the claimant or the claimant's legal representative.

**12. MORTGAGE**: The interest of any mortgagor, lienholder or creditor on property covered by this policy is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage, lien or credit as of the date of loss subject to the limits of insurance set forth in this policy.

**13. NOTIFICATION**:  If the **INSURED** has an event, **CLAIM** or **SUIT**:

(a) The **INSURED** must use the Third Party Claims Administrator listed in the **COMMON POLICY DECLARATIONS** for the purpose of providing **CLAIMS** services. If the agreement between the **INSURED** and the Third Party Claims Administrator is terminated for any reason without our prior written approval, no insurance will be provided by this policy for any **CLAIM** reported to us after the termination date of the **INSURED'S** agreement with the Third Party Claims Administrator.

(b) The **INSURED**, or the Third Party Claims Administrator the **INSURED** has hired to act on the **INSURED'S** behalf, must:

    (1) Investigate any event;

    (2) Immediately record the specifics of the **CLAIM** or **SUIT** and the date received;

    (3) Settle or defend all **CLAIMS** or **SUITS** that are within the applicable **SELF INSURED RETENTION**;

    (4) Afford us the right to associate (at our own expense) in the defense of any **CLAIM** or **SUIT**;

    (5) Cooperate with our investigation, settlement or defense of any **CLAIM** or **SUIT**;

    (6) Maintain accurate records of all details regarding payments made by **INSUREDS** for **CLAIMS** and estimated damages, including all expenses;

    (7) Furnish quarterly **CLAIMS** records to us, on an approved form.

(c) The following are not payments for a covered **CLAIM**:

    (1) Fees paid by the **INSURED** to the Third Party Claims Administrator and any expenses incurred by the **INSURED** or the Third Party Claims Administrator in the **ADMINISTRATION**, investigation or settlement of any covered **CLAIM,** including costs to hire independent adjusters;

    (2) Payments, including salaries and expenses, to any employee or official of an insured for services rendered in administering any **CLAIM**;

    (3) Costs, fees and other expenses incurred by the **INSURED** or the Third Party Claims Administrator in establishing the existence of or the amount of any covered loss.

(d) Notice from the **INSURED** or from the Third Party Claims Administrator should include:

    (1) How, when and where the event took place.

    (2) The names and addresses of any injured persons and witnesses.

    (3) The nature and location of any injury or damage arising out of the event.

    For any event reported to us, any involved **INSURED**, or the Third Party Claims Administrator must:

    (4) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the **CLAIM** or **SUIT**.

    (5) Authorize us to obtain records and other information.

    (6) Cooperate in the investigation, settlement or defense of the **CLAIM** or **SUIT**.

    (7) Assist, upon our request, in the enforcement of any right against any person or organization, which may be liable to any **INSURED** for any loss to which this insurance may also apply.

**14. OTHER INSURANCE**:  If the **INSURED** has other insurance against loss or damage covered under this policy, we are liable, under the terms of this policy, only as excess of coverage provided by such other insurance. No monies payable or collectible from such other insurance shall accrue to the **INSURED'S LOSS FUND**. However, this clause does not apply to the purchase of excess insurance above the **LIMITS OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** of this policy.

15. **REPRESENTATIONS**:  By accepting this policy and as a precedent to coverage, the **INSURED** agrees that:

(a) The information contained within the **COMMON POLICY DECLARATIONS** and the **DECLARATIONS** is complete and accurate and is based upon representations made by the **INSURED** to us in the submission and/or application(s) for this policy;

(b) We have issued this policy in reliance upon the **INSURED'S** representations in the submission and/or application(s);

(c) Except as otherwise provided in this policy or by law, this policy is void in any case of fraud; or, if the **INSURED** conceals or misrepresents any material facts in the **INSURED'S** submission and/or application(s) for this policy. If the policy is wholly voidable due to fraud, misrepresentation or concealment by the **INSURED** as aforementioned, we, at our sole discretion, may elect to void coverage only for the particular loss or **CLAIM** which is affected by such concealment and/or misrepresentation and/or fraud.

16. **SEPARATION OF INSUREDS**:  With the exception of the **LIMITS OF INSURANCE**, **SELF INSURED RETENTIONS** and any rights or duties specifically assigned in this Policy to the **NAMED INSURED**, this insurance applies:

   (a)    As if each **INSURED** were the only **INSURED**; and

   (b)    Separately to each **INSURED** against whom a **CLAIM** is made or a **SUIT** is brought.

17. **STATUTORY REQUIREMENTS IMPOSED ON YOU**:

You, as a **NAMED INSURED** or a **QUALIFIED SELF-INSURER**, may be subject to specific requirements (such as reporting certain claims data), by State or Federal law (including but not limited to the Medicare, Medicaid and State Children's Health Insurance Program Extension Act of 2007).

Even if you contract with a Third Party Claims Administrator to handle the **ADMINISTRATION**, investigation or settlement of any loss or **CLAIM** covered under this policy, you are still ultimately responsible for compliance with such laws.

When by law you are designated as the responsible reporting entity for compliance with such State or Federal law, we will not:

(a) Advise you of such laws, unless we are legally required to do so;

(b) Assume any of the obligations imposed on you by such law;

(c) Pay any expenses incurred by you to comply with such law;

(d) Pay any penalty or fine for which you are held liable for failing to comply with such State or Federal law.

**ULTIMATE NET LOSS** does not include the expenses or payments described in Paragraphs (c) and (d) above.

18. **SUBROGATION, SALVAGE, AND RECOVERY**:  We shall be subrogated to all rights which the **INSURED** may have against any person or other entity in respect to any **CLAIM** or payment made under this policy; including any person or organization hired to investigate, handle, settle or defend any **OCCURRENCE**, **WRONGFUL ACT**, **CLAIM**, proceeding or **SUIT** resulting in the aforementioned payment. The **INSURED** shall execute all papers required by us and shall cooperate with us to secure our rights. If any reimbursement is obtained, or salvage or recovery made by the **INSURED** or us on account of any loss covered by this policy, the net amount of such reimbursement, salvage or recovery, after deducting the actual cost of obtaining or making the same, shall be first applied in the following order:

(a) Amount of loss, which exceeds the applicable **LIMITS OF INSURANCE**;

(b) To reduce our loss until we are fully reimbursed;

(c) To reduce the **INSURED'S** loss because of the application of the **SELF INSURED RETENTION**.

In the event we decline to be subrogated to all rights, which the **INSURED** may have against any person, or other entity in respect to any **CLAIM** or payment made under this policy, the **INSURED** shall regain its rights and may pursue recovery against said parties. If any reimbursement is obtained, or salvage or recovery made by the **INSURED** on account of any loss covered by this policy, the net amount of such reimbursement, salvage or recovery, after deducting the actual cost of obtaining or making the same, shall first be applied in the following order:

(d)  Amount of loss that exceeds the applicable **LIMITS OF INSURANCE**;

(e)  To reduce the **INSURED'S** loss because of the application of the **SELF INSURED RETENTION**;

(f)  To reduce our loss until we are fully reimbursed.

19. **TERRITORY**:  This policy applies worldwide; however, indemnity by us shall be made only if the original **SUIT** and any related legal actions are brought in the United States of America, its territories or possessions, or transferred to the United States of America, its territories or possessions from a foreign jurisdiction.

20. **THIRD PARTY CLAIMS ADMINISTRATOR**:  This policy of insurance is issued by us on the express condition that the **NAMED INSURED** undertakes, through a written Third Party Claims Administrator's agreement, to utilize at all times the services of a Third Party Claims Administrator which has been approved by us prior to binding.  In the event of cancellation, expiration or revision of the agreement between the **NAMED INSURED** and the designated Third Party Claims Administrator, the **NAMED INSURED** must notify us 90 days prior to the effective date of such cancellation, expiration or revision, and the **NAMED INSURED** and we must agree upon the specifications for the new Third Party Claims Administrator.

These conditions shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

21. **WAIVER OF SUBROGATION**:  This policy shall not be invalidated if the **INSURED**, by written agreement, has waived or shall waive its right of recovery from any party for loss or damage covered hereunder; provided any such waiver is made prior to the **OCCURRENCE** of said loss or damage.

## GENERAL POLICY EXCLUSIONS

The following exclusions apply to all **COVERAGE SECTIONS** of this policy, except **COVERAGE SECTION VI** or as otherwise indicated.

**THIS INSURANCE DOES NOT APPLY TO:**

1.  Any loss or **CLAIM** arising out of any criminal, fraudulent, dishonest act or act of bad faith of an **INSURED**, whether working alone or with others, or arising from the deliberate violation of any Federal, State, or local statute, ordinance, rule or regulation committed by or with the knowledge of an **INSURED** except to the extent coverage is provided in **COVERAGE SECTION VIII**.

2.  (a)  Any costs, civil fines, penalties or expenses levied or imposed against an **INSURED** arising from any complaint or enforcement action from any Federal, State, or local government regulatory agency;

(b)  Punitive damages, exemplary damages or the multiplied portion of any damage award; or

(c)  Relief or redress in any form other than monetary damages, or for any fees, costs or expenses, which an **INSURED** may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief.

With respect only to paragraph (a) above, this exclusion does not apply to the extent coverage is provided under **COVERAGE SECTION I ADDITIONAL COVERAGE D. ORDINANCE OR LAW**.

3. Any liability arising out of the operation of the principles of eminent domain, condemnation proceedings, adverse possession or inverse condemnation proceedings by whatever name called, whether such liability accrues directly against the **INSURED** or by virtue of any agreement entered into by or on behalf of the **INSURED**.

4. **BODILY INJURY**, **PERSONAL INJURY**, **PROPERTY DAMAGE** or loss or damage to the **PROPERTY OF THE INSURED**, either directly or indirectly occasioned by, happening through, or in consequence of:

   (a) War, including undeclared or civil war;

   (b) Warlike action by a military force including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

   (c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

   (d) Confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

5. (a) Any liability, loss, cost, expense or damage, including loss of use, caused by the release, discharge or dispersal of **POLLUTANTS** anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous:

   (1) At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any **INSURED**;

   (2) At or from any premises, site or location which is or was at any time used by or for any **INSURED** or others for the handling, storage, disposal, processing or treatment of waste;

   (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **INSURED** or any person or organization for whom any **INSURED** may be legally responsible;

   (4) At or from any premises, site or location on which any **INSURED** or any contractor or subcontractor working directly or indirectly on any **INSURED'S** behalf are performing operations:

      (i) If the **POLLUTANTS** are brought on or to the premises, site or location in connection with such operations by such **INSURED**, contractor or subcontractor; or

      (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**;

   (5) That are, or that are contained in any property that is:

      (i) Being transported or towed by, handled, or handled for movement into, onto or from, an **AUTOMOBILE** covered under **COVERAGE SECTION IV**;

      (ii) Otherwise in the course of transit by or on behalf of the **INSURED**; or

      (iii) Being stored, disposed of, treated or processed in or upon an **AUTOMOBILE** covered under **COVERAGE SECTION IV**;

   (6) Before the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from the place where they are accepted by the **INSURED** for movement into or onto an **AUTOMOBILE** covered under **COVERAGE SECTION IV**; or

   (7) After the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from an **AUTOMOBILE** covered under **COVERAGE SECTION IV** to the place where they are finally delivered, disposed of or abandoned by the **INSURED**.

   However:

(i) With respect to **COVERAGE SECTION II GENERAL LIABILITY**, Paragraph 5.(a)(1) does not apply to:

    (aa) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke or fumes from a **HOSTILE FIRE** as defined in **COVERAGE SECTION II**;

    (bb) **BODILY INJURY** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

However, in no event do the exceptions in (1) (aa) and (bb) above apply to or at any building or premises, site or location which is or was used by or for any **INSURED** or others for the handling, storage, disposal, processing or treatment of waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(ii) With respect to **COVERAGE SECTION II GENERAL LIABILITY**, Paragraph 5.(a) does not apply to:

    (aa) The purifying or treatment of drinking water and the day-to-day operations and/or maintenance of swimming pools;

    (bb) Herbicide or pesticide spraying, if the operations meet all standards of and comply with any statute, ordinance, regulations or license requirement of any Federal, State or local government;

    (cc) The reverse flow of sewage into any building from a sewage facility, fixed conduit or sanitary sewer that the **INSURED** owns, operates or maintains;

    (dd) The use of chemicals in a **NAMED INSURED'S** classroom for educational purposes; or

    (ee) Chemicals used in janitorial duties.

    Paragraph (2) inclusive of subparagraphs (aa) through (ee) only applies with respect to a Short-Term Pollution Event, and the **NAMED INSURED** must notify us of the Short-Term Pollution Event as soon as practicable but no more than fourteen (14) days after its ending.

    As used in this exclusion, Short-Term Pollution Event means a release, discharge, dispersal, seepage, migration or escape of **POLLUTANTS** which:

    [i] Begins during the **PERIOD OF INSURANCE**;

    [ii] Begins at an identified time and place;

    [iii] Ends in its entirety, at an identified time within 48 hours of the beginning of the release, discharge, dispersal, seepage, migration or escape of **POLLUTANTS**; and

    [iv] Does not originate from an underground storage tank. Underground storage tank means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

(iii) With respect to **COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES**, Paragraph 5.(a) does not apply to the use of teargas, mace or similar substances by any public safety officer within the scope of employment for the **NAMED INSURED** only if the **NAMED INSURED'S** operations meet all the standards of any statute, ordinance, regulation or license requirement of any Federal, State or local government which apply to those operations.

(iv) With respect to **COVERAGE SECTION IV AUTOMOBILE LIABILITY**:

    (aa) Paragraph 5.(a) does not apply to **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the collision, upset or overturn of any **AUTOMOBILE**.

    (bb) Paragraph 5.(a)(5) does not apply to fuels, lubricants, fluids, exhaust gases or other similar **POLLUTANTS** that are needed for, or result from the normal electrical, hydraulic or mechanical functioning of an **AUTOMOBILE** covered under **COVERAGE SECTION IV** or its parts, if:

        [i] The **POLLUTANTS** escape, seep, migrate, or are discharged, dispersed or released directly from an **AUTOMOBILE** part designed by its manufacturer to hold, store, receive or dispose of such **POLLUTANTS**; and

        [ii] The **BODILY INJURY** or **PROPERTY DAMAGE** does not arise out of the operation of any equipment defined as **MOBILE EQUIPMENT**.

    (cc) Paragraphs 5.(a)(6) and 5.(a)(7) do not apply to **OCCURRENCES** that occur away from premises owned by or rented to an **INSURED** with respect to **POLLUTANTS** not in or upon an **AUTOMOBILE** covered under **COVERAGE SECTION IV** if:

        [i] The **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are upset, overturned or damaged as a result of the maintenance or use of an **AUTOMOBILE** covered under **COVERAGE SECTION IV**; and

        [ii] The discharge, dispersal, seepage, migration, release or escape of the **POLLUTANTS** is caused directly by such upset, overturn or damage.

(b) Any loss, cost or expense arising out of any:

    (1) Request, demand, order or statutory or regulatory requirement that an **INSURED** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**; or

    (2) **CLAIM** or **SUIT** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **POLLUTANTS**.

6. Any **CLAIM** based upon any fiduciary obligation or fiduciary duty or the **INSURED'S** failure to comply with the Federal Employee Retirement Income Security Act of 1974 (ERISA), the Pension Benefit Act, the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) and Section 89 of Internal Revenue Code, including subsequent amendments or any similar federal, state or local law or regulations.

7. Any **CLAIM** arising out of any **INSURED'S** activities in an investing or fiduciary capacity including but not limited to, any **EMPLOYEE BENEFIT PROGRAMS**, or the administration of any self-insurance fund.

8. (a) Any liability:

    (1) With respect to which an **INSURED** under the policy is also an **INSURED** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an **INSURED** under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which:

    (i) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    (ii) An **INSURED** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(b) Any liability for any expenses incurred with respect to **BODILY INJURY** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and arising out of the operation of a **NUCLEAR FACILITY** by any person or organization.

(c) Any liability resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**, if:

(1) The **NUCLEAR MATERIAL**:

(i) Is at any **NUCLEAR FACILITY** owned by, or operated by or on behalf of, an **INSURED**; or

(ii) Has been discharged or dispersed therefrom;

(2) The **NUCLEAR MATERIAL** is contained in **SPENT FUEL** or **WASTE** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **INSURED**; or

(3) Arising out of the furnishing by an **INSURED** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **NUCLEAR FACILITY**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to **PROPERTY DAMAGE** to such **NUCLEAR FACILITY** and any property thereat.

(d) As used in this exclusion:

**HAZARDOUS PROPERTIES** means radioactive, toxic or explosive properties.

**NUCLEAR FACILITY** means:

(1) Any **NUCLEAR REACTOR**;

(2) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium,

(ii) Processing or utilizing **SPENT FUEL**, or

(iii) Handling, processing or packaging **WASTE**;

(3) Any equipment or device used for the processing, fabricating or alloying of **SPECIAL NUCLEAR MATERIAL** if at any time the total amount of such material in the custody of an **INSURED** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **WASTE**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**NUCLEAR MATERIAL** means **SOURCE MATERIAL**, **SPECIAL NUCLEAR MATERIAL** or **BY-PRODUCT MATERIAL**.

**NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**PROPERTY DAMAGE**, as defined in this exclusion, only means physical injury to tangible property, including all resulting loss of use of such property; and includes all forms of radioactive contamination of property.

**SOURCE MATERIAL**, **SPECIAL NUCLEAR MATERIAL** or **BY-PRODUCT MATERIAL** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**SPENT FUEL** means **a**ny fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**.

**WASTE** means any **WASTE** material:

(1) Containing **BY-PRODUCT MATERIAL** other than the tailings or **WASTES** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **SOURCE MATERIAL** content; and

(2) Resulting from the operation by any person or organization of any **NUCLEAR FACILITY**.

9. Any loss, cost or expense directly or indirectly arising out of, resulting from, caused by or contributed to by:

(a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(b) The use of asbestos in constructing or manufacturing of any good, product or structure;

(c) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(d) The abatement, mitigation, removal, or disposal of asbestos or goods or products containing asbestos; or

(e) Payment for the investigation or defense of any loss, fine or penalty; or for any expense or claim; related to (a), (b), (c) or (d) above.

10. Any loss, cost or expense directly or indirectly arising out of, resulting from, caused by or contributed to by:

(a) Inhaling, ingesting or prolonged physical exposure to lead, lead compounds or lead contained in any materials;

(b) The abatement, mitigation, removal, or disposal of lead, lead compounds or lead contained in any materials;

(c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with (a) or (b) above; or

(d) Any obligation to share damages with or repay someone else who must pay damages in connection with (a), (b) or (c) above.

11. Any **CLAIM**, including defense of same, arising directly or indirectly from any actual or alleged **SEXUAL ABUSE** of any person by any **NAMED INSURED**; official, member of board or commission, trustee, director, officer, partner, volunteer, student teacher or employee of the **NAMED INSURED**; or anyone to whom the **NAMED INSURED** is obligated by virtue of a written contract or agreement.

This exclusion does not apply to **COVERAGE SECTION V** but only to the extent that coverage is provided under such section for **SEXUAL ABUSE**.

12. Any **CLAIM**, including defense of same, arising directly or indirectly from any actual or alleged **SEXUAL HARASSMENT** of any person by any **NAMED INSURED**; official, member of board or commission, trustee, director, officer, partner, volunteer, student teacher or employee of the **NAMED INSURED**; or anyone to whom the **NAMED INSURED** is obligated by virtue of a written contract or agreement.

This exclusion does not apply to **COVERAGE SECTION V** but only to the extent that coverage is provided under such section for **SEXUAL HARASSMENT**.

13. Any **CLAIM** arising out of estimates of probable costs or cost estimates being exceeded or for faulty preparation of bid specifications or plans or failure to award contracts in accordance with statutes or ordinance, which under law must be submitted for bids.

14. Any **CLAIM** arising out of:

(a) The rendering or failure to render:

(1) Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(2)  Any service or treatment conducive to health or of a professional nature;

(b)  The furnishing or dispensing of drugs, medical, dental, or surgical supplies or appliances;

(c)  Any service by any person as a member of a formal accreditation or similar professional board or committee**,** or as a person charged with the duty of executing directives of any such board or committee; or

(d)  Any blood product handled or distributed by an **INSURED** or the reliance upon any representation or warranty made at any time with respect to blood products.

With respect to **COVERAGE SECTION II** and **COVERAGE SECTION III**, this exclusion does not apply to the extent that coverage is provided under these sections for **INCIDENTAL MEDICAL MALPRACTICE**.

**15.** Any premium, assessment, penalty, fine, benefit or other obligation imposed by or granted pursuant to any Workers' Compensation Law, unemployment compensation or disability benefits law, the Jones Act, General Maritime Law, the Federal Employers' Liability Act, Federal Employee Compensation Act, the Defense Base Act, U.S. Longshoremen's and Harbor Workers' Compensation Act, Federal Coal Mine Health and Safety Act, Non-appropriated Fund Instrumentalities Act, Outer Continental Shelf Lands Act, Migrant and Seasonal Agricultural Worker Protection Act, any federal occupational disease law; any amendments to such laws or under any similar law for which the **NAMED INSURED**, or any carrier as your insurer, may be held liable; or for which the **NAMED INSURED** is a qualified self insurer.

This exclusion does not apply to **COVERAGE SECTION VI** but only to the extent that coverage is provided under such section for **COVERAGE A WORKERS' COMPENSATION**.

**16.** Liability arising out of the **ADMINISTRATION** of any **EMPLOYEE BENEFIT PROGRAM**.

This exclusion does not apply to the extent coverage is provided under **COVERAGE SECTION VII**.

**17.** Liability arising out of the ownership, maintenance, loading or unloading, control, use or operations of any aircraft, airfields, runways, hangars, buildings or other properties in connection with aviation activities.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**. However, this exclusion does not apply with respect to any coverage provided for **EMPLOYMENT PRACTICES LIABILITY** in **COVERAGE SECTION V**.

With respect to **COVERAGE SECTION II**, this exclusion does not apply to liability for the premises of buildings or other properties to which the general public is admitted.

**18.** Liability arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any watercraft owned or operated by an **INSURED** or rented, loaned, or chartered by or on behalf of an **INSURED**.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**. However, this exclusion does not apply with respect to any coverage provided for **EMPLOYMENT PRACTICES LIABILITY** in **COVERAGE SECTION V**.

With respect to **COVERAGE SECTION II**, this exclusion does not apply to:

(a)  Watercraft while ashore on premises the **NAMED INSURED** owns or rents; or

(b)  Watercraft less than 51 ft. long and not being used to carry persons or property for a charge.

**19.** (a)  Any **CLAIM** by an **INSURED** against any other **INSURED**; and

(b)  Any injury or damage to the spouse, child, parent, brother or sister of the **INSURED** as a consequence of (a) above.

This exclusion does not apply to the extent coverage is provided for **EMPLOYMENT PRACTICE VIOLATIONS** or **EMPLOYEE BENEFITS WRONGFUL ACT** for a **CLAIM** by an employee.

20. The cost of any investigation, disciplinary or criminal proceedings against an individual **INSURED** except that we may, at our option and expense, associate counsel in the defense of any such investigation, criminal or disciplinary proceeding. We do not have the duty to defend; however, should we elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights we may have pursuant to the terms, conditions, exclusions and limitations of this policy.

This exclusion does not apply to the extent coverage is provided for **EMPLOYMENT PRACTICE VIOLATIONS** for a **CLAIM** by an employee.

21. Any loss, damage, cost, **CLAIM**, expense, or liability of whatsoever nature directly or indirectly caused by, resulting from or in any way involving **FUNGAL PATHOGENS**. This exclusion shall apply regardless of any other cause or event that contributes concurrently or in sequence to the loss, damage, cost, **CLAIM**, expense, or liability.

This exclusion shall not apply to **COVERAGE SECTION I**; but only when such loss arises directly from a **NAMED PERIL** not otherwise excluded under **COVERAGE SECTION I**.

22. Any **CLAIM** arising out of the rendering or failure to render any **PROFESSIONAL SERVICE**, in whatever form, by:

(a) An **INSURED**;

(b) Any other person performing services for or on behalf of any **INSURED**;

(c) Any client, participant, service recipient, student or patient of an **INSURED**; or

(d) Any person relating to or in any way interacting, directly or indirectly, with an **INSURED**.

As used in this exclusion, **PROFESSIONAL SERVICES** mean services that may be legally performed only by a person holding a professional license. **PROFESSIONAL SERVICES** do not include services by teachers, educators, school guidance counsellors, school nurses and those services described under **INCIDENTAL MEDICAL MALPRACTICE**.


## COVERAGE SECTION I PROPERTY

## COVERAGE SECTION I INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

A. **BLANKET PROPERTY OF THE INSURED** (except **AUTOMOBILES** and Personal Property in Transit): We agree, subject to the policy limitations, terms and conditions to pay the **INSURED** for direct physical loss or damage to **PROPERTY OF THE INSURED** (except **AUTOMOBILES** and Personal Property in Transit) at the premises described in the **SCHEDULE OF LOCATIONS**, caused by or resulting from a **COVERED PERIL**.

B. **AUTOMOBILE PHYSICAL DAMAGE**: We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for direct physical loss or damage to **AUTOMOBILES**, wherever located, owned by the **INSURED** or on which the **INSURED** has an obligation to provide insurance, caused by or resulting from a **COVERED PERIL**.

C. **GARAGEKEEPERS LEGAL LIABILITY**: We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for direct physical loss or damage to **AUTOMOBILES** left in the **INSURED'S** care for which the **INSURED** is legally obligated, caused by or resulting from a **COVERED PERIL**.

The following **COVERAGE EXTENSIONS** do not increase our **LIMITS OF INSURANCE**, nor are we liable for a greater percentage of the amount of the limit, shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

These Extensions apply only if a sublimit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**A. EXTRA EXPENSE**

We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for **EXTRA EXPENSE** incurred when **PROPERTY OF THE INSURED** at the premises described in the **SCHEDULE OF LOCATIONS** is damaged or destroyed by a **COVERED PERIL** causing a **SUSPENSION** of **OPERATIONS**. We will be liable for such **EXTRA EXPENSE**, not exceeding the actual and necessary expenses incurred, and not exceeding such length of time, hereinafter referred to as the **PERIOD OF RESTORATION**.

This Extension also includes **EXTRA EXPENSE** for **DATA PROCESSING** at premises described in the **SCHEDULE OF LOCATIONS** when: (1) the premises in which the property is located is so damaged as to prevent access to such property; or (2) as a direct result of a **COVERED PERIL**, the air conditioning system or electrical system necessary for the operation of the **COMPUTER SYSTEMS** is so damaged as to reduce or suspend the **INSURED'S** ability to actually perform the **NORMAL OPERATIONS** performed by the **COMPUTER SYSTEMS**. **EXTRA EXPENSE** for **DATA PROCESSING** includes the expense of using other property or facilities of other concerns or other necessary emergency expenses.

**INTERRUPTION BY CIVIL AUTHORITY**: Coverage is extended to include the actual and necessary **EXTRA EXPENSE** incurred when a civil authority prohibits access to premises described in the **SCHEDULE OF LOCATIONS** due to loss or damage by a **COVERED PERIL** to real property located at other than the described premises. **INTERRUPTION BY CIVIL AUTHORITY** coverage will begin immediately after the first action of civil authority that prohibits access to the described premises and will end four consecutive weeks after the date of that action.

**EXTRA EXPENSE CONDITIONS -** In addition to the **GENERAL POLICY CONDITIONS** and the **COVERAGE SECTION I CONDITIONS**, the following condition also applies to this **EXTRA EXPENSE EXTENSION**:

**RESUMPTION OF OPERATIONS**:  It is a condition of this policy that as soon as practical, the **INSURED** will resume **NORMAL** business **OPERATIONS** and discontinue **EXTRA EXPENSE**.

**B. BUSINESS INCOME**

We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for the actual loss of **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUE** the **INSURED** sustained due to the necessary **SUSPENSION** of **OPERATIONS** during the **PERIOD OF RESTORATION**. The **SUSPENSION** must be caused by direct physical loss or damage to **PROPERTY OF THE INSURED** at the premises described in the **SCHEDULE OF LOCATIONS.**  The loss or damage must be caused by or result from a **COVERED PERIL**.

**INTERRUPTION BY CIVIL AUTHORITY**: Coverage for **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUE** is extended to include the actual loss sustained when a civil authority prohibits access to premises described in the **SCHEDULE OF LOCATIONS** due to loss or damage by a **COVERED PERIL** to real property located at other than the described premises. **INTERRUPTION BY CIVIL AUTHORITY** coverage will begin immediately after the first action of civil authority that prohibits access to the described premises and will end four consecutive weeks after the date of that action.

**EXPENSES TO REDUCE LOSS**:  If there is a **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES** loss, we will pay the **INSURED** for expenses necessarily incurred to reduce further loss of **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUE**. The total loss payment for **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES** loss, and expense to

reduce loss will not be more than the **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES** loss that would have been payable if the expenses to reduce loss had not been incurred.

**EXTENDED BUSINESS INCOME**: If the necessary **SUSPENSION** of the **INSURED'S OPERATIONS** produces a **BUSINESS INCOME** loss payable under this policy, we will pay the **INSURED** for the actual loss of **BUSINESS INCOME** incurred during the **PERIOD OF RESTORATION** and up to ninety (90) days thereafter, that would have existed if no direct physical loss or damage had occurred. However, extended **BUSINESS INCOME** does not apply to loss of **BUSINESS INCOME** incurred as a result of the lack of building materials or contractors being available because of widespread damage, caused by the impact of the **COVERED PERIL** in the area where the premises described in the **SCHEDULE OF LOCATIONS** are located.

**EXTENDED RENTAL VALUES**: If the necessary **SUSPENSION** of the **INSURED'S OPERATIONS** produces a **RENTAL VALUES** loss payable under this policy, we will pay the **INSURED** the actual loss of **RENTAL VALUES** incurred during the **PERIOD OF RESTORATION** and up to ninety (90) days thereafter, that would have existed if no direct physical loss or damage had occurred. However, extended **RENTAL VALUES** does not apply to loss of **RENTAL VALUES** incurred as a result of the lack of building materials or contractors being available because of widespread damage caused by the impact of the **COVERED PERIL** in the area where the premises described in the **SCHEDULE OF LOCATIONS** are located.

**EXTENDED TUITION AND FEES**: If the necessary **SUSPENSION** of the **INSURED'S OPERATIONS** produces a **TUITION AND FEES** loss payable under this policy, we will pay the **INSURED** the actual loss of **TUITION AND FEES** incurred during the **PERIOD OF RESTORATION** and up to ninety (90) days thereafter, that would have existed if no direct physical loss or damage had occurred. However, extended **TUITION AND FEES** does not apply to loss of **TUITION AND FEES** incurred as a result of the lack of building materials or contractors being available because of widespread damage caused by the impact of the **COVERED PERIL** in the area where the premises described in the **SCHEDULE OF LOCATIONS** are located.

**C. PERSONAL PROPERTY IN TRANSIT**

We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for direct physical loss or damage (including general average and salvage charges on shipments covered while waterborne) to personal property of the **INSURED** or property held by the **INSURED** in their care, custody or control, in trust or on commission or on consignment while in due course of transit, caused by or resulting from a **COVERED PERIL**.

The **INSURED** may accept ordinary bills of lading or receipts insured by carriers including those containing released and/or partially released value provisions, but the **INSURED** shall not agree to release carriers from their common law or statutory liability.

**COVERAGE SECTION I ADDITIONAL COVERAGES**

The following **ADDITIONAL COVERAGES** do not increase our **LIMITS OF INSURANCE** shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**. **ADDITIONAL COVERAGES** apply only when a sublimit for such coverage is shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**A. DEBRIS REMOVAL**: In the event of a direct physical loss or damage caused by a **COVERED PERIL** to the property covered under this policy at the premises described in the **SCHEDULE OF LOCATIONS**, we will pay the **INSURED** for expenses incurred in removal of debris, and the cost of clean up (other than **POLLUTANTS**) of the insured property destroyed or damaged, from the premises described in the **SCHEDULE OF LOCATIONS**.

**B. ASBESTOS AND LEAD CLEAN UP AND REMOVAL**: Notwithstanding the **POLLUTANTS** Exclusion in this policy, we agree to extend **COVERAGE SECTION I PROPERTY** coverage to the **INSURED** to cover expense to remove damaged asbestos or lead from any structure on the premises described in the **SCHEDULE OF LOCATIONS** due to the enforcement of any law or ordinance regulating asbestos or lead that is in force at the time of loss, when the asbestos or lead is itself damaged by a **COVERED PERIL** during the **PERIOD OF INSURANCE**, and then only to the extent of such damage.

**C. ARCHITECTS' AND ENGINEERS' FEES**: This insurance covers the additional assessment involving architects' and engineers' fees for consultations arising from direct physical loss or damage resulting from a **COVERED PERIL**.

**D. ORDINANCE OR LAW**:

1. If a **COVERED PERIL** occurs to a Building that is **PROPERTY OF THE INSURED** described in the **SCHEDULE OF LOCATIONS**, we will pay for:

   a. Loss to the undamaged portion of such building caused by the enforcement of any ordinance or law that:

      (1) Requires the demolition of parts of the same property not damaged by a **COVERED PERIL**;

      (2) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the premises described in the **SCHEDULE OF LOCATIONS**; and

      (3) Is in force at the time of loss.

   b. The increased cost to repair, rebuild, or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law or we agree to a change of occupancy.

   c. The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning, or land use ordinance or law.

2. Under this **ADDITIONAL COVERAGE** we will not pay for:

   a. The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodelling or remediation of property due to contamination by asbestos or lead (except to the extent covered under **COVERAGE SECTION I ADDITIONAL COVERAGE B.**), **POLLUTANTS** or due to the presence, growth, proliferation, spread or any activity of **FUNGAL PATHOGENS**, Virus or Bacteria; or

   b. Any costs associated with the enforcement of any ordinance or law which requires any **INSURED** or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of asbestos or lead, **POLLUTANTS** or **FUNGAL PATHOGENS**, Virus or Bacteria.

3. Under this **ADDITIONAL COVERAGE** we will not pay any costs due to any ordinance or law that:

   a. The **INSURED** was required to comply with before the loss, even if the building was undamaged; and

   b. The **INSURED** failed to comply with.

**E. UNINTENTIONAL ERRORS AND OMISSIONS**: The property insured under this policy is based on property as per the **SCHEDULE OF LOCATIONS**, as submitted by the **INSURED** prior to the inception of this policy.

However, if any **PROPERTY OF THE INSURED** is omitted or undervalued because of negligence, error or oversight of the **INSURED**, we will accept that property provided it is usual or incidental to the **INSURED'S OPERATIONS**. Such omission or undervaluation will not prejudice the **INSURED'S** right of recovery under this policy. The **INSURED** agrees to report to us any omission or undervaluation of property as soon as practicable after it is discovered.

**F. AUTOMATIC ACQUISITION**: This insurance is automatically extended to cover additional property and/or interests of the **INSURED**, usual and/or incidental to the **OPERATIONS** of the **INSURED**, which do not exceed the **AUTOMATIC ACQUISITION LIMIT** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**, and which are acquired, or for which the **INSURED** becomes legally liable, during the **PERIOD OF INSURANCE** under this policy.

This policy is further extended to cover additional property and/or interests of the **INSURED** when newly acquired property values exceed the **AUTOMATIC ACQUISITION LIMIT** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**, provided the **INSURED** reports details of said property and/or interests to us for premium consideration within ninety (90) days from the date the **INSURED** acquires or becomes legally liable for the property provided that the property is acquired or interests secured during the **PERIOD OF INSURANCE** under this policy.

## COVERAGE SECTION I LIMITS OF INSURANCE

The most we will pay under **COVERAGE SECTION I PROPERTY** is the amount shown for all coverages under **COVERAGE SECTION I** combined under the **LIMIT OF INSURANCE** for each **OCCURRENCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** and any applicable **MAINTENANCE DEDUCTIBLE** as stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** for each **OCCURRENCE** under **COVERAGE SECTION I PROPERTY** limit for all coverages under **COVERAGE SECTION I** combined.

If an Annual Aggregate Limit applies to any coverage under **COVERAGE SECTION I**, the total Aggregate **LIMIT OF INSURANCE** for such coverage under **COVERAGE SECTION I** shall not exceed the applicable limit as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

## COVERAGE SECTION I CONDITIONS

The following conditions apply in addition to the **GENERAL POLICY CONDITIONS**:

**A. ABANDONMENT**: There can be no abandonment of any property to us.

**B. CONCEALMENT, MISREPRESENTATION OR FRAUD**: We will not pay for any loss or damage in any case of:

1. Concealment or misrepresentation of a material fact; or

2. Fraud;

committed by an **INSURED** at any time and relating to an insurance application, rating, claim or coverage under this policy.

**C. NO BENEFIT TO BAILEE**: No person or organization, other than the **NAMED INSURED**, having custody of **PROPERTY OF THE INSURED** will benefit from this insurance.

**D. PAIR OR SETS**: In case of loss or damage to any part of a pair or set we may:

1. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

2. Pay the difference between the value of the pair or set before and after the loss or damage.

**E. PERIOD OF INSURANCE**: Under **COVERAGE SECTION I PROPERTY**, we cover loss or damage or expense that occurs during the **PERIOD OF INSURANCE** shown in the **COMMON POLICY DECLARATIONS**.

**F. DUE DILIGENCE**: The **INSURED** shall use due diligence and concur in doing all things reasonably practical to avoid or diminish any loss of or damage to the property insured.

**G. MORTGAGE**: The interest of any mortgagor on property covered by this policy is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage as of the date of loss subject to the applicable limits as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**H. VALUATION**:

1. **REAL AND PERSONAL PROPERTY (except ACCOUNTS RECEIVABLE, AUTOMOBILES, DATA PROCESSING, FINE ARTS, MOBILE EQUIPMENT AND VALUABLE PAPERS)**:

We will pay the **INSURED** for the lesser of the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to, but not superior to, or more extensive, than its condition when new. If the **INSURED** decides to replace destroyed or damaged property on another site, cost of such site is not included.

It is not a condition that the **INSURED** repair, rebuild or replace the destroyed or damaged property in order to collect for loss or damage covered by this insurance. However, in the event the property is not repaired, rebuilt or replaced, we are not liable for loss covered under **COVERAGE SECTION I ADDITIONAL COVERAGE D**.

2. **ACCOUNTS RECEIVABLE**: We will pay the **INSURED** for actual loss sustained for sums due the **INSURED**, including the expenses reasonably incurred in re-establishing the records of **ACCOUNTS RECEIVABLE**:

   a. When there is proof that a covered loss has occurred but the **INSURED** cannot accurately establish the total amount of **ACCOUNTS RECEIVABLE** outstanding as of the date of such loss, such amount shall be based on the **INSURED'S** monthly statements and shall be computed as follows:

      (1) Determine the total of the average monthly amounts of **ACCOUNTS RECEIVABLE** at the end of the twelve (12) months immediately preceding the month in which the loss or damage occurs; and

      (2) Adjust that total for any normal fluctuations in the amount of **ACCOUNTS RECEIVABLE** for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

   b. There shall be deducted from the total amount of **ACCOUNTS RECEIVABLE**, however established:

      (1) The amount of accounts not lost or damaged;

      (2) The amount of the accounts the **INSURED** is able to collect or re-establish;

      (3) An amount to allow for probable bad debts that the **INSURED** is normally unable to collect; and

      (4) All unearned interest and services charges.

3. **AUTOMOBILES**: We will pay the **INSURED** the lesser of the cost to repair the **AUTOMOBILE**, or the actual cash value of the **AUTOMOBILE** at the time of loss; including the cost to rent a vehicle of like kind for no more than thirty days.

4. **DATA PROCESSING**: We will pay the **INSURED** for:

   a. **COMPUTER SYSTEMS** for the lesser of the actual cost to replace or repair the property. If the property is replaced, the actual cost should be based upon the most closely equivalent property available similar in kind and function to that insured hereunder.

   b. **ELECTRONIC DATA** for the lesser of the actual cost to replace, repair or reproduce the property, research the lost information when duplicates do not exist or if not replaced, repaired or reproduced, the blank value of the **ELECTRONIC DATA**. If the property is replaced, the actual cost should be based upon the most closely equivalent property available similar in kind and function to that insured hereunder.

5. **FINE ARTS**: We will pay the **INSURED** for the lesser of the cost to repair the property, or if not repairable the replacement cost, or if not replaceable the appraised or market value at the time of loss.

6. **MOBILE EQUIPMENT**: We will pay the **INSURED** for the lesser of the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to, but not superior to, or more extensive, than its condition when new.

7. **VALUABLE PAPERS**: We will pay the **INSURED** for the lesser of the cost to replace, repair or reproduce the property with other of like kind, including the cost of labor to transcribe or copy the records when there is a duplicate, research the lost information when duplicates do not exist or if not replaced, repaired or reproduced the blank value of the **VALUABLE PAPERS**.

8. **PERSONAL PROPERTY IN THE DUE COURSE OF TRANSIT**: We will pay the **INSURED** the amount on the shipping invoice, including any prepaid or advanced freight, as well as any costs or charges which have been accrued or become legally due since the shipment commenced. In the absence of a shipping invoice, the property will be valued at its actual cash value at the point of destination on the date of loss, less any charges saved which would have been due and payable upon delivery at the destination.

9. **BUSINESS INCOME, TUITION AND FEES, RENTAL VALUE AND EXTRA EXPENSE**:

   a. The amount of **BUSINESS INCOME**, **TUITION AND FEES** and/or **RENTAL VALUE** loss will be determined based on:

      (1) The net income of the business before the direct physical loss or damage occurred;

      (2) The likely net income of the business if no direct physical loss or damage had occurred;

      (3) The operating expenses, including payroll expenses, necessary to resume the business **OPERATIONS** with similar quality of service that existed just before the direct physical loss or damage; and

      (4) Other relevant sources of information, including:

         (a) Financial records and accounting procedures of the **INSURED**;

         (b) Bills, invoices and other vouchers; and

         (c) Deeds, liens or contracts.

   b. The amount of **EXTRA EXPENSE** will be determined based on:

      (1) All expenses that exceed the **NORMAL** operating expenses that would have been incurred by the **INSURED'S** business **OPERATIONS** during the **PERIOD OF RESTORATION** if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

         (a) The salvage value that remains of any property bought for temporary use during the **PERIOD OF RESTORATION**, once **OPERATIONS** are resumed; and

         (b) Any **EXTRA EXPENSE** that is paid for by other insurance, except for insurance that is written subject to the same terms, conditions and provisions as this insurance; and

      (2) All necessary expenses that reduce the **BUSINESS INCOME**, **TUITION AND FEES**, **RENTAL VALUE** or **EXTRA EXPENSE** loss that otherwise would have been incurred.

   c. **RESUMPTION OF OPERATIONS**: We will reduce the amount of the **INSURED'S BUSINESS INCOME**, **TUITION AND FEES** and/or **RENTAL VALUES** loss to the extent the **INSURED** can resume **OPERATIONS**, with reasonable speed, in whole or in part, by using damaged or undamaged property at the premises described in the **SCHEDULE OF LOCATIONS** or elsewhere.

      If the **INSURED** does not resume **OPERATIONS** with reasonable speed, or does not resume **OPERATIONS** in whole or in part, we will pay the **INSURED** the **BUSINESS INCOME**, **TUITION AND FEES** and/or **RENTAL VALUES** loss based on the length of time it would have taken to resume **OPERATIONS** with reasonable speed, or to resume **OPERATIONS** in whole or in part.

I. **JOINT LOSS CLAUSE**: In the event of damage to or destruction of **PROPERTY OF THE INSURED** at the premises described in the **SCHEDULE OF LOCATIONS** in this policy and also designated in a boiler and machinery insurance policy, and there is a disagreement between the two insurers with respect to:

1. Whether such damage or destruction was caused by a **COVERED PERIL** under this policy or by an accident insured against by such boiler and machinery insurance policy; or

2. The extent of participation of this policy and of such boiler and machinery insurance policy in a loss which is insured against, partially or wholly, by any or all policies;

we shall, upon written request of the **NAMED INSURED**, pay to the **NAMED INSURED,** one-half of the amount of loss which is in disagreement, but in no event more than we would have paid if there had been no boiler and machinery insurance policy in effect, subject to the following conditions:

3. The amount of the loss which is in disagreement after making provisions for any undisputed claims payable under the said policies and after the amount of loss is agreed upon by the **INSURED** and the two insurers, is limited to the minimum amount remaining payable by any or all policies;

4. The boiler and machinery insurer shall simultaneously pay to the **INSURED** one-half of said amount which is in disagreement;

5. The payments by the two insurers hereunder and acceptance of the same by the **INSURED** signify the agreement of the two insurers to submit to and proceed with arbitration within ninety (90) days of such payments. The arbitrators shall be three in number, one of whom shall be appointed by the boiler and machinery insurer and one of whom shall be appointed by us and the third appointed by consent of the other two, the decision by the arbitrators shall be binding on the two insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

6. The **INSURED** agrees to cooperate in connection with such arbitration but not to intervene within;

7. The provisions of this clause shall not apply unless such other policy issued by the boiler and machinery insurer contains a similar clause or is similarly endorsed;

8. Acceptance by the **INSURED** of sums paid pursuant to the provisions of this clause including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the **INSURED** against any of the two insurers.

**J. LEGAL ACTION AGAINST US**:  No one may bring a legal action against us under **COVERAGE SECTION I** unless:

1. There has been full compliance with all of the terms of this **COVERAGE SECTION I**; and

2. The action is brought within two years after the date on which the direct physical loss or damage occurred.

**COVERAGE SECTION I EXCLUSIONS**

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any loss, damage or expense, whether direct or consequential, which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any loss, damage, expense, or loss of use of property, whether direct or consequential, caused by or resulting from the presence of asbestos or lead in any form, except as covered in **COVERAGE SECTION I ADDITIONAL COVERAGE D**.

**C.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from the enforcement of any ordinance or law:

1. Regulating the construction, use or repair of any property; or

2. Requiring the tearing down of any property, including the cost of removing its debris.

This ordinance or law exclusion applies whether the loss, damage or expense is caused by or results from:

      a.  An ordinance or law that is enforced even if the property has not been damaged; or

      b.  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

This exclusion does not apply to the extent coverage is provided under **COVERAGE SECTION I ADDITIONAL COVERAGE D**.

**D.**  Any loss, damage or expense whether direct or consequential, caused by or resulting from **FLOOD AND SURFACE WATER** to any property located in a Special Flood Hazard Area (SFHA), generally meaning a High Risk Area or a High Risk Coastal Area. These properties are typically assigned to:

    1.  Zone A, AO, AH, A1 through 30, AE, A99, AR, AR/A1 through 30, AR/AE, AR/AO, AR/AH, AR/A, VO, V1 through 30, VE, or V; or

    2.  A similar high risk rating;

by or through cooperation or contract with the Federal Emergency Management Agency (FEMA) or a successor or equivalent organization.

This exclusion applies regardless of whether **FLOOD AND SURFACE WATER** is caused by or results from an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water**.**

**E.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from nuclear reaction or radiation, or radioactive contamination.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire, but only in those jurisdictions where it is required by law and then only to the extent of the minimum requirements of such law.

**F.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under **COVERAGE SECTION I**.

**G.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from nesting, infestation or discharge or release of waste products or secretion by birds, moth, vermin, termite, insects, or other animals; by wear, rust, tear, lack of proper maintenance; or by gradual deterioration, wet rot or dry rot.

**H.**  Any loss, damage or expense, whether direct or consequential, caused by, resulting from or in any manner related to **FUNGAL PATHOGENS**, Virus or Bacteria whether or not there is another peril which may have contributed concurrently or in any sequence to a loss. But if **FUNGAL PATHOGENS** or Bacteria results in a **COVERED PERIL**, we will pay for the loss or damage caused by that **COVERED PERIL**.

This exclusion does not apply when **FUNGAL PATHOGENS** or Bacteria directly results from a **NAMED PERIL**.

**I.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of **POLLUTANTS**, except to the extent coverage is provided under **COVERAGE SECTION I ADDITIONAL COVERAGE B**.

**J.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from loss of use (except as covered under the **EXTRA EXPENSE** and/or the **BUSINESS INCOME** EXTENSIONS), delay or loss of markets.

**K.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from mechanical breakdown, including rupture or bursting caused by or resulting from centrifugal force, but not excluding any loss arising from a **COVERED PERIL** directly resulting from the mechanical breakdown.

**L.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from the explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the **INSURED**, or operated under the **INSURED'S** control.

But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**M.** Any loss, damage, expense or loss of use, whether direct or consequential, of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artificially generated electrical current unless fire ensues, and then only for direct loss or damage caused by such ensuing fire, except as may be covered under **DATA PROCESSING**.

**N.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from variation of humidity or temperature, shrinkage, evaporation, loss of weight or leakage; unless a loss from a **COVERED PERIL** ensues, and then only for direct physical loss or damage arising from the **COVERED PERIL**.

**O.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from normal settling, cracking, normal shrinkage, or expansion of foundations, floors or ceilings.

**P.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from inventory shortage, mysterious disappearance or loss resulting from any kind of infidelity or dishonesty on the part of the **INSURED** or any employees; whether alone or in collusion with others.

**Q.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from penalties for non-completion or delay as respects property in course of construction or undergoing renovation.

**R.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from inherent or latent defect, except collapse of a building or any part of a building. Collapse as used in this exclusion does not include normal settling, shrinkage, or expansion.

**S.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from faulty, inadequate or defective:

1. Planning, zoning, development, surveying, siting;

2. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3. Materials used in repair, construction, renovation or remodeling; or

4. Maintenance;

to part of, or all of, any property on or off premises described in the **SCHEDULE OF LOCATIONS**.

But if an excluded peril that is listed in 1. to 4. above results in a **COVERED PERIL**, we will pay for the loss or damage caused by that **COVERED PERIL**.

**T.** Any loss, damage or expense, whether direct or consequential, to animals.

**U.** Any loss, damage or expense, whether direct or consequential, to aircraft.

**V.** Any loss, damage or expense, whether direct or consequential, to watercraft over 50 feet in length.

**W.** Any loss, damage or expense, whether direct or consequential, to roadways or other paved surfaces, tunnels, bridges, dams, dikes, levees, reservoirs, bulkheads, pilings, piers, wharves or docks.

**X.** Any loss, damage or expense, whether direct or consequential, to standing timber, growing crops, land and land value, or landscaping, unless such property is clearly described and specific values to replace the property are shown in the **SCHEDULE OF LOCATIONS**.

**Y.** Any loss, damage or expense, whether direct or consequential, to accounts, bills, currency, **MONEY**, food stamps, notes, **SECURITIES**, deeds, evidences of debt, (lottery tickets held for sale are not **SECURITIES**) except as otherwise covered under **ACCOUNTS RECEIVABLE** or **DATA PROCESSING**.

**Z.** Any loss, damage or expense, whether direct or consequential, to underground pipes, sewers, flues and drains outside of the covered building, unless as otherwise listed in the **SCHEDULE OF LOCATIONS**.

**AA.** Any loss, damage or expense, whether direct or consequential, to **ACCOUNTS RECEIVABLE** due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning, or as covered under **DATA PROCESSING**.

**BB.** Any loss, damage or expense, whether direct or consequential, or loss of access, loss of use, or loss of functionality to:

1. **ELECTRONIC DATA** due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning;

2. **ELECTRONIC DATA** caused by or resulting from a Computer Virus or by Computer Hacking;

3. **COMPUTER SYSTEMS** and/or **ELECTRONIC DATA** due to dryness or dampness of atmosphere, extremes of temperature, corrosion or rust, unless directly resulting from physical damage to the **COMPUTER SYSTEM'S** air conditioning facilities and directly caused by a **COVERED PERIL**;

4. **COMPUTER SYSTEMS** and/or **ELECTRONIC DATA** due to loss of or damage to **ELECTRONIC DATA** for accounts, bills, evidences of debt, **VALUABLE PAPERS**, records, abstracts, deeds, manuscripts or other documents, except as they may be converted to data processing media form, and then only in that form;

5. **COMPUTER SYSTEMS** and/or **ELECTRONIC DATA** due to loss or damage caused by or resulting from error in machine programming or instructions to machine.

As used in this exclusion:

Computer Hacking means an unauthorized intrusion by an individual or group of individuals, whether employed by the **INSURED** or not, into a **COMPUTER SYSTEM**.

Computer Virus means the introduction into a computer, **COMPUTER SYSTEM** or Web site of any malicious, self-replicating **ELECTRONIC DATA** processing code or other code.

Computer Hacking and Computer Virus are intended to result in, but are not limited to:

6. Deletion, destruction, generation, or modification of **ELECTRONIC DATA**;

7. Alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of **ELECTRONIC DATA**;

8. Observation, scanning, or copying of **ELECTRONIC DATA**;

9. Damage, destruction, inadequacy, malfunction, degradation, or corruption of any **COMPUTER SYSTEMS**; or

10. Denial of access to or denial of services from **COMPUTER SYSTEMS** or **ELECTRONIC DATA.**

**CC.** Any loss, damage or expense, whether direct or consequential, to, or loss of use of, power or communication transmission and distribution lines outside of a covered building, unless as otherwise listed on the **SCHEDULE OF LOCATIONS**.

**DD.** Any loss, damage or expense, whether direct or consequential, to:

1. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

2. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**EE.** With respect to **BUSINESS INCOME**, **TUITION AND FEES**, **RENTAL VALUE** and **EXTRA EXPENSE**, the following exclusions also apply:

1. Any increase of loss, damage or expense caused by or resulting from:

   a. The **SUSPENSION**, lapse or cancellation of any lease, license, contract or order beyond the **PERIOD OF RESTORATION**;

   b. Interference at premises by strikers or other persons with the rebuilding, repairing or replacing of the property damaged or destroyed, or with the resumption or continuation of business;

2. Any other consequential loss.

**FF.** With respect only to **EXTRA EXPENSE**, the following exclusions apply:

1. The cost of repairing or replacing any of the Real or Personal Property covered hereunder, or the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell or other magnetic recordings or **ELECTRONIC DATA**), that have been damaged or destroyed by a **COVERED PERIL**, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this policy. In no event shall such excess cost exceed the amount by which the total **EXTRA EXPENSE** loss otherwise payable under this policy is thereby reduced.

2. Caused by or resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a **COVERED PERIL** under this policy ensues from theft or attempted theft, and then we are liable for only such ensuing loss.

**GG.** With respect to **PERSONAL PROPERTY IN TRANSIT**, the following exclusions also apply:

1. Any loss, damage or expense, whether direct or consequential, caused by or resulting from shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in color, texture or flavor, unless such loss is caused by a **COVERED PERIL**;

2. Any loss, damage or expense, whether direct or consequential, caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the **INSURED** or other party of interest, or employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted);

3. Any loss, damage or expense, whether direct or consequential, caused by or resulting from breakdown or malfunction of refrigerating units;

4. Any loss, damage or expense, whether direct or consequential, to shipments by mail after delivery into the custody of any governmental postal service.

## COVERAGE SECTION I DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. ACCOUNTS RECEIVABLE** means the sums due the **INSURED** from customers, interest charges on any loan to offset impaired collections pending repayment of such sums, and collection expense in excess of normal collection cost.

**ACCOUNTS RECEIVABLE** does not include **ELECTRONIC DATA,** programs or instructions used in the **INSURED'S ELECTRONIC DATA** processing **OPERATIONS**, including the materials on which **ELECTRONIC DATA** is recorded.

B. **BUSINESS INCOME** means the:

    1. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

    2. Continuing normal operating expenses incurred, including payroll.

C. **COMPUTER SYSTEM** means

    1. Computers and related peripheral components;

    2. Systems and applications software;

    3. Terminal devices; and

    4. Related communications networks;

by which **ELECTRONIC DATA** is collected, transmitted, processed, stored and retrieved.

**COMPUTER SYSTEMS** do not include security systems.

D. **COVERED PERIL** means risks of direct physical loss or damage, unless the loss or damage is excluded in **GENERAL POLICY EXCLUSIONS**, **COVERAGE SECTION I EXCLUSIONS** or elsewhere in **COVERAGE SECTION I**, or in an endorsement attached to this policy.

E. **DATA PROCESSING** means the **COMPUTER SYSTEMS** and **ELECTRONIC DATA**  owned, leased or rented, or under the control of the **INSURED** or for which the **INSURED** is liable.

F. **EXTRA EXPENSE** means the excess (if any) of the total cost incurred during the **PERIOD OF RESTORATION** chargeable to the continuance of the **INSURED'S OPERATIONS**, over and above the total cost that would normally have been incurred to conduct those **OPERATIONS** during the same period had there been no direct physical loss or damage to the **PROPERTY OF THE INSURED**.

Any salvage value of property obtained for temporary use during the **PERIOD OF RESTORATION** which remains after resumption of **NORMAL OPERATIONS**, will be taken into consideration in the adjustment of any loss incurred.

G. **FINE ARTS** means paintings, etchings, pictures, tapestries, and other bona fide works of art including but not limited to statuary, marbles, bronzes, antique furniture, rare books, antique silver, rare manuscripts, porcelains, rare glass, and bric-a-brac of rarity, historical value or artistic merit.

H. **NAMED PERIL** means the following:  Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

    1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.  This peril does not include:

        a. The cost of filling sinkholes; or

        b. Sinking or collapse of land into manmade underground cavities.

    2. Falling objects does not include loss or damage to:

        a. Personal property in the open; or

        b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance, that is located on a premises described in the **SCHEDULE OF LOCATIONS** and contains water or steam.

**I. NAMED WINDSTORM** means an atmospheric disturbance marked by high winds, with or without precipitation that has been declared by the National Weather Service to have wind speeds in excess of 39 miles an hour.

**J. NORMAL** with respect to **EXTRA EXPENSE** means the condition that would have existed had no loss occurred.

**K. OCCURRENCE**, except with respect to the perils of **FLOOD AND SURFACE WATER** and **EARTHQUAKE**, means an accident, incident, or a series of accidents or incidents, arising immediately out of one single event or originating cause and includes all resultant or concomitant losses wherever located.

With respect to **FLOOD AND SURFACE WATER** and **EARTHQUAKE**, **OCCURRENCE** is further defined in the definitions of **FLOOD AND SURFACE WATER** and **EARTHQUAKE**.

**L. OPERATIONS** means:

1. The **INSURED'S** business activities occurring at the premises described in the **SCHEDULE OF LOCATIONS**;

2. The **INSURED'S** school activities at the described premises (only if a limit is shown for **TUITION AND FEES** in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**); and

3. The tenantability of the premises described in the **SCHEDULE OF LOCATIONS** (only if a limit is shown for **RENTAL VALUE** in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**).

**M. PERIOD OF RESTORATION:**

1. Except with respect to **TUITION AND FEES,** means the period of time that:

   a. Begins after direct physical loss or damage to the **PROPERTY OF THE INSURED** caused by any **COVERED PERIL** at the premises described in the **SCHEDULE OF LOCATIONS**; and

   b. Ends the earlier of the following dates, subject to a maximum period of 365 days:

      (1) The date when the property at the premises described in the **SCHEDULE OF LOCATIONS** is repaired, rebuilt or replaced with reasonable speed or similar quality; or

      (2) The date when the **INSURED'S OPERATIONS** are resumed at a new permanent location.

   If damage involved was to a building being built or altered, the **INSURED** can choose to have the **PERIOD OF RESTORATION** start on the date the **INSURED** would have begun **OPERATIONS** in the building instead of on the date of damage. The time limitations described in Paragraphs 1.a. and b. above will apply no matter when the **PERIOD OF RESTORATION** begins.

2. With respect to **TUITION AND FEES** means the period of time that:

   a. Begins after direct physical loss or damage to the **PROPERTY OF THE INSURED** caused by any **COVERED PERIL** at the premises described in the **SCHEDULE OF LOCATIONS**; and

   b. Ends on the earlier of:

      (1) The day before the opening of the next school term following the date when, with reasonable speed and similar quality, the property at the described premises is repaired, rebuilt or replaced; or

      (2) The date when the school term is resumed at a new permanent location.

3. With respect to Paragraphs 1. and 2. above:

   **PERIOD OF RESTORATION** does not include any increased period required due to the enforcement of any ordinance or law that:

   a. Regulates the construction, use or repair, or requires the tearing down of any property; or

b. Requires any **INSURED** or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**, asbestos, lead, **FUNGAL PATHOGENS**, virus or bacteria.

The **PERIOD OF RESTORATION** is not limited by the expiration date of this policy.

N. **RENTAL VALUES** means the:

1. Total anticipated rental income from tenant occupancy at the premises described in the **SCHEDULE OF LOCATIONS** as furnished and equipped by the **INSURED**;

2. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be the **INSURED'S** obligations; and

3. Fair **RENTAL VALUES** of any portion of the premises described in the **SCHEDULE OF LOCATIONS** which is occupied by the **INSURED**.

O. **SCHEDULE OF LOCATIONS** means the most recent Statement of Values, **SCHEDULE OF LOCATIONS** or any similar Schedule describing covered premises and values on file with us or the Program Administrator.

P. **SUSPENSION** means:

1. The slowdown or cessation of your business or school activities; or

2. That part or all of the premises described in the **SCHEDULE OF LOCATIONS** that is rendered untenantable if, coverage for **BUSINESS INCOME** including **RENTAL VALUE**, or coverage for **RENTAL VALUE**, applies.

Q. **TUITION AND FEES** means the total anticipated income from tuition and related fees from students, including fees from room, board, laboratories, and other similar sources.

**TUITION AND FEES** do not include research grants.

R. **VALUABLE PAPERS** means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts.

**VALUABLE PAPERS** do not include: **MONEY**, **SECURITIES**, **ELECTRONIC DATA**, programs or instructions used in the **INSURED'S ELECTRONIC DATA** processing **OPERATIONS**, including the materials on which **ELECTRONIC DATA** is recorded.

## COVERAGE SECTION II GENERAL LIABILITY

### COVERAGE SECTION II INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

A. **GENERAL LIABILITY**: We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally obligated to pay by reason of the liability imposed upon the **INSURED** by law or assumed by the **INSURED** under contract or agreement, for damages, direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY**, **BODILY INJURY** or **PROPERTY DAMAGE**, suffered or alleged to have been suffered by any person(s) or organization(s) arising out of any **OCCURRENCE** from any cause including **LIQUOR LIABILITY** or **INCIDENTAL MEDICAL MALPRACTICE**, happening during the **PERIOD OF INSURANCE**.

This insurance covers **PERSONAL INJURY** arising out of an offense committed during the course of the **NAMED INSURED'S** business, which takes place in the policy territory, and during the **PERIOD OF INSURANCE**.

This insurance covers **BODILY INJURY** and **PROPERTY DAMAGE**:

1.  Arising out of an **OCCURRENCE** which takes place in the policy territory and which occurs during the **PERIOD OF INSURANCE**; and

2.  Which is not a continuation of, resumption of, or change in any **BODILY INJURY** or **PROPERTY DAMAGE** that was known to have occurred in whole or in part by a **DESIGNATED INSURED** prior to the inception date of the **PERIOD OF INSURANCE**.

**B.  PREMISES MEDICAL PAYMENTS**:  We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all reasonable **MEDICAL PAYMENTS** incurred by the **INSURED** for others (except employees of the **INSURED** injured in the course of their employment), as are necessary at the time of an **OCCURRENCE** on account of **BODILY INJURY**. **BODILY INJURY** must occur on premises owned or rented by the **INSURED**, on ways next to premises owned or rented by the **INSURED** or because of operations of the **INSURED**. This coverage applies only if a **PREMISES MEDICAL PAYMENTS** limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.


## COVERAGE SECTION II LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **OCCURRENCE** for **COVERAGE SECTION II GENERAL LIABILITY** for the **LIMIT OF INSURANCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** for each **OCCURRENCE** under **COVERAGE SECTION II GENERAL LIABILITY LIMIT** for all coverages under **COVERAGE SECTION II** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.


## COVERAGE SECTION II CONDITIONS

The following condition applies in addition to the **GENERAL POLICY CONDITIONS**:

**KNOWLEDGE OF BODILY INJURY OR PROPERTY DAMAGE**: Knowledge of **BODILY INJURY** or **PROPERTY DAMAGE** will be deemed to have occurred at the earliest of the following times:

1.  When a **CLAIM**, **SUIT**, or demand for damages alleging **BODILY INJURY** or **PROPERTY DAMAGE** is received by any **DESIGNATED INSURED**;

2.  When any **DESIGNATED INSURED** reports the **BODILY INJURY** or **PROPERTY DAMAGE** to us or any other insurer; or

3.  When any **DESIGNATED INSURED** becomes aware of anything that indicates that **BODILY INJURY** or **PROPERTY DAMAGE** may have occurred or is occurring.

## COVERAGE SECTION II EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** **BODILY INJURY** or **PROPERTY DAMAGE**, which the **INSURED** intended or expected; unless resulting from:

    1. An act alleged to be assault and battery for the purpose of preventing injury to persons or damage to property;

    2. Corporal punishment (unless providing coverage for corporal punishment is prohibited by law).

**C.** **PROPERTY DAMAGE** to:

    1. **PROPERTY OF THE INSURED**; or personal property in the care, custody or control of an **INSURED**; or

    2. Premises the **NAMED INSURED** sells, gives away or abandons, if the **PROPERTY DAMAGE** arises out of any part of those premises.

**D.** **BODILY INJURY** to:

    1. An employee of an **INSURED** arising out of and in the course of:

       (a) Employment by an **INSURED**; or

       (b) Performing duties related to the conduct of an **INSURED'S** business; or

    2. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph 1. above.

This exclusion applies:

    3. Whether an **INSURED** may be liable as an employer or in any other capacity; or

    4. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**E.** Any **CLAIM** arising from **WRONGFUL ACTS**.

**F.** Any **CLAIM** arising from **LAW ENFORCEMENT ACTIVITIES**.

**G.** Any **CLAIM** arising out of an **EMPLOYMENT PRACTICES VIOLATION**.

**H.** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

    1. The ownership, entrustment, maintenance, operation, use, loading or unloading of **AUTOMOBILES**; or while **AUTOMOBILES** are being transported; or

    2. The transportation of **MOBILE EQUIPMENT** by an **AUTOMOBILE** owned or operated by or rented or loaned to any **INSURED**.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**.

**I.** **PERSONAL INJURY** arising out of:

    1. Oral or written publication, if done by or at the direction of the **INSURED** with knowledge of its falsity;

    2. Oral or written publication of material whose first publication of material took place before the beginning of the **PERIOD OF INSURANCE**.

**J.** Any liability arising out of the complete or partial failure to adequately supply fuel or power.

**COVERAGE SECTION II DEFINITIONS**

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. LIQUOR LIABILITY** means indemnification for the **INSURED'S** liability for the sale, distribution or furnishing of alcoholic beverage by reason of any local, State or Federal liquor control laws in force at the time of the **OCCURRENCE**.

**B. INCIDENTAL MEDICAL MALPRACTICE** means **BODILY INJURY** or **PERSONAL INJURY** arising out of the rendering of or failure to render emergency and/or first aid medical services by an **INSURED** which includes, but is not limited to, the dispensing of medication, the administering of inoculations, the administering of blood tests, and/or other similar services for medicines and/or tests normally administered by a Healthcare Department that are preventative in nature, do not require or involve advanced medical diagnosis, and do not require or result in overnight stays in a medical facility.

However, **INCIDENTAL MEDICAL MALPRACTICE** does not include services provided by:

1. A hospital, clinic, or emergency room facility;

2. A physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

3. A psychiatrist;

4. A pharmacist;

5. A dentist, orthodontist, or periodontist.

**C. OCCURRENCE** with respect to **BODILY INJURY** and **PROPERTY DAMAGE** means an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions which results in **BODILY INJURY** or **PROPERTY DAMAGE**.

All **BODILY INJURY** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions shall be deemed one **OCCURRENCE**.

**OCCURRENCE** with respect to **PERSONAL INJURY** means the offenses specified in the **PERSONAL INJURY** definition. All injuries and damages arising out of substantially the same **PERSONAL INJURY** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **OCCURRENCE**.

Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **OCCURRENCE**.

**COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES**

**COVERAGE SECTION III INSURING AGREEMENTS**

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

**LAW ENFORCEMENT ACTIVITIES**: We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally obligated to pay by reason of the liability imposed upon the **INSURED** by law for damage, direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY**, **BODILY INJURY** or **PROPERTY DAMAGE** suffered or alleged to have been suffered by any person(s) or organization(s) arising out of **LAW ENFORCEMENT ACTIVITIES**, including **INCIDENTAL MEDICAL MALPRACTICE** arising out of **LAW ENFORCEMENT ACTIVITIES**, happening during the **PERIOD OF INSURANCE**.

This insurance covers **PERSONAL INJURY** arising out of an offense committed during the course of the **NAMED INSURED'S LAW ENFORCEMENT ACTIVITIES**, if the offense was committed: within the policy territory; and during the **PERIOD OF INSURANCE**.

This insurance covers **BODILY INJURY** and **PROPERTY DAMAGE**:

1. Arising out of an **OCCURRENCE** which takes place in the policy territory and which occurs during the **PERIOD OF INSURANCE**;

2. Which is not a continuation of, resumption of, or change in any **BODILY INJURY** or **PROPERTY DAMAGE** that was known to have occurred in whole or in part by a **DESIGNATED INSURED** prior to the inception date of the **PERIOD OF INSURANCE**.

## COVERAGE SECTION III LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **OCCURRENCE** for **COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES** for the **LIMIT OF INSURANCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** for each **OCCURRENCE** under **COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES** for all coverages under **COVERAGE SECTION III** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION III CONDITIONS

The following condition applies in addition to the **GENERAL POLICY CONDITIONS**:

**KNOWLEDGE OF BODILY INJURY OR PROPERTY DAMAGE**: Knowledge of **BODILY INJURY** or **PROPERTY DAMAGE** will be deemed to have occurred at the earliest of the following times:

1. When a **CLAIM**, **SUIT**, or demand for damages alleging **BODILY INJURY** or **PROPERTY DAMAGE** is received by any **DESIGNATED INSURED**;

2. When any **DESIGNATED INSURED** reports the **BODILY INJURY** or **PROPERTY DAMAGE** to us or any other insurer; or

3. When any **DESIGNATED INSURED** becomes aware of anything that indicates that **BODILY INJURY** or **PROPERTY DAMAGE** may have occurred or is occurring.

## COVERAGE SECTION III EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy, whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **CLAIM** or **SUIT** for **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL INJURY**, including any award of attorneys fees and costs, resulting from:

1. Any knowing and intentional violation of any subsection of Title 42 of the U.S. Code, including but not limited to 42 U.S.C § 1981 thru 42 U.S.C. §1989 and 42 U.S.C. §1997, and any amendments thereto or any similar Federal, State or local statute;

2. Any knowing and intentional deprivation of any rights protected under the United States Constitution or the Constitution of any State, Territory, or Protectorate of the United States;

3. Any act which is not reasonably related to the execution and/or enforcement of the law; or

4. Any act committed with the knowledge and intent to cause **BODILY INJURY or PROPERTY DAMAGE**, or which could reasonably be expected to cause **BODILY INJURY** or **PROPERTY DAMAGE**, unless the act of the **INSURED** was reasonably necessary to lawfully prevent injury to persons or damage to property.

However, Exclusion **B.** shall not apply to any vicarious liability on the part of the **NAMED INSURED** arising solely out of an act by any other **INSURED** resulting from **LAW ENFORCEMENT ACTIVITIES** and excluded herein, but this provision applies only to the liability of the **NAMED INSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED INSURED** does not arise from any contractual duty to indemnify an **INSURED**.

**C.** Damage to or destruction of **PROPERTY OF THE INSURED**.

**D.** The cost of any investigation, disciplinary or criminal proceedings against an individual **INSURED** except we may, at our own option and expense, associate counsel in the defense of any such investigation, criminal or disciplinary proceeding. Should we elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights we may have pursuant to the terms, conditions, exclusions and limitations of this policy.

**E.** Any **CLAIM** arising from **WRONGFUL ACTS**.

**F.** Any **CLAIM** arising out of a breach of contract.

**G.** Any **CLAIM** arising from an **EMPLOYMENT PRACTICE VIOLATION**.

**H.** **PERSONAL INJURY** arising out of:

1. Oral or written publication, if done by or at the direction of the **INSURED** with knowledge of its falsity;

2. Oral or written publication of material whose first publication of material took place before the beginning of the **PERIOD OF INSURANCE**.

**I.** **BODILY INJURY** to:

1. An employee of an **INSURED** arising out of and in the course of:

(a) Employment by an **INSURED**; or

(b) Performing duties related to the conduct of an **INSURED'S** business; or

2. The spouse, child, parent, brother or sister of that employee as a consequence of 1. above.

This exclusion applies:

3. Whether an **INSURED** may be liable as an employer or in any other capacity; or

4. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**J.** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

1. The ownership, entrustment, maintenance, operation, use, loading or unloading of **AUTOMOBILES**, or while **AUTOMOBILES** are being transported; or

2. The transportation of **MOBILE EQUIPMENT** by an **AUTOMOBILE** owned or operated by or rented or loaned to any **INSURED**.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**.

## COVERAGE SECTION III DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **OCCURRENCE** or a series of related **OCCURRENCES** by one or more **INSUREDS**.

**B. INCIDENTAL MEDICAL MALPRACTICE** means **BODILY INJURY** or **PERSONAL INJURY** arising out of the rendering of or failure to render emergency and/or first aid medical services by an **INSURED** which includes, but is not limited to, the dispensing of medication, the administering of inoculations, the administering of blood tests, and/or other similar services for medicines and/or tests normally administered by a Healthcare Department that are preventative in nature, do not require or involve advanced medical diagnosis, and do not require or result in overnight stays in a medical facility.

However, **INCIDENTAL MEDICAL MALPRACTICE** does not include services provided by:

1. A hospital, clinic, or emergency room facility;

2. A physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

3. A psychiatrist;

4. A pharmacist;

5. A dentist, orthodontist, or periodontist.

**C. OCCURRENCE** with respect to **BODILY INJURY** and **PROPERTY DAMAGE** means an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions which results in **BODILY INJURY** or **PROPERTY DAMAGE**.

All **BODILY INJURY** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions shall be deemed one **OCCURRENCE**.

**OCCURRENCE** with respect to **PERSONAL INJURY** means the offenses specified in the **PERSONAL INJURY** definition. All injuries and damages arising out of substantially the same **PERSONAL INJURY** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **OCCURRENCE**.

Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **OCCURRENCE**.


## COVERAGE SECTION IV AUTOMOBILE LIABILITY

## COVERAGE SECTION IV INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

**A. AUTOMOBILE LIABILITY**:  We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is obligated to pay by reason of the liability imposed upon the **INSURED** by law or assumed by the **INSURED** under contract or agreement, for damages, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, arising out of any **OCCURRENCE** on account of **BODILY INJURY**  and/or **PROPERTY DAMAGE** to which this insurance applies, arising out of the ownership, maintenance or use of any **AUTOMOBILE** including non-owned and hired **AUTOMOBILES** used in conjunction with your business, occurring during the **PERIOD OF INSURANCE**.

**B. AUTOMOBILE MEDICAL PAYMENTS**: We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all reasonable **MEDICAL PAYMENTS** incurred by the **INSURED** for others (except employees of the **INSURED** injured in the course of their employment) as are necessary at the time of an **OCCURRENCE** on account of **BODILY INJURY** arising out of the use of any **AUTOMOBILE**. This coverage applies only if a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

## COVERAGE SECTION IV LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **OCCURRENCE** for **COVERAGE SECTION IV AUTOMOBILE LIABILITY** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** per **OCCURRENCE** under **COVERAGE SECTION IV AUTOMOBILE LIABILITY LIMIT** for all coverage under **COVERAGE SECTION IV** combined.

The most we will indemnify the **INSURED** will not change regardless of the number of covered **AUTOMOBILES,** persons or organizations who are **INSUREDS**, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION IV EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIMS** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B. BODILY INJURY** to:

    1. An employee of an **INSURED** arising out of and in the course of:

        (a) Employment by an **INSURED**; or

        (b) Performing duties related to the conduct of an **INSURED'S** business; or

    2. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph 1. above.

    This exclusion applies:

    3. Whether an **INSURED** may be liable as an employer or in any other capacity; or

    4. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**C. AUTOMOBILES** covered under this **COVERAGE SECTION IV** used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity.

**D.** Any obligation or liability imposed on an **INSURED**, or any loss, cost or expense arising directly or indirectly out of any: first party physical damage coverage; uninsured and/or underinsured motorist law; no fault law; or personal injury protection law.

## COVERAGE SECTION IV DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. OCCURRENCE** means an accident or a happening or event, including continuous or repeated exposure to the same conditions which results in unexpected and unintended **BODILY INJURY** or **PROPERTY DAMAGE** during the **PERIOD OF INSURANCE**.

All **BODILY INJURY** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event including continuous or repeated exposure to the same conditions shall be deemed one **OCCURRENCE**. Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **OCCURRENCE**.

B. **INSURED** means not only the **INSURED** as defined in the **GENERAL POLICY DEFINITIONS**, but under this **COVERAGE SECTION IV** also includes any person while using any covered **AUTOMOBILE** used in conjunction with your business with the permission of the **INSURED**.


## COVERAGE SECTION V ERRORS AND OMISSIONS

### THIS IS A CLAIMS MADE COVERAGE SECTION

**THIS COVERAGE SECTION PROVIDES COVERAGE ON A CLAIMS MADE BASIS. IT APPLIES ONLY TO CLAIMS MADE AGAINST THE INSURED DURING THE PERIOD OF INSURANCE OR EXTENDED REPORTING PERIOD, IF APPLICABLE. PLEASE READ CAREFULLY.**

### COVERAGE SECTION V INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

A. **ERRORS & OMISSIONS**: We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of a **WRONGFUL ACT**, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of a **WRONGFUL ACT**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the Extended Reporting Period of this coverage, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of a **WRONGFUL ACT**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of one **WRONGFUL ACT** shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**. A **CLAIM** should not be prejudiced if the **INSURED** through clerical oversight or clerical mistake fails to notify us or the **INSURED'S** Third Party Claims Administrator.

**B. EMPLOYMENT PRACTICES LIABILITY**:  We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of an **EMPLOYMENT PRACTICE VIOLATION**, including mental anguish resulting from an **EMPLOYMENT PRACTICE VIOLATION**, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of an **EMPLOYMENT PRACTICE VIOLATION**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the Extended Reporting Period of this coverage, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of an **EMPLOYMENT PRACTICE VIOLATION**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of one **EMPLOYMENT PRACTICE VIOLATION** shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**. A **CLAIM** should not be prejudiced if the **INSURED** through clerical oversight or clerical mistake fails to notify us or the **INSURED'S** Third Party Claims Administrator.

We may, prior to any **CLAIM** or **SUIT** and at our sole discretion and expense, assist you with an Equal Employment Opportunity Commission investigation, or an equivalent State or local agency investigation. If we choose to help you with an investigation, our help will be strictly voluntary, and we may discontinue it at any time. You agree that our help does not admit, confirm, waive, estop, or in any way represent a determination of coverage of any alleged **EMPLOYMENT PRACTICE VIOLATION**.

**C. SEXUAL HARASSMENT**:  We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of a **WRONGFUL ACT** arising out of **SEXUAL HARASSMENT** by an employee or volunteer or more than one employee or volunteer acting in concert, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of **SEXUAL HARASSMENT**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the applicable Extended Reporting Period, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** because of **SEXUAL HARASSMENT** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of **SEXUAL HARASSMENT**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of **SEXUAL HARASSMENT** by an employee or volunteer or more than one employee or volunteer acting in concert, shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**, regardless of:

5. The number of persons **SEXUALLY HARASSED**;

6. The number of locations where the **SEXUAL HARASSMENT** occurred;

7. The number of acts of **SEXUAL HARASSMENT** prior to or after the first **CLAIM** is made; or

8. The period of time over which the **SEXUAL HARASSMENT** took place, whether the **SEXUAL HARASSMENT** is during, before or after the **PERIOD OF INSURANCE**. However, only acts of **SEXUAL HARASSMENT** that take place after the applicable Retroactive Date and before the end of the **PERIOD OF INSURANCE** are covered.

The insurance under this **SEXUAL HARASSMENT** coverage does not apply to **SEXUAL ABUSE**, or to any **CLAIMS** arising from actual or alleged physical abuse arising out of **SEXUAL ABUSE** of any kind or to any **CLAIM** seeking damages, including defense of same, arising directly or indirectly from any actual or alleged participation in any act of **SEXUAL ABUSE** of any person, by any **INSURED**.

The insurance under this **SEXUAL HARASSMENT** coverage does not apply to either defense or indemnification of any employee or volunteer for **SEXUAL HARASSMENT**, with respect to any **CLAIM** based on or arising out of such **SEXUAL HARASSMENT**. Such employee or volunteer is not covered under this coverage as respects such **CLAIM**.

All **CLAIMS** based on or arising out of the same **SEXUAL HARASSMENT** or a series of related **SEXUAL HARASSMENT** by one or more employees or volunteer workers shall be deemed one **SEXUAL HARASSMENT**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL HARASSMENT**.

D. **SEXUAL ABUSE**: We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of a **WRONGFUL ACT** arising out of **SEXUAL ABUSE** by an employee or volunteer or more than one employee or volunteer acting in concert, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of **SEXUAL ABUSE**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the applicable Extended Reporting Period, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** because of **SEXUAL ABUSE** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of  **SEXUAL ABUSE**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of **SEXUAL ABUSE** by an employee or volunteer or more than one employee or volunteer acting in concert, shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**, regardless of:

5.  The number of persons **SEXUALLY ABUSED**;

6.  The number of locations where the **SEXUAL ABUSE** occurred;

7.  The number of acts of **SEXUAL ABUSE** prior to or after the first **CLAIM** is made; or

8.  The period of time over which the **SEXUAL ABUSE** took place, whether the **SEXUAL ABUSE** is during, before or after the **PERIOD OF INSURANCE**. However, only acts of **SEXUAL ABUSE** that take place after the applicable Retroactive Date and before the end of the **PERIOD OF INSURANCE** are covered.

The insurance under this **SEXUAL ABUSE** coverage does not apply to **SEXUAL HARASSMENT**, or to any **CLAIMS** arising from actual or alleged physical abuse arising out of **SEXUAL HARASSMENT** of any kind, or to any **CLAIM** seeking damages, including defense of same, arising directly or indirectly from any actual or alleged participation in any act of **SEXUAL HARASSMENT** of any person, by any **INSURED**.

The insurance under this **SEXUAL ABUSE** coverage does not apply to either defense or indemnification of any employee or volunteer for **SEXUAL ABUSE**, with respect to any **CLAIM** based on or arising out of such **SEXUAL ABUSE**. Such employee or volunteer is not covered under this coverage as respects such **CLAIM**.

All **CLAIMS** based on or arising out of the same **SEXUAL ABUSE** or a series of related **SEXUAL ABUSE** by one or more employees or volunteer workers' shall be deemed one **SEXUAL ABUSE**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL ABUSE**.


**COVERAGE SECTION V LIMITS OF INSURANCE**

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **CLAIM** for **COVERAGE SECTION V ERRORS AND OMISSIONS** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** per **CLAIM** under **COVERAGE SECTION V** for all coverages under **COVERAGE SECTION V** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage and all corresponding **CLAIMS** under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.


**COVERAGE SECTION V CONDITIONS**

The following conditions apply in addition to the **GENERAL POLICY CONDITIONS**:

**A. BASIC EXTENDED REPORTING PERIOD**:

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **PERIOD OF INSURANCE**, and lasts for sixty (60) days.

If, however, this policy and this **COVERAGE SECTION** are succeeded by similar Claims Made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than the Retroactive Date shown in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** of this policy, the succeeding insurance coverage shall be deemed to be a renewal of this policy, and the **INSURED** shall have no right to a Basic Extended Reporting Period from us.

The Basic Extended Reporting Period does not apply to **CLAIMS** [that are covered under any subsequent insurance applicable to this **COVERAGE SECTION** which the **INSURED** purchases, or that would have been covered under this **COVERAGE SECTION** but for exhaustion of the amount of insurance applicable to such **CLAIMS**.

**B. SUPPLEMENTAL EXTENDED REPORTING PERIOD:**

We will provide a Supplemental Extended Reporting Period, as described below, if:

1. This policy or this **COVERAGE SECTION** of this policy is cancelled or non-renewed; or

2. We renew or replace this policy, or this **COVERAGE SECTION** of this policy, with insurance that does not apply to a **WRONGFUL ACT**, **EMPLOYMENT PRACTICE VIOLATION**, **SEXUAL HARASSMENT** or **SEXUAL ABUSE** on a Claims Made basis.

A Supplemental Extended Reporting Period of one year duration is available but only by endorsement to this policy and for an additional premium not to exceed 100% of the annual premium for this **COVERAGE SECTION**. This supplemental period starts when the Basic Extended Reporting Period ends.

The **INSURED** must give us a written request for the endorsement within thirty (30) days after the end of the **PERIOD OF INSURANCE**. The Supplemental Extended Reporting Period will not go into effect unless the **INSURED** pays the additional premium within thirty (30) days. This endorsement will set forth the terms consistent with the **COVERAGE SECTION**.

We shall determine the additional premium in accordance with its applicable rules, rates and underwriting practices. Coverage for **CLAIMS** received during such Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under any other policies.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not reinstate or increase the applicable **SELF INSURED RETENTION**, the **INSURED'S LOSS FUND**, the applicable **LIMIT OF INSURANCE**, or the **EXCESS LOSS FUND PROTECTION**.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not extend the **PERIOD OF INSURANCE** or change the scope of coverage provided within this **COVERAGE SECTION**. They apply to **CLAIMS** arising out of a **WRONGFUL ACT**, **EMPLOYMENT PRACTICE VIOLATION**, **SEXUAL HARASSMENT** or **SEXUAL ABUSE** that takes place before the end of the period that this policy and this **COVERAGE SECTION** are in force. Once in effect, Extended Reporting Periods may not be cancelled.

## COVERAGE SECTION V EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **CLAIM** for damages, whether direct or consequential, for **BODILY INJURY**, **PERSONAL INJURY**, or **PROPERTY DAMAGE** except to the extent that coverage is provided for **EMPLOYMENT PRACTICES VIOLATIONS**, **SEXUAL ABUSE** or **SEXUAL HARASSMENT** under this **COVERAGE SECTION V**.

**C.** Any **CLAIM** based upon or attributable to any **INSURED** gaining any personal profit or advantage to which they were not legally entitled, including remuneration paid in violation of law as determined by the courts.

**D.** Any **CLAIM** based upon or attributable to the rendering or failure to render any professional opinion, treatment, consultation or service, unless acting within the scope of their duties as an **INSURED**.

**E.** Any **CLAIM** for which an **INSURED** is entitled to indemnity under any policy or policies the term of which has expired prior to the Effective Date of this policy, or for which an **INSURED** would be entitled to indemnity except for the exhaustion of the limit of such prior insurance.

**F.** Any **CLAIM** arising out of any pending or prior litigation or hearing, as well as future **CLAIMS** arising out of any pending or prior litigation or hearing. If this policy is a renewal of a policy issued by us, this exclusion shall only apply with respect to **CLAIMS** arising out of any pending or prior litigation or hearing, prior to the effective date of the first policy issued and continuously renewed by us.

**G.** Any **CLAIM** based upon or attributable to any failure or omission of the **INSURED** to effect, maintain or administer any insurance, bond or self-insurance fund.

**H.** Any **CLAIM** alleging, based upon, arising out of or attributable to breach of any express, implied, actual or constructive contract, agreement, warranty, guarantee or promise, unless liability would have attached to the **INSURED** even in the absence of such contract, agreement, warranty, guarantee or promise.

**I.** Any **CLAIM** arising out of **LAW ENFORCEMENT ACTIVITIES** of any of your law enforcement departments or agencies.

**J.** Any **CLAIM** for bonuses, fringe benefits, educational expenses, overtime, non-wage future benefits, severance obligations or similar damages, even if designated as liquidated damages, under any Federal, State or local statute, rule, ordinance, or regulation.

**K.** Any **CLAIM** arising out of collective bargaining agreements or benefits bargaining agreements.

**L.** Any **CLAIM** arising out of: any tax assessments or adjustments; the collection, refund, disbursement or application of any taxes; or failure to anticipate tax revenue shortfalls.

**M.** Any **CLAIM** arising out of the destruction or disappearance of money, securities or the loss of use thereof.

**N.** Any **CLAIM** arising out of the ownership, entrustment, maintenance, operation, use, loading or unloading of **AUTOMOBILES**; or the transport of any person.

**O.** Any **CLAIM** resulting from actions taken as a participant, member, partner, director or shareholder of any Board, Commission, partnership, association or corporation, not operated by the **NAMED INSURED** or under the jurisdiction of the **NAMED INSURED**.

**P.** Any **CLAIM** arising out of **SEXUAL ABUSE** by any employee or volunteer worker committed after first discovery by any of the **NAMED INSURED'S** officials, trustees, directors, officers, or partners, of **SEXUAL ABUSE** by such employee or volunteer worker, whether **SEXUAL ABUSE** was before or after such employee or volunteer worker was hired by the **NAMED INSURED**. However, discovery does NOT include discovery by an official, trustee, director, officer, or partner who committed such **SEXUAL ABUSE**.

**Q.** Any **CLAIM** arising out of or in any way involving any employee benefit plan, except as covered under this **COVERAGE SECTION V INSURING AGREEMENT B.** for discrimination.

**R.** Any cost, civil fine, penalty or expense against any **INSURED** arising from any complaint or enforcement action from any Federal, State or local governmental regulatory agency.

This exclusion does not apply to the extent coverage is provided for **EMPLOYMENT PRACTICE VIOLATIONS** for a **CLAIM** by an employee.

**S.** Any **CLAIM**, regardless of the cause of action or legal theory alleged, related to or arising out of the failure to provide an appropriate individualized education program, related facilities or services. This includes but is not limited to, any cause of action under Individuals With Disabilities Education Improvement Act of 2004 (IDEA), Section 504 of the Rehabilitation Act of 1973, Americans With Disabilities Act of 1990, any amendments to such laws or under any similar State or Federal statute or other law, administrative rule or regulation.

## COVERAGE SECTION V DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.** With respect to **COVERAGE SECTION V**, **CLAIM** means:

1. All notices or **SUITS** demanding payment of money based on, or arising out of the same **WRONGFUL ACT** or a series of related **WRONGFUL ACTS** by one or more **INSUREDS**;

2. As respects **EMPLOYMENT PRACTICE VIOLATIONS**, all notices or **SUITS** demanding payment of money, or charges filed with the Equal Employment Opportunity Commission or comparable State agency based on, or arising out of the same **EMPLOYMENT PRACTICE VIOLATION** or a series of related **EMPLOYMENT PRACTICE VIOLATIONS** by one or more **INSUREDS**; or

3. All notices or **SUITS** demanding payment of money based on or arising out of the same **SEXUAL ABUSE** or **SEXUAL HARASSMENT** or series of **SEXUAL ABUSE** or **SEXUAL HARASSMENT** by one or more employees or volunteer workers of the **NAMED INSURED**.


## COVERAGE SECTION VI WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY FOR A QUALIFIED SELF-INSURER

### GENERAL

Coverage is provided for one or more of the coverages in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

### COVERAGE SECTION VI GENERAL

The following provisions apply to **COVERAGE SECTION VI**:

**WHO IS INSURED**: The **NAMED INSURED** is insured if the **NAMED INSURED** is an employer named in the Declarations. If that employer is a partnership, joint venture or limited liability corporation and if the **NAMED INSURED** is a partner in the partnership or a member of the joint venture or limited liability corporation, such **NAMED INSURED** is insured, but only in the capacity as an employer of employees of the partnership, joint venture or limited liability corporation. If that employer is an association, pooling arrangement, or other organization that incorporates separate entities as participants, then the individual participants are also insured.

**QUALIFIED SELF-INSURER**: The **NAMED INSURED** represents that the **NAMED INSURED** is a duly **QUALIFIED SELF-INSURER** under the **WORKERS' COMPENSATION LAW** of each **STATE** of hire and will maintain such qualifications while this policy is in effect. If the **NAMED INSURED** should terminate such qualifications or if the **NAMED INSURED'S** qualification as a self-insurer is cancelled or revoked while this policy is in effect, neither the amounts we will indemnify under this policy nor the **NAMED INSURED'S** responsibility for the **SELF-INSURED RETENTION** will be affected. We will not indemnify the **NAMED INSURED** or make any other payments for any amounts in excess of the amount that we would have been responsible for under this insurance if the **NAMED INSURED** had maintained their qualification as a self-insurer under the applicable **WORKERS' COMPENSATION LAW**.

### COVERAGE SECTION VI COVERAGE A WORKERS' COMPENSATION

### COVERAGE SECTION VI COVERAGE A INSURING AGREEMENT

We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **NAMED INSURED** when due for those sums that the **NAMED INSURED** shall become legally obligated to pay as a **QUALIFIED SELF-INSURER** under **WORKERS' COMPENSATION LAW**, subject to the terms of this policy, this **COVERAGE SECTION** and the **EXCLUSIONS** that follow. In addition, we will pay legal expenses, premiums to release attachments or appeal bonds, and expenses for lawyers and investigators and other persons for defense, settlement or investigation of **CLAIMS** or **SUITS**, that are directly related to

benefits to which this insurance applies. These expenses do not include: salaries and expenses of you, your employees, or us; service company fees; or Third Party Claims Administrator fees.

This insurance only applies to **BODILY INJURY** by accident or **BODILY INJURY** by disease including resulting death, provided:

1. The **BODILY INJURY** by accident occurs during the **PERIOD OF INSURANCE** of this policy and this coverage is in force;

2. The **BODILY INJURY** by disease is caused by or aggravated by the conditions of employment by the **NAMED INSURED** and the employee's last day of last exposure to the conditions causing or aggravating such **BODILY INJURY** by disease occurs during the **PERIOD OF INSURANCE** of this policy and this coverage is in force.

## COVERAGE SECTION VI COVERAGE A EXCLUSIONS

This **COVERAGE SECTION COVERAGE A** does not insure against:

**A.** Any **CLAIMS**, whether direct or consequential, or any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Punitive or exemplary **CLAIMS** because of:

1. **BODILY INJURY** to any employee;

2. The **NAMED INSURED'S** conduct or the conduct of anyone acting for the **NAMED INSURED** in investigation, trial or settlement, or failure to pay, or delay in payment of any Workers' Compensation **CLAIM**;

3. The **NAMED INSURED'S** failure to comply with any health or safety law or regulation or any **WORKERS' COMPENSATION LAW**.

**C.** Any assessment made upon self-insurers, whether imposed by statute, regulation or otherwise.

**D.** Any payments in excess of benefits regularly provided by the **WORKERS' COMPENSATION LAW** and any related **CLAIM EXPENSES**, including, but not limited to, any excess payments and related **CLAIM EXPENSES** required because:

1. The **NAMED INSURED** commits serious and willful misconduct;

2. The **NAMED INSURED** knowingly employs an employee in violation of law;

3. The **NAMED INSURED** fails to comply with a health or safety law or regulation;

4. The **NAMED INSURED** discharges, coerces, or otherwise discriminates against an employee in violation of the **WORKERS' COMPENSATION LAW**; or

5. The **NAMED INSURED** violates or fails to comply with any **WORKERS' COMPENSATION LAW**.

**E.** Any **CLAIM** or loss arising out of operations or workplaces regarding which any **WORKERS' COMPENSATION LAW** has been rejected, which are covered by primary workers' compensation or employers' liability insurance, or which are subject to a self-insurance program for workers' compensation or employers' liability other than the program for which this insurance was issued.

**F.** Any **CLAIM** or loss arising out of **BODILY INJURY**:

1. Sustained while in, upon, entering, exiting or alighting from; or

2. Resulting from being in or upon or exiting or alighting from;

any aircraft owned, leased, rented, chartered, borrowed or operated by any **NAMED INSURED** or any **NAMED INSURED'S** employee.

## COVERAGE SECTION VI COVERAGE B EMPLOYERS' LIABILITY

## COVERAGE SECTION VI COVERAGE B INSURING AGREEMENT

We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **NAMED INSURED** for **CLAIM EXPENSES** and **DAMAGES** that the **INSURED** is legally obligated to pay as a **QUALIFIED SELF-INSURER** of employers' liability, subject to the terms of this policy, this **COVERAGE SECTION** and the **EXCLUSIONS** that follow.

This insurance applies to **BODILY INJURY** by accident or **BODILY INJURY** by disease. This insurance applies only if:

**A.** The **BODILY INJURY** arises out of and in the course of the injured employee's employment by the **NAMED INSURED**;

**B.** The employment is necessary or incidental to the **NAMED INSURED'S** work;

**C.** The **BODILY INJURY** by accident occurs during the **PERIOD OF INSURANCE**;

**D.** The **BODILY INJURY** by disease is caused by or aggravated by the conditions of employment by the **NAMED INSURED** and the employee's last day of last exposure to the conditions causing or aggravating such **BODILY INJURY** by disease occurs during the **PERIOD OF INSURANCE**; and

**E.** The original **SUIT** and any related legal actions for **DAMAGES** for **BODILY INJURY** by accident or by disease are brought in the United States of America (including its territories or possessions) or Canada.

**BODILY INJURY** includes resulting death. A disease is not **BODILY INJURY** by accident unless it results directly from **BODILY INJURY** by accident. **BODILY INJURY** by disease does not include disease that results directly from a **BODILY INJURY** by accident.

## COVERAGE SECTION VI COVERAGE B EXCLUSIONS

This **COVERAGE SECTION COVERAGE B** does not insure against:

**A.** Any **CLAIMS**, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **INSURED'S** obligation for **ULTIMATE NET LOSS** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to obligations for **ULTIMATE NET LOSS** that an **INSURED** would have in the absence of the contract or agreement.

**C.** Punitive, exemplary or multiplied **DAMAGES**.

**D.** Any **CLAIMS** arising out of **BODILY INJURY** to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers.

**E.** Any **CLAIMS** arising out of **BODILY INJURY** intentionally caused or aggravated by the **NAMED INSURED** or at the direction of the **NAMED INSURED**.

**F.** Any **CLAIMS** arising out of **BODILY INJURY** occurring outside the United States of America or its territories. This exclusion does not apply to **BODILY INJURY** to a citizen or resident of the United States of America who is temporarily outside the United States of America or its territories.

**G.** Any **CLAIMS** arising out of an **EMPLOYMENT PRACTICES VIOLATION**.

**H.** Any obligation imposed by:

1. The Longshoremen's and Harbor Workers' Compensation Act (33 USC Sections 901-950);

2. The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

3. The Outer Continental Shelf Lands Act (43 USC Sections 1331-1356);

4. The Defense Base Act (42 USC Sections 1651-1654);

5. The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942); or

6. Any other federal workers' or workmen's compensation law or other federal occupational disease law;

or any amendments to these laws.

**I.** Any obligation imposed by:

1. The Federal Employers' Liability Act (45 USC Sections51-60); or

2. Any other Federal laws obligating an employer to pay **DAMAGES** to an employee due to **BODILY INJURY** arising out of or in the course of employment;

or any amendments to these laws.

**J.** **DAMAGES** payable under:

1. The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872); or

2. Any other Federal law awarding **DAMAGES** for violation of the laws or regulations issued under the Act in 1. above;

or any amendments to these laws.

**K.** **BODILY INJURY** to a master or member of the crew of any vessel.

**L.** Fines or penalties imposed for violation of Federal or State law.

**M.** **DAMAGES** arising out of operations for which the **NAMED INSURED** has violated or failed to comply with any **WORKERS' COMPENSATION LAW** or any Federal workers' compensation, occupational disease or similar laws.

**N.** **DAMAGES** arising out of operations or workplaces regarding which any **WORKERS' COMPENSATION LAW** has been rejected, which are covered by primary workers' compensation or employers' liability Insurance, or which are subject to a self-insurance program for workers' compensation or employers' liability other than the program for which this insurance was issued.

**O.** Any increase in **ULTIMATE NET LOSS** because of:

1. Increased or aggravated injury; or

2. A **SUIT** that is allowed;

due to conduct by the **NAMED INSURED** or on the **NAMED INSURED'S** behalf in the:

3. The investigation, handling, settlement, defense or appeal of any **CLAIM**; or

4. Payment or failure to pay any **CLAIM**.

**P.** **BODILY INJURY**:

1. Sustained while in, upon, entering, exiting or alighting from; or

2. Resulting from being in or upon or exiting or alighting from;

any aircraft owned, leased, rented, chartered, borrowed or operated by any **NAMED INSURED** or any **NAMED INSURED'S** employee.

## COVERAGE SECTION VI SELF INSURED RETENTION AND LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one accident or disease for **COVERAGE SECTION VI WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**.

The **SELF INSURED RETENTION** and **LIMITS OF INSURANCE** apply to sums paid by the **NAMED INSURED** as a **QUALIFIED SELF-INSURER** of Workers' Compensation and Employers' Liability as follows:

1. To one or more employees because of **BODILY INJURY** or death in any one accident.

2. To any one employee for **BODILY INJURY** or death by disease.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

**COVERAGE SECTION VI DEFINITIONS**

The following definitions are applicable as follows:

Definitions **A.** and **E.** replace any definitions to the contrary with the **GENERAL POLICY DEFINITIONS**; and

All other definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.** **CLAIM**, as used in this **COVERAGE SECTION VI**, means an oral or written notice, including a **SUIT**, demanding Workers' Compensation benefits or payment of **DAMAGES**.

**B.** **CLAIM EXPENSES** means allocated loss adjustment expenses actually paid by the **NAMED INSURED**, or incurred by us if we choose to defend the **NAMED INSURED**, that are directly related to benefits or **DAMAGES** to which this insurance applies. Allocated loss adjustment expenses are:

1. Costs to investigate **CLAIMS** or arrange or negotiate settlement of **CLAIMS**;

2. Costs to defend a **CLAIM**, including attorney fees and other litigation costs;

3. Court costs taxed against the **NAMED INSURED** in a **SUIT**, but not including attorney fees or attorney expenses;

4. The cost of bonds to appeal a judgment or award, but only for bond amounts within the applicable **LIMIT OF INSURANCE** less the **SELF-INSURED RETENTION**;

5. The cost of bonds to release attachments, but only for bond amounts within the applicable **LIMIT OF INSURANCE** less the **SELF-INSURED RETENTION**; and

6. Prejudgment or post-judgment interest as required by law on awards and judgments, but only for award or judgment amounts that are within the applicable **LIMIT OF INSURANCE** less the **SELF-INSURED RETENTION**.

**CLAIM EXPENSES** does not include:

7. Salaries and expenses of the **NAMED INSURED**, the **NAMED INSURED'S** employees, or us;

8. Service company fees; or

9. Third Party Claims Administrator fees.

**C.** **DAMAGES** means those amounts which the **NAMED INSURED** is obligated to pay due to **BODILY INJURY** by accident or **BODILY INJURY** by disease for:

1. Which the **NAMED INSURED** is liable to a third party by reason of a **CLAIM**, **SUIT**, or proceeding against the **NAMED INSURED** to recover **DAMAGES** claimed against such third party as a result of injury to the **NAMED INSURED'S** employee;

2. Care and loss of services of an injured employee of the **NAMED INSURED**;

3. Consequential **BODILY INJURY** to a spouse, child, parent, brother or sister of the injured employee of the **NAMED INSURED**;

provided such damages in 1., 2., and 3. above are the direct consequence of **BODILY INJURY** that arises out of and in the course of the injured employee's employment by the **NAMED INSURED**;

4. **BODILY INJURY** to an employee of the **NAMED INSURED** arising out of and in the course of employment, claimed against the **NAMED INSURED** in a capacity other than as employer.

D. **STATE** means any State of the United States of America, and the District of Columbia.

E. **SUIT** means a civil proceeding in which **BODILY INJURY** is alleged. **SUIT** includes:

1. An arbitration proceeding in which such **BODILY INJURY** is claimed and to which the **NAMED INSURED** must submit, or

2. Any other alternative dispute resolution proceeding in which such **BODILY INJURY** is claimed and to which the **NAMED INSURED** submits to with our consent.

F. **WORKERS' COMPENSATION LAW** means the workers' or workmen's compensation law and occupational disease law of the **STATE** of hire and of **STATES** other than the **STATE** of hire if an employee of the **NAMED INSURED** is injured in such a **STATE** and if the work of such injured employee of the **NAMED INSURED** was within the scope of employment, at the direction of the **NAMED INSURED**, and was temporary and transitory in such other **STATE** provided the **NAMED INSURED** is not **INSURED** or a **QUALIFIED SELF-INSURER** in such other **STATE**. It includes any amendments to that law which are in effect during the **PERIOD OF INSURANCE**. It does not include any Federal workers' or workmens' compensation law, any Federal occupational disease law or the provisions of any law that provide non-occupational disability benefits.

## COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY

### THIS IS A CLAIMS MADE COVERAGE SECTION

**THIS COVERAGE SECTION PROVIDES COVERAGE ON A CLAIMS MADE BASIS. IT APPLIES ONLY TO CLAIMS MADE AGAINST THE INSURED DURING THE PERIOD OF INSURANCE OR EXTENDED REPORTING PERIOD, IF APPLICABLE. PLEASE READ CAREFULLY.**

### COVERAGE SECTION VII INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of an **EMPLOYEE BENEFITS WRONGFUL ACT**, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of an **EMPLOYEE BENEFITS WRONGFUL ACT**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the Extended Reporting Period of this coverage, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION VII**.

A **CLAIM** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of an **EMPLOYEE BENEFITS WRONGFUL ACT**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received and recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of one **EMPLOYEE BENEFITS WRONGFUL ACT** shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**. A **CLAIM** should not be prejudiced if the **INSURED** through clerical oversight or clerical mistake fails to notify us or the **INSURED'S** Third Party Claims Administrator.

### COVERAGE SECTION VII LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **CLAIM** for **COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** per **CLAIM** under **COVERAGE SECTION VII** for all coverage under **COVERAGE SECTION VII** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage and all **EMPLOYEE BENEFITS WRONGFUL ACTS** under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

### COVERAGE SECTION VII CONDITIONS

The following conditions apply in addition to the **GENERAL POLICY CONDITIONS**:

**A. BASIC EXTENDED REPORTING PERIOD**:

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **PERIOD OF INSURANCE**, and lasts for sixty (60) days.

If, however, this policy and this **COVERAGE SECTION** are succeeded by similar Claims Made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than the Retroactive Date shown in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** of this policy, the succeeding insurance coverage shall be deemed to be a renewal of this policy, and the **INSURED** shall have no right to a Basic Extended Reporting Period from us.

The Basic Extended Reporting Period does not apply to **CLAIMS** that are covered under any subsequent insurance applicable to this **COVERAGE SECTION** which the **INSURED** purchases, or that would have been covered under this **COVERAGE SECTION** but for exhaustion of the amount of insurance applicable to such **CLAIMS**.

**B. SUPPLEMENTAL EXTENDED REPORTING PERIOD:**

We will provide a Supplemental Extended Reporting Period, as described below, if:

1. This policy or this **COVERAGE SECTION** of this policy is cancelled or non-renewed; or

2. We renew or replace this policy, or this **COVERAGE SECTION** of this policy, with insurance that does not apply to an **EMPLOYEE BENEFITS WRONGFUL ACT** on a Claims Made basis.

A Supplemental Extended Reporting Period of one year duration is available but only by endorsement to this policy and for an additional premium not to exceed 100% of the annual premium for this **COVERAGE SECTION**. This supplemental period starts when the Basic Extended Reporting Period ends.

The **INSURED** must give us a written request for the endorsement within thirty (30) days after the end of the **PERIOD OF INSURANCE**. The Supplemental Extended Reporting Period will not go into effect

unless the **INSURED** pays the additional premium within thirty (30) days. This endorsement will set forth the terms consistent with the **COVERAGE SECTION**.

We shall determine the additional premium in accordance with its applicable rules, rates and underwriting practices. Coverage for **CLAIMS** received during such Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under any other policies.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not reinstate or increase the applicable **SELF INSURED RETENTION**, the **INSURED'S LOSS FUND**, the applicable **LIMIT OF INSURANCE**, or the **EXCESS LOSS FUND PROTECTION**.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not extend the **PERIOD OF INSURANCE** or change the scope of coverage provided within this **COVERAGE SECTION**. They apply to **CLAIMS** arising out of an **EMPLOYEE BENEFITS WRONGFUL ACT** that takes place before the end of the period that this policy and this **COVERAGE SECTION** are in force. Once in effect, Extended Reporting Periods may not be cancelled.

## COVERAGE SECTION VII EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of the policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **CLAIM** for which an **INSURED** is entitled to indemnity under any policy or policies the term of which has expired prior to the inception date of this policy, or for which an **INSURED** would be entitled to indemnity except for the exhaustion of the limit of such prior insurance.

**C.** Any **CLAIM** arising out of any pending or prior litigation or hearing, as well as future **CLAIMS** arising out of any pending or prior litigation or hearing. If this policy is a renewal of a policy issued by us, this exclusion shall only apply with respect to **CLAIMS** arising out of any pending or prior litigation or hearing, prior to the **EFFECTIVE DATE** of the first policy issued and continuously renewed by us.

**D.** Any **EMPLOYEE BENEFITS WRONGFUL ACT** by, or at, the direction of the **INSURED** that is dishonest, fraudulent, criminal or malicious.

**E.** **BODILY INJURY**, **PERSONAL INJURY**, or **PROPERTY DAMAGE**.

**F.** Any **CLAIM** for failure of performance of a contract by any Insurer or Self Insurer.

**G.** Any **CLAIM** based upon the **INSURED'S** failure to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits, Employees' Retirement Income Security Act (ERISA) of 1974 or any amendments thereto or similar subsequent federal acts or any similar provisions of statutory or common law.

**H.** Any **CLAIM** based upon failure of investments, including but not limited to, stocks, bonds, funds, to perform as represented by an **INSURED**.

**I.** Any **CLAIM** based upon advice given by an **INSURED** to participate or not participate in any investment plans including but not limited to stock, bond and fund subscription plans.

**J.** Any **CLAIM** arising out of actual or alleged discrimination including but not limited to discrimination based on race or national origin, religion or creed, age, sex, physical disability, military status, or employment practices whether or not any of the foregoing violated any Federal, State or local government or regulation prohibiting such discrimination.

**K.** Any **CLAIM** resulting from an activity, act or omission of a Third Party Claims Administrator, a firm or person, other than an **INSURED'S** employee, who administers the **INSURED'S EMPLOYEE BENEFIT PROGRAMS**.

## COVERAGE SECTION VII DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.** With respect to **COVERAGE SECTION VII**, **CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **EMPLOYEE BENEFITS WRONGFUL ACT** or a series of related **EMPLOYEE BENEFITS WRONGFUL ACTS** by one or more **INSUREDS**.


## COVERAGE SECTION VIII CRIME

### COVERAGE SECTION VIII INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**, and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen. The loss sustained by the **INSURED** must result directly from an **OCCURRENCE** taking place during the **PERIOD OF INSURANCE**, which is **DISCOVERED** by the **INSURED** during the **PERIOD OF INSURANCE** (unless otherwise stated in the applicable coverage).

### MONEY AND SECURITIES

**A.** **COVERAGE**:  We agree, subject to the policy limitations, terms and conditions, to pay the **NAMED INSURED** for loss of **MONEY** or **SECURITIES** inside the **PREMISES**, outside the **PREMISES**, or in the **FINANCIAL INSTITUTIONS PREMISES**, if the **NAMED INSURED** is the owner of the **PREMISES** or is liable for damage to it as a direct result of loss or damage caused by disappearance, destruction **THEFT** or **COMPUTER THEFT**.

**COVERAGE EXTENSION**:  We will pay the **NAMED INSURED** under this Section for:

1. Damage to a safe, vault, cash register, cash box or cash drawer located inside the **PREMISES** resulting directly from an actual or attempted **THEFT** of, or unlawful entry into such containers.

2. Loss of **MONEY** or **SECURITIES** outside the **PREMISES** in the care and custody of a **MESSENGER**.

3. Loss of **MONEY** or **SECURITIES** outside the **PREMISES** in the care and custody of an armored vehicle company.  However, the **NAMED INSURED** will be paid only the amount of loss that the **NAMED INSURED** cannot recover:

    (a) Under the **NAMED INSURED'S** contract with the armored motor vehicle company; and

    (b) From any insurance or indemnity carried by, or for the benefit of, customers of the armored motor vehicles company.

**B.** **EXCLUSIONS**:  In addition to **COVERAGE SECTION VIII EXCLUSIONS**, there is no coverage under **MONEY AND SECURITIES** for:

1. Loss of **MONEY** or **SECURITIES** after they have been transferred or surrendered to a person or place outside the **PREMISES** based upon unauthorized instructions or as a result of a threat to do bodily harm or damage to any property.

    But, this exclusion does not apply to loss of **MONEY** or **SECURITIES** while outside the **PREMISES** or in **FINANCIAL INSTITUTIONS PREMISES** or in the care and custody of a **MESSENGER** if the **INSURED**:

    (a) Had no knowledge of any threat at the time the conveyance began; or

    (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

2. Loss resulting from the giving or surrendering of property in any exchange or purchase.

3. Loss of property in any **MONEY** operated device unless the amount of **MONEY** deposited in it is recorded by a continuous recording instrument in the device.

4. Loss resulting from **DISHONEST ACTS** of any of **NAMED INSURED'S EMPLOYEES**:

   (a) Whether acting alone or in collusion with other persons; or

   (b) While performing services for the **NAMED INSURED** or otherwise.

C. **DUTIES IN THE EVENT OF LOSS**:  If the **INSURED** has reason to believe that any loss of, or loss from damage to, **MONEY** or **SECURITIES** involves a violation of law, the **INSURED** must notify the police.

### FORGERY OR ALTERATION

A. **COVERAGE**:  We agree, subject to the policy limitations, terms and conditions, to pay the **NAMED INSURED** for loss involving **INSTRUMENTS** resulting directly from forgery or alteration of, on, or in any **INSTRUMENT**.

**COVERAGE EXTENSION**:  We will pay the **NAMED INSURED** under this Section for loss due to the **INSURED'S** good faith acceptance of:

1. Any United States or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer;   or

2. Counterfeit United States or Canadian paper currency;

   in exchange for merchandise, **MONEY** or services or as part of a normal business transaction.

B. **EXCLUSIONS**:  In addition to the **COVERAGE SECTION VIII EXCLUSIONS**, there is no coverage under **FORGERY OR ALTERATION** for:

Loss resulting from **DISHONEST ACTS** of any of the **NAMED INSURED'S EMPLOYEES**:

1. Whether acting alone or in collusion with other persons; or

2. While performing services for the **NAMED INSURED** or otherwise.

C. **FACSIMILE SIGNATURES**:  Mechanically or electronically produced or reproduced facsimile signatures will be treated the same as handwritten signatures.

D. **PROOF OF LOSS**:  The **NAMED INSURED** must include with proof of loss any **INSTRUMENT** involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

### EMPLOYEE DISHONESTY

A. **COVERAGE**:  We agree, subject to the policy limitations, terms and conditions, to pay the **NAMED INSURED** for the direct loss of or damage to **OTHER PROPERTY**, including **MONEY**, **SECURITIES** and **INSTRUMENTS** owned or held by the **NAMED INSURED** or for which the **NAMED INSURED** is liable, resulting from **DISHONEST ACTS** committed by an **EMPLOYEE**, whether identified or not, acting alone or in collusion with other persons, that occur within the **PERIOD OF INSURANCE**.

**COVERAGE EXTENSION**:  We will pay the **NAMED INSURED** under this Section for loss caused to the **NAMED INSURED** through failure of any of the **NAMED INSURED'S EMPLOYEES**, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position of employment.

B. **EXCLUSIONS**:  In addition to **COVERAGE SECTION VIII EXCLUSIONS**, there is no coverage under **EMPLOYEE DISHONESTY** for:

1. Damage where the only proof of the loss or amount of the loss is dependent upon an inventory or a profit and loss computation.

2. Any part of a loss involving any **EMPLOYEE** occurring after **DISCOVERY** of any fraudulent or **DISHONEST ACTS** committed by the **EMPLOYEE** whether before or after being employed by the

**INSURED**. This only includes **DISCOVERY** by an **INSURED** not in collusion with the **EMPLOYEE**.

    3. Loss that is not **DISCOVERED** within one year after the end of the **PERIOD OF INSURANCE**.

    4. Legal expenses or any indirect loss.

**C. EMPLOYEE DISHONESTY SUPPLEMENTAL COVERAGE**: This Supplemental Coverage applies only if this **EMPLOYEE DISHONESTY COVERAGE** renews prior dishonesty coverage and is effective on the expiration or termination date of the prior coverage.

We will pay the **INSURED** for loss that would have been covered by the prior insurance, except that the time to discover the loss had expired, and which would be covered by this policy had it been in effect when the acts or events causing the loss or damage occurred. This coverage is limited to the lesser of the limits applicable to the prior insurance or the **LIMITS OF INSURANCE** of this coverage. This Supplemental Coverage is part of, and not in addition to the **LIMITS OF INSURANCE** for **EMPLOYEE DISHONESTY** Coverage.

**D. LOSS PAYMENT**: The **LIMIT OF INSURANCE** shown is the most that will be paid for an **OCCURRENCE** even though it may occur over more than one **PERIOD OF INSURANCE**.

### COVERAGE SECTION VIII LIMITS OF INSURANCE

The most we will pay under **COVERAGE SECTION VIII CRIME** is the **LIMIT OF INSURANCE** for each **OCCURRENCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**.

In the event more than one **SELF INSURED RETENTION** could apply to a loss for which coverage is provided in this **COVERAGE SECTION**, only the highest **SELF INSURED RETENTION** will be applied.

### COVERAGE SECTION VIII CONDITIONS

In addition to the **GENERAL POLICY CONDITIONS**, and any conditions applicable to a particular section, the following conditions also apply:

**A. EXTENSIONS IN COVERAGE** do not increase our **LIMITS OF INSURANCE**, nor are we liable for a greater percentage of the amount of the limit shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B. NO BENEFIT TO BAILEE**: The Insurance afforded herein shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

**C. VALUATION**:

    1. **MONEY**: Face value.

    2. **SECURITIES**: Actual cash value at the close of business on the day the loss was **DISCOVERED**.

    3. **PROPERTY OTHER THAN MONEY AND SECURITIES**: Actual cash value at the time of loss with deduction for depreciation. The valuation is limited to the cost to repair or replace with property of equivalent kind and quality, to the extent practicable.

**D. CONCEALMENT, MISREPRESENTATION OR FRAUD**: This insurance is void in any case of fraud by the **NAMED INSURED** as it relates to this insurance at any time. It is also void if the **NAMED INSURED** or any other **INSURED**, at any time, intentionally conceals or misrepresents a material fact concerning:

    1. This insurance;

    2. The property covered under this insurance;

    3. The **NAMED INSURED'S** interest in the property covered under this insurance; or

    4. A claim under this insurance.

**E. COOPERATION**: The **NAMED INSURED** must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**F. LEGAL ACTION AGAINST US**:  The **NAMED INSURED** may not bring any legal action against us involving loss:

1. Unless all the terms of this **COVERAGE SECTION** have been complied with;

2. Until 90 days after the **NAMED INSURED** has filed proof of loss; and

3. Unless brought within 2 years from the date the **NAMED INSURED DISCOVERED** the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**G. RECORDS**:  The **NAMED INSURED** must keep records of all property covered under this insurance so we can verify the amount of any loss.

## COVERAGE SECTION VIII EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, and any exclusions applicable to a particular section, the following exclusions also apply:

This **COVERAGE SECTION** does not insure against:

**A.** Any claims for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Loss resulting from accounting or arithmetical errors or omissions.

**C.** Loss resulting from an **INSURED'S**, or anyone acting on an **INSURED'S** express or implied authority, being induced by any **DISHONEST ACT** to voluntarily part with title to or possession of any property.

**D.** Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**E.** Fees, costs and expenses incurred by the **NAMED INSURED** which are related to any legal action.

**F.** Loss that is an indirect result of an **OCCURRENCE** covered by this **COVERAGE SECTION** including, but not limited to, loss resulting from:

1. The **INSURED'S** inability to realize income that would have been realized had there been no loss of or damage to **MONEY**, **SECURITIES** or property other than **MONEY** and **SECURITIES**.

2. Payment of damages of any type for which the **INSURED** is legally liable.  But, we will pay compensatory damages arising directly from a loss covered under this **COVERAGE SECTION**.

3. Payment of costs, fees or other expenses the **INSURED** incurs in establishing either the existence or the amount of loss under this **COVERAGE SECTION**.

## COVERAGE SECTION VIII DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. FINANCIAL INSTITUTIONS PREMISES** means the interior of that portion of any building occupied by a financial institution including but not limited to a bank, similar safe depository, automatic teller machine (ATM), or similar banking or financial device.

**B. BURGLARY** means the taking of **MONEY** or **SECURITIES** from inside the **PREMISES** by a person unlawfully entering or leaving the **PREMISES** as evidenced by marks of forcible entry or exit.

C. **COMPUTER THEFT** means **THEFT** of **MONEY** or **SECURITIES** directly related to and resulting from the use of any computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components, to fraudulently cause a transfer of such **MONEY** or **SECURITIES** from inside the **PREMISES** or **FINANCIAL INSTITUTIONS PREMISES** to a person (other than a **MESSENGER**) outside those **PREMISES** or to a place outside those **PREMISES**.

D. **DISCOVER** or **DISCOVERED** means the time when the **NAMED INSURED** first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

**DISCOVER** or **DISCOVERED** also means the time when the **NAMED INSURED** first receives notice of an actual or potential claim in which it is alleged that the **NAMED INSURED** is liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

E. **DISHONEST ACTS** means dishonest or fraudulent acts committed with the intent to cause the **NAMED INSURED** to sustain loss or damage and to obtain financial benefit for the **EMPLOYEE** or for any other **EMPLOYEE**, person or organization. The financial benefit does not include salaries, commissions, bonuses, fees, profit sharing or other **EMPLOYEE** benefits.

F. **EMPLOYEE(S)** means any person:

   1. While in the service of the **NAMED INSURED** (and for thirty (30) days after termination of service); and

   2. Whom the **NAMED INSURED** has the right to direct and control while performing services for the **NAMED INSURED**.

G. **INSTRUMENTS** means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a certain sum in **MONEY** that are:

   1. Made or drawn by or drawn upon the **NAMED INSURED**;

   2. Made or drawn by one acting as the **NAMED INSURED'S** agent; or that are purported to have been so made or drawn.

   With respect to **FORGERY OR ALTERATION** coverage and **EMPLOYEE DISHONESTY** coverage, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

H. **MESSENGER** means an **INSURED** individual under this **COVERAGE SECTION** while having care and custody of the **MONEY** or **SECURITIES** outside the **PREMISES**.

I. **OCCURRENCE** with respect to **MONEY AND SECURITIES** coverage means:

   1. An individual act or event;

   2. The combined total of all separate acts or events whether or not related; or

   3. A series of acts or events whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the **PERIOD OF INSURANCE**.

   **OCCURRENCE** with respect to **FORGERY OR ALTERATION** coverage means:

   4. An individual act;

   5. The combined total of all separate acts whether or not related; or

   6. A series of acts whether or not related;

   committed by a person acting alone or in collusion with other persons, involving one or more **INSTRUMENTS**, during the **PERIOD OF INSURANCE**.

**OCCURRENCE** with respect to **EMPLOYEE DISHONESTY** coverage means:

7. An individual act;

8. The combined total of all separate acts whether or not related; or

9. A series of acts whether or not related;

committed by an **EMPLOYEE** acting alone or in collusion with other persons, during the **PERIOD OF INSURANCE**, except as provided under the **EMPLOYEE DISHONESTY SUPPLEMENTAL COVERAGE**.

J. **OTHER PROPERTY**: Any tangible property other than **MONEY** and **SECURITIES** that has intrinsic value. **OTHER PROPERTY** does not include computer programs, **ELECTRONIC DATA** or any property if specifically excluded under this insurance.

K. **PREMISES** means the interior of that portion of any building that the **INSURED** occupies in conducting the **INSURED'S** business.

L. **ROBBERY** means the taking of **MONEY** or **SECURITIES** from the care and custody of a person by one who has:

1. Caused or threatened to cause that person bodily harm; or

2. Committed an obviously unlawful act witnessed by that person.

M. **THEFT**, including **BURGLARY** or **ROBBERY,** means any act of stealing **MONEY** or **SECURITIES**.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued: 3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED      **Town of Mooresville, NC**

Policy No.      64-A3-EX-0000074 - 02                    Endorsement Effective:      2/15/2025
                                                                                        (12:01 A.M.)

Countersignature

                                                                        Bill Davidson
                                                                  (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ENDORSEMENT – STATUTORY REQUIREMENTS IMPOSED ON YOU**

This endorsement modifies insurance under the following:

The following is added to the **GENERAL CONDITIONS** section of the policy:

**Statutory Requirements Imposed on You**

You, as a Named Insured or a qualified self-insurer, may be subject to specific requirements (such as reporting certain claims data), by State or Federal law (including but not limited to the Medicare, Medicaid and State Children's Health Insurance Program Extension Act of 2007). Even if you contract with a Service Organization (Third Party Claims Administrator) to handle the administration, investigation or settlement of any loss or "claim" covered under this policy, you are still ultimately responsible for compliance with such laws.

When by law you are designated as the responsible reporting entity for compliance with such State or Federal law, we will not:
1.   Advise you of such laws, unless we are legally required to do so;
2.   Assume any of the obligations imposed on you by such law;
3.   Pay any expenses incurred by you to comply with such law;
4.   Pay any penalty or fine for which you are held liable for failing to comply with such State or Federal law.
"Ultimate net loss" does not include the expenses or payments described in Paragraphs 3. and 4. above.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED         Town of Mooresville, NC

Policy No.        64-A3-EX-0000074-02                    Endorsement Effective:         2/15/2025
                                                                                                              (12:01 A.M.)

Countersignature _____Bill Davidson_____
(Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**SERVICE OF PROCESS ENDORSEMENT**

This endorsement specifies that:

We designate the Superintendent of Insurance, Insurance Commissioner, Director of Insurance, or other officer specified by law, pursuant to the laws of the State where this policy is delivered, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in the State in which this policy is delivered, by, or on behalf of, the Named Insured or any beneficiary hereunder arising out of this Policy.  We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued: 3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED    **Town of Mooresville, NC**

Policy No.    64-A3-EX-0000074-02    Endorsement Effective:    2/15/2025
    (12:01 A.M.)

Countersignature    Bill Davidson
    (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ENDORSEMENT – TERRORIST ACTIVITY EXCLUSION – SFP EXCEPTION**

This endorsement modifies insurance under the following:

ALL LINES AGGREGATE COVERAGE FORM – GENERAL POLICY EXCLUSIONS

With respect to the Excess Workers Compensation and Employers Liability Coverage Part, this exclusion only applies to the insurance provided for Employers Liability Insurance.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

With respect to this policy and any endorsements thereto, the following exclusion is added and supersedes any provision to the contrary.

This insurance does not apply to:

All injury, damage, loss, cost or expense, caused by, resulting from, arising out of or related to, either directly or indirectly, any "Terrorist Activity," as defined herein, and any action taken to hinder, defend against or respond to any such activity. This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in any sequence to the injury, damage, loss, cost or expense.

But, if the "Terrorist Activity" occurs in an "Exception State" and results in fire, we will pay for the loss or damage in such "Exception State" caused by that fire, but only to the extent, if any, required by the applicable Standard Fire Policy statute(s) in such state. However, this exception applies only to direct loss or damage by fire to covered property and not to any insurance provided for time element coverages, including but not limited to business interruption and extra expense. In no event shall this policy be construed to give coverage beyond the minimum requirements of the applicable Standard Fire Policy statute (and amendments thereto) in existence as of the effective date of the policy and governing such

AE 2118 (04-14)    Page 1 of 3

requirements with respect to any acts of terrorism. If the applicable law or regulation in any state permits the Commissioner or Director of Insurance or anyone in a similar position to grant the insurer approval to vary the terms and conditions of the Standard Fire Policy, and such approval has been granted in that state as of the effective date of this policy, this policy shall not provide coverage beyond the minimum requirements of the terms and conditions approved by the Commissioner or Director of Insurance or person in a similar position.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the Company has met their insurer deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

For the purposes of this exclusion,

A.   "Terrorist Activity" shall mean any deliberate, unlawful act that:

    1.   is declared by any authorized governmental official to be or to involve terrorism, terrorist activity or acts of terrorism; or

    2.   includes, involves, or is associated with the use or threatened use of force, violence or harm against any person, tangible or intangible property, the environment, or any natural resources, where the act or threatened act is intended, in whole or in part, to

        a.   promote, further or express opposition to any political, ideological, philosophical, racial, ethnic, social or religious cause or objective; or
        b.   influence, disrupt or interfere with any government related operations, activities or policies; or
        c.   intimidate, coerce or frighten the general public or any segment of the general public; or
        d.   disrupt or interfere with a national economy or any segment of a national economy; or

    3.   includes, involves, or is associated with, in whole or in part, any of the following activities, or the threat thereof:

        a.   hijacking or sabotage of any form of transportation or conveyance, including but not limited to spacecraft, satellite, aircraft, train, vessel, or motor vehicle;
        b.   hostage taking or kidnapping;
        c.   the use or threatened use of or release or threatened release of any nuclear, biological, chemical, or radioactive agent, material, device or weapon;
        d.   the use of any bomb, incendiary device, explosive or firearm;
        e.   the interference with or disruption of basic public or commercial services and systems, including but not limited to the following services or systems: electricity, natural gas, power, postal, communications, telecommunications, information, public transportation, water, fuel, sewer or waste disposal;
        f.   the injuring or assassination of any elected or appointed government official or any government employee;
        g.   the seizure, blockage, interference with, disruption of, or damage to any government buildings, institutions, functions, events, tangible or intangible property or other assets; or
        h.   the seizure, blockage, interference with, disruption of, or damage to tunnels, roads, streets, highways, or other places of public transportation or conveyance.

B.   Any of the activities listed in section A.3. above shall be considered "Terrorist Activity" except where the Insured can demonstrate to the Company, that the foregoing activities or threats thereof were

motivated solely by personal objectives of the perpetrator that are unrelated, in whole or in part, to any intention to

1.  promote, further or express any opposition to any political, ideological, philosophical, racial, ethnic, social or religious cause or objective; or

2.  influence, disrupt or interfere with any government related operations, activities or policies; or

3.  intimidate, coerce or frighten the general public or any segment of the general public; or

4.  disrupt or interfere with a national economy or any segment of a national economy.

C.   "Exception State" means a state which at the time of policy effective date, requires that the coverage provided under this policy be not more restrictive than that provided under a Standard Fire Policy.

D.   Application of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorist exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by a Nuclear Hazard Exclusion or a War Exclusion.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued: 3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED      **Town of Mooresville**

Policy No.      64-A3-EX-0000074-02          Endorsement Effective:  2/15/2025
                                                                                                     (12:01 A.M.)

Countersignature          Bill Davidson
                                                    (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**VIOLATION OF ECONOMIC OR TRADE SANCTIONS**

We (the Insurer or the Company) shall not provide any coverage, pay any claim, or provide any benefit under this Policy, to the extent that the provision of such coverage, payment of such claim, or provision of such benefit is a violation of any applicable trade or economic sanctions, embargo, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED     **Town of Mooresville, NC**

Policy No.     64-A3-EX-0000074-02          Endorsement Effective:   2/15/2025
                                                                          (12:01 A.M.)

Countersignature          Bill Davidson
                                        (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMUNICABLE DISEASE EXCLUSION - SPECIFIED OPERATION OR LOCATION**

This endorsement modifies insurance under the following:

**COVERAGE SECTION  II. GENERAL LIABILITY**

SCHEDULE

Specified Operation(s) or "Location(s)": All Municipal Government Operations and Locations.

The following exclusion is added to **COVERAGE SECTION II GENERAL LIABILITY EXCLUSIONS:**

**Communicable Disease Exclusion**

a.  Any actual or alleged loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defense cost, cost, expense or any other amount, that, directly or indirectly and regardless of any other cause contributing concurrently or in any sequence;

1)  Originates from;
2)  Is caused by,
3)  Arises out of;
4)  Is contributed to by;
5)  Results from; or
6)  Is otherwise in connection with;

A "communicable disease" or the fear or threat (whether actual or perceived) of a "communicable disease".

b.  Any cost or expense to clean-up, detoxify, remove, monitor or test for a "communicable disease".

This exclusion applies even if the "claim" against any insured alleges negligence, civil rights violations or other wrongdoing in the:

1) Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";
2) Testing for a "communicable disease";
3) Failure to prevent the spread of the "communicable disease"; or
4) Failure to report the "communicable disease" to authorities.

This exclusion applies only to the Operation(s) or "Location(s)" shown in the Schedule above, including any operations, maintenance, ownership, supervision, management, control or "locations" that are necessary or incidental to the Operation(s) or "Location(s)" shown in the Schedule above.

If a Specified Operation is designated in the Schedule above, this exclusion applies regardless of where the Specified Operation in the Schedule above is conducted, whether such Operation is conducted by you or on your behalf, or whether the Operation is conducted for yourself or for others.

If a Specified "Location" is designated in the Schedule above, this exclusion applies to all liability and all operations only at such "Location". For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

As used in this exclusion, "communicable disease" means any infection or contagious disease which can be transmitted by means of any substance or agent from any organism to another organism where:

5) The substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not;
6) Regardless of the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal; and
7) The disease, substance or agent can cause or threaten "bodily injury", illness, emotional distress, damage to human health, human welfare or tangible or intangible "property damage".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED        **Town of Mooresville, NC**

Policy No.        64-A3-EX-0000074-02              Endorsement Effective:   2/15/2025
                                                                                        (12:01 A.M.)

Countersignature                    Bill Davidson
                                                   (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR
PERSONAL INFORMATION AND DATA RELATED LIABILITY**

The following exclusions are added to **GENERAL POLICY EXCLUSIONS** of the **GENERAL POLICY CONDITIONS** section of the form:

Any loss, injury or expense related to a **CLAIM** for **WRONGFUL ACT** or damages, with respect to **COVERAGE SECTIONS II, III, IV, V** and **VII**, as applicable, arising out of**:**

(a) Any access to, failure to protect from access of, theft of, unauthorized viewing or copying of, disclosure of or loss of control over any information;

(b) Failure to report an unauthorized disclosure of information, or failure to comply with Payment Card Industry Data Security Standards, breach notification laws, data security or privacy laws, or statutory requirements to manage an identity theft prevention program;

(c) The loss of, loss of use of, damage to, corruption of, alteration of, destruction of, inability to access or inability to manipulate any electronic data;

(d) The loss of, loss of use of, damage to, corruption of, destruction of, failure of, slowdown or malfunction of, inability to access or inability to manipulate any computer or electronically controlled equipment, or any internet controlled equipment, including but not limited to, software, components, hardware and any peripheral equipment, stationary or mobile devices, repositories and storage devices, processing equipment, and any other media or devices which are used with or for any electronically or internet controlled equipment or electronic data dissemination;

(e) The loss of, loss of use of, damage to, corruption of, alteration of, destruction of, failure of, slowdown of, malfunction of, overload of, disablement or shutdown of, inability to access, inability to manipulate or inability to conduct transactions over any computer or electronic network, data network, communication network, satellite, systems or website;

(f) Any acts of electronic, e-commerce or cyber vandalism, cyber or internet crime, cyber terrorism, or any failure to prevent or detect such acts, including but not limited to:

(1) Hacking, phishing, or unauthorized access, modification or use, of a computer or electronic network, data network, communication network, satellite, systems, computer or electronically controlled equipment, internet controlled equipment or website;

(2) Unauthorized use of another's name, product or intellectual property;

(3) The transmission of a computer virus or malicious software or code;

(4) A computer security breach, network security or content breach, or data breach;

(5) A denial of service attack, or any network service interruption, disruption or failure;

(6) Any fraudulent electronic acts, including any fraudulent electronic transfer of funds or charges; and

(7) Any acts of cyber espionage or cyber extortion.

This exclusion applies even if damages are claimed for:

(i) Business interruption costs, loss of revenue, continuing expenses, extra expenses, increase in costs, repair costs, replacement costs, upgrading or improvement costs, remediation or restoration expenses including any redesign of infrastructure;

(ii) Post breach expenses, including but not limited to, notification costs, credit monitoring expenses, identity or fraud monitoring expenses, forensic expenses, investigation costs, legal expenses, public relations expenses and crisis management expenses;

(iii) Reputational or brand damage;

(iv) Punitive damages, assessments, fines or penalties;

(v) Ransom payments or extortion demands;

Or any other loss, costs, expenses or fees incurred by you or others arising out of that which is described in Paragraph (a) through (f) above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

A **CLAIM** for **WRONGFUL ACT** or damages with respect to **COVERAGE SECTIONS II, III IV, V** and **VII**, arising out of:

**PERSONAL INJURY** arising out of any access to or disclosure of any person's or organization's confidential or personal information, including any intellectual property rights, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES**
**INSURANCE COMPANY**

Date Issued:  3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED     **Town of Mooresville, NC**

Policy No.      64-A3-EX-0000074-02                    Endorsement Effective:     2/15/2025
                                                                                    (12:01 A.M.)

Countersignature                    Bill Davidson
                                           (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**FAILURE TO SUPPLY SUB-LIMIT – WATER OPERATIONS**

This endorsement modifies insurance under the following:

COVERAGE SECTION II

This endorsement is subject to all terms and conditions of **COVERAGE SECTION II**, except as otherwise stated below.

Limits for this endorsement will be the <u>difference</u> between the **COVERAGE SECTION II SPECIFIC LIMITS OF INSURANCE** of:

**SUB-LIMITS**

Limit of Insurance – Any one **OCCURRENCE**          $1,000,000
Limit of Insurance – Annual Aggregate                     $1,000,000

and an applicable underlying Self-Insured Retention of:

Self-Insured Retention – Any one **OCCURRENCE**          $100,000

It is understood and agreed that the Sub-Limit listed above applies to **COVERAGE SECTION II GENERAL LIABILITY BODILY INJURY** or **PROPERTY DAMAGE** arising out of the failure of any **INSURED** to adequately supply electricity.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued: 3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED     **Town of Mooresville, NC**

Policy No.     64-A3-EX-0000074-02     Endorsement Effective:     2/15/2025
                                                                   (12:01 A.M.)

Countersignature          Bill Davidson
                          (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ENDORSEMENT – AUTO PHYSICAL DAMAGE**

This endorsement modifies insurance under the following:

**COVERAGE PART I**

It is agreed **COVERAGE PART I PROPERTY** only applies to Insuring Agreement B. Automobile Physical Damage.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 1200 (01-21)

## THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

Date Issued:  3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

| | |
|---|---|
| INSURED | **Town of Mooresville, NC** |
| Policy No. | 64-A3-EX-0000074-02 |

Endorsement Effective:  2/15/2025
(12:01 A.M.)

Countersignature  Bill Davidson
(Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ENDORSEMENT – EXCESS UNINSURED AND/OR UNDERINSURED MOTORISTS COVERAGE**

This endorsement modifies insurance under the following:

ALL LINES AGGREGATE COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

The following coverage is added to COVERAGE PART III - Insurance For Automobile Liability.

A.  **Excess Uninsured and/or Underinsured Motorists Coverage**

1.  We will indemnify you for the sums, excess of the applicable Self-Insured Retention shown in the Schedule, the insured is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle".  The damages must result from "bodily injury" caused by an "accident".  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2.  With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will indemnify under the coverage selected under this endorsement only if a. or b. below applies:

    a.  The limit of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or
    b.  A tentative settlement has been made between an insured and the insurer of the vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:
        (1)  Have been given prompt written notice of such tentative settlement; and

    (2)    Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B.    Who Is An Insured**

The following only applies with respect to the coverage provided by this endorsement and supersedes any provision to the contrary.

1.    An individual, then the following are insureds:

    a.    The Named Insured and any "family members".
    b.    Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    c.    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

2.    A partnership, limited liability company, corporation or any other form of organization, then the following are insureds:

    a.    Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    b.    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

**C.    Exclusions**

The following exclusions are the only exclusions applicable to the coverage provided by this endorsement.

This insurance does not apply to any of the following:

1.    Any "claim" settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", in accordance with the procedure described in Paragraph A.2.b.

2.    The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3.    Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4.    "Bodily injury" sustained by an individual Named Insured while "occupying" or struck by any vehicle owned by that Named Insured which is not a covered "auto".

5.    Punitive or exemplary damages.

**D.    Limit Of Insurance**

1.    Regardless of the number of covered "autos", insureds, premiums paid, "claims" made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance For Uninsured And Underinsured Motorists Coverage shown in this endorsement.

2.    With respect to damages resulting from an "accident" with an "uninsured motor vehicle", as defined in Paragraphs F.3.a., c. and d. of the definition of "uninsured motor vehicle", the Limit of Insurance shall be reduced by:

      a.     All sums paid or payable under any workers' compensation, disability benefits or similar law; and

      b.     All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

3.     No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Part III and any Liability Coverage Form.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E.   Changes In Conditions

The General Provisions and Conditions are changed with respect to coverage provided by this endorsement as follows:

1.     The Other Insurance condition is replaced by the following:

If there is other applicable insurance available under one or more Coverage Forms/Parts, policies or provisions of coverage:

      a.     The maximum recovery under all coverage forms/parts or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

      b.     Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

      c.     If the coverage under this coverage form/part is provided:

         (1)   On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis.  Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

         (2)   On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis.  Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2.     The If You Have an "Event", "Claim" or "Suit" and Role of the Service Organization provision is changed by adding the following:

      a.     Promptly notify the police if a hit-and-run driver is involved; and

      b.     Promptly send us copies of the legal papers if a suit is brought.

      c.     A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the insured and the insurer and allow us to advance payment to that insured in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

3.     Subrogation and Recoveries Condition is replaced by the following:

a. With respect to Paragraph b. of the definition of "uninsured motor vehicle", if any person or organization to or for whom we make payment under this coverage has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to prejudice them.

b. If we make any payment and the insured recovers from another party, the insured shall hold the proceeds in trust for us and pay us back the amount we have paid, less our pro rata share of expenses incurred in recovering those damages. However, with respect to Paragraph b. of the definition of "uninsured motor vehicle", we shall be entitled to recovery only after the insured has been fully compensated for damages.

Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

(1) Have been given prompt written notice of a tentative settlement between an insured and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

(2) Fail to advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification:

(3) That payment will be separate from any amount the insured is entitled to recover under the provisions of Uninsured Motorists Coverage; and

(4) We also have a right to recover the advance payment.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an Individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Loss" means direct and accidental loss or damage.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle and Safety Responsibility Act; or

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of the "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages resulting from "bodily injury" caused by the "accident".

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

e. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

f. Owned by a governmental unit or agency; or

g. Designed for use mainly off public roads while not on public roads.

**SCHEDULE**
**Excess Uninsured and/or Underinsured Motorists Coverage**

|  | Limit of Insurance |  |
|---|---|---|
|  | $1,000,000 | Each "Accident" |
|  |  |  |
|  | Self Insured Retention |  |
|  | $100,000 | Each "Accident" |
| The definition of "uninsured motor vehicle" in this endorsement applies in its entirety unless an "X" is entered below: ☐ If an "X" is entered in this box Paragraph **b.** of the definition of "uninsured motor vehicle" does not apply. x If an "X" is entered in this box only Paragraph **b.** of the definition of "uninsured motor vehicle" applies. |  |  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED    **Town of Mooresville, NC**

Policy No.    **64-A3-EX-0000074-02**          Endorsement Effective:   2/15/2025
                                                                                               (12:01 A.M.)

                                                                        Bill Davidson
                                        Countersignature  _____
                                                                        (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – PFAS CHEMICALS**

The following exclusion is added to **GENERAL POLICY EXCLUSIONS** of the **GENERAL POLICY CONDITIONS** section of the form:

This insurance does NOT apply to any loss, injury or expense related to a **CLAIM** for **WRONGFUL ACT** or damages, with respect to **COVERAGE SECTIONS II, III, IV, V** and **VII**, as applicable, arising out of**:**

(a)  The actual, alleged, or threatened exposure to, contact with, existence of, inhalation or absorption of any **PFAS** group of manufactured chemicals;

(b)  The testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of any **PFAS** by any **Insured** or any other person or organization

For the purpose of this exclusion, the following definition is added:

**PFAS** means the Perflouroalkyl and Polyflouroalkyl group of manufactured chemicals including, but not limited to the **PFAS** sub-groups perfluorooctane sulfonate (PFOS), perfluorooctanoic acid (PFOA) and Perfluorohexane sulfonate acid (PFHxS).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 2420 (03-23)         Copyright, 2021 Munich Reinsurance America, Inc.                    Page 1 of 1
                                              All rights reserved.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued: 3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED       **Town of Mooresville, NC**

Policy No.       64-A3-EX-0000074-02                  Endorsement Effective:          2/15/2025
                                                                                              (12:01 A.M.)

Countersignature   Bill Davidson
                                                (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

This Policy is subject to the following:

**GENERAL ENDORSEMENT**

PART II EXCESS LOSS FUND PROTECTION does not provide protection for losses arising from Workers' Compensation and Employers' Liability Coverage.  Payments made by the INSURED within the applicable Workers' Compensation and Employers' Liability Self Insured Retention will not reduce the outstanding INSURED'S LOSS FUND and no EXCESS LOSS FUND PROTECTION is provided as a result of Workers' Compensation and Employers' Liability losses.

All other terms and conditions remain unchanged.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued: 3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED    **Town of Mooresville, NC**

Policy No.    64-A3-EX-0000074-02    Endorsement Effective:    2/15/2025
    (12:01 A.M.)

    Bill Davidson
Countersignature    
    (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**NORTH CAROLINA NON-WAIVER OF GOVERNMENTAL IMMUNITY ENDORSEMENT**

This endorsement modifies insurance under the following:

    ALL LINES AGGREGATE COVERAGE FORM – COVERAGE PARTS II, III, IV, V AND VII.

The endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

This insurance applies to the tort liability of any insured only to the extent that such tort liability is not subject to any defense of governmental immunity under North Carolina law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The following is added to the General Conditions Section:

**Preservation Of Governmental Immunity**

Your purchase of this policy is not a waiver, under North Carolina General Statute Section 160A-485 or North Carolina General Statute Section 153A-435 or any amendments to those sections, of any governmental immunity that would be available to any insured had you not purchased this pol icy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:   3/5/2025

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED      **Town of Mooresville, NC**

Policy No.        64-A3-EX-0000074-02                    Endorsement Effective:    2/15/2025
                                                                                          (12:01 A.M.)

Countersignature _____Bill Davidson_____
                                                      (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ENDORSEMENT – OTHER INSURANCE**

This endorsement modifies insurance under the following:

For the purpose of the following permits:

   1)   Blue Ridge Division, at Mile Post O-31.32, Mooresville, Iredell, North Carolina
Latitude 35.6134, Longitude -80.8183, NS Activity No. 1323211
Installing one underground transverse 16-inch Ductile Iron Pipe conveying water encased in a 30" steel casing

   2)   Blue Ridge Division, at Mile Post 51.38 – LE, Mooresville, Iredell, North Carolina
Latitude 35.6226, Longitude -80.8002, NS Activity No. 1323210
Proposed installation of one underground transverse 16-inch Ductile Iron Pipe for the conveyance of sewer encased in a 30" steel casing

   3)   Blue Ridge Division, at Mile Post 51.37 -LE, Mooresville, Iredell, North Carolina
Latitude 35.6227, Longitude – 80.8001, NS Activity No. 1323209
Proposed installation of one underground transverse 16-inch Ductile Iron Pipe conveying water encased in a 30" steel casing

As respects only to Coverage Section II, General Liability, and Coverage Section IV, Automobile Liability, the following is added to **GENERAL POLICY CONDITIONS, 14. OTHER INSURANCE**:

This insurance is primary to, and will not seek contribution from, any other insurance available to an Additional Insured under your policy provided that you have agreed in a written contract or written agreement that this insurance would be primary and would not seek contribution from any other insurance available to the Additional Insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

AE 1200 (01-21)