**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Statesville Division**

JEFFREY NOBLE,
         Plaintiff,

        v.                                         Civil Action No. 5:26-cv-00006

TOWN OF MOORESVILLE, NORTH CAROLINA;
CHRISTOPHER QUINN,
in his official and individual capacities;
TRACEY JEROME, in her official capacity;
and CHRIS CARNEY, in his individual capacity,
         Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS**

**NOW COMES**, Plaintiff Jeffrey Noble, by and through the undersigned counsel respectfully submits this Memorandum of Law in Further Opposition to Defendants' Motion to Dismiss.

**STATEMENT OF INTRODUCTION**

Defendants' motion is not a true pleading challenge. It is an attempt to rewrite the Complaint, strip away reasonable inferences, and force merits determinations on a paper record at the threshold. Plaintiff's Complaint alleges, in his role administering Town Hall access-control systems, badge credentials, surveillance systems, and related security infrastructure, discovered irregular after-hours access activity associated with the Mayor's credentials while working IT Ticket #36967. Plaintiff reviewed corresponding surveillance footage, internally reported what he reasonably believed reflected misuse of municipal property, security breaches, ethical violations, and matters of significant public concern. *Noble v. Town of Mooresville*, No. 5:26-cv-00006-SCR-

DCK, (W.D.N.C. Jan. 12, 2026) pg. 2-4). The Complaint further alleges that, after report, Town leadership restricted access to the footage. *Id*. Plaintiff was accused without evidence of leaking information, placed on administrative leave, compelled to attend an intimidating investigative interview conducted by investigators, police personnel, and informed by Defendant Quinn that termination was being recommended, and effectively forced out of his employment. (*Id*., p 4-6).

Accordingly, the Court acting under Fed. R. Civ. P. 12(b)(1), (2), and (6) should deny the Motions to Dismiss.

## FACTUAL BACKGROUND

Plaintiff alleges he was employed by the Town of Mooresville in its Innovation and Technology Department, and his duties included administration of Town Hall access-control systems, badge credentials, surveillance systems, and related security infrastructure. *Id*., p. 2. Plaintiff routinely reviewed door-access logs, badge activity, and surveillance footage to identify unauthorized access, security risks, and policy violations. *Id*., p. 3.

According to the Complaint, in October of 2024, the Town created IT Ticket #36967 requesting modifications to door-access permissions, and, while working that ticket, Plaintiff reviewed badge-access logs and identified irregular after-hours entries associated with Defendant Carney's credentials. *Id*., p. 3. Plaintiff then reviewed corresponding surveillance footage, which he alleges showed Defendant Carney entering Town Hall after midnight with an adult woman, remaining for approximately four and a half hours, moving through secured areas, triggering motion detectors that prompted a police response. *Id*., at pg. 3. Plaintiff alleges he reported these

findings internally beginning on or about October 15, 2024, to his supervisors within the IT Department, and did not disseminate the video publicly or provide it to the media. *Id*. at pg. 4.

The Complaint alleges that, after Plaintiff's internal report, Town leadership restricted access to surveillance footage and limited who within the Town and Police Department could be briefed on the contents. *Id*. Defendants shifted focus from the Mayor's conduct to Plaintiff, accused him without evidence of leaking information, placed him on administrative leave, and subjected him to escalating restrictions, isolation, and intimidation. *Id*. at pg. 5. Plaintiff was later compelled to attend an "administrative interview" conducted by US ISS, attended by investigators, a Mooresville Police Department detective, a police K-9 unit. He was required to answer questions as a condition of employment, prohibited from recording the interview, and accused based on assertions by Jamie Gatton's legal counsel of leaking information. *Id*. Plaintiff alleges that on or about July 3, 2025, Defendant Quinn informed him that termination of his employment was being recommended, and that by then he had been placed on indefinite leave, stigmatized, subjected to coercive investigative tactics, stripped of any meaningful path back to employment, resulting in constructive discharge. *Id.*

**STANDARD OF REVIEW**

The Court must first determine "that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." *Constantine v. Rectors, George Mason Univ*., 411 F.3d 474 (4th Cir. 2005), 484. A Defendant may properly challenge subject-matter jurisdiction by raising a motion under Fed. R. Civ. P. Rule 12(b)(1).

Under Rule 12(b)(2), when the Court rules without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, and the court must construe all relevant allegations and inferences in the plaintiff's favor. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) and *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943 (4th Cir. 1993). The Court must "assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." Id.

## ARGUMENT

### I.     Official-Capacity Redundancy Does Not Warrant Dismissal of Plaintiff's Claims.

Defendants are correct only in the limited sense that official-capacity claims may overlap with a claim against the municipality itself. See *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). That point does not undermine the merits of Plaintiff's constitutional claims, his municipal-liability theory, or request for prospective relief. If the Court elects to streamline the pleadings, the proper course is simply to treat the official-capacity claims as claims against the Town of Mooresville, not a basis to dismiss the underlying § 1983 theories.

**II. The Complaint Plausibly Alleges Personal Involvement by Quinn and Carney.**

Defendants argue that the Complaint fails to connect Quinn and Carney to the challenged retaliation. The Complaint alleges more than enough at the pleading stage. As to Quinn, the Complaint alleges he was a senior Town official with authority over Plaintiff's employment and that on or about July 3, 2025, Quinn informed Plaintiff that termination of his employment was being recommended. That is direct participation in the adverse-employment process, not mere background involvement.

Complaint alleges that Plaintiff's reporting centered on after-hours Town Hall access associated with Carney's credentials, corresponding surveillance footage, a police response, and conduct Plaintiff believed reflected misuse of municipal property and ethical violations. The Complaint further alleges that, after Plaintiff reported those matters, Defendants shifted scrutiny away from the Mayor's conduct and toward Plaintiff, restricted access to the footage, accused Plaintiff of leaking information, and used Town and police resources to remove him. Those facts permit a plausible inference that Carney, whose own conduct was the subject of the report, participated in or benefited from the retaliatory response. Defendants' insistence on more detail asks the Court to require proof rather than notice pleading. Fed. R. Civ. P. Rule 8 does not require Plaintiff to plead every internal communication or covert instruction before discovery. Further, when the court accepts those allegations as true—as the Court must under Fed. R. Civ. P. 12(b)(6)— the pleading more than adequately states a claim which relief may be granted.

**III. Plaintiff Has Plausibly Stated a First Amendment Retaliation Claim.**

Defendants argue the Complaint fails to plead a First Amendment retaliation claim. That is incorrect. Under *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005), a First Amendment retaliation claim must allege: (1) he engaged in protected First

Amendment activity; (2) defendant took an action that adversely affected that protected activity; and (3) a causal relationship between the protected activity and the defendant's conduct. See *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

**A. The Complaint pleads protected speech on a matter of public concern**

The Complaint alleges that Plaintiff internally reported "serious misconduct involving the sitting Mayor of Mooresville" after discovering surveillance footage and access-control records showing the Mayor's after-hours presence in Town Hall with a female companion, including police response triggered by security alarms. *Noble v. Town of Mooresville.,* pg. 1-3. The Complaint alleges Plaintiff believed the footage reflected "misuse of municipal property, security breaches, ethical violations, and matters of significant public concern," and that his reports concerned "public integrity, government accountability, and public safety." *Id. pg. 4-6*.

Speech exposing misuse of public resources, abuse of authority, security breaches in municipal facilities, and possible misconduct by high-ranking public officials falls squarely within the First Amendment's protection for speech addressing matters of public concern. See *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499–500. The Complaint expressly alleges such subject matter here. *Id.*, pg. 6.

Even though Defendants invoke the public-employee-speech doctrine, dismissal is still unwarranted on the face of the pleading. Plaintiff's Complaint reported misconduct "internally and through proper channels," Plaintiff did not disseminate the video publicly, that he reported the conduct because of ethical concerns, security, misuse of government property, and public concern. *Id.*, at pg. 1, and 4. Those allegations plead speech touching public concerns, and the

liberal pleading rules permitted at the Rule 12 stage is not the point to resolve all factual questions about the scope of Plaintiff's duties or whether Defendants' version of events should control, despite the affidavit and insurance policy filed by the Defendants.

**B. The Complaint pleads adverse action sufficient to chill a person of ordinary firmness**

Under *Constantine*, 411 F.3d 474 (4th Cir. 2005), Plaintiff must show Defendants' conduct "adversely affected" the exercise of First Amendment rights. The Complaint alleges more than workplace friction. Defendants accused Plaintiff, without evidence, of leaking information to the media; placed him on administrative leave; subjected him to "escalating restrictions, isolation, and intimidation"; compelled him to attend an administrative interview with outside investigators, a police detective and K-9 present; required him to answer questions as conditions of employment; prohibited him from recording the interview; informed him that three terabytes of data from his work devices had been reviewed; then advised him termination was being recommended, resulting in constructive discharge. *Id.* pg. 5 and 6. The Complaint states these actions "would chill a person of ordinary firmness from engaging in similar protected speech." *Id*. pg. 7). This tracks the governing standard recognized in *Constantine*, 411 F.3d 474, 500 (4th Cir. 2005), and the pled allegations support it. Administrative leave, coercive investigation tactics, reputational smearing, forced separation from employment are retaliatory acts sufficient to deter employees from reporting official misconduct.

**C. The Complaint pleads causation**

Plaintiff's protected activity was a substantial or motivating factor in Defendants' actions. Plaintiff began reporting the misconduct on or about October 15, 2024. *Id*., pg. 4. That "[a]s public and internal scrutiny increased, Defendants shifted focus away from the Mayor's conduct

and toward Plaintiff," accused him without evidence of leaking information, placed him on leave, escalated restrictions and intimidation, and ultimately forced his separation. *Id*. pg. 5 and 6. The First Amendment claim specifically alleges Defendants were aware of Plaintiff's reporting activities, the adverse actions followed his protected activity, and that his protected speech "was a substantial or motivating factor in Defendants' retaliatory actions." *Id.* pg. 6 and 7. Those are direct causation allegations. Plaintiff discovered and reported misconduct; the Town leadership restricted access to evidence; Town resisted release of the footage; scrutiny towards Plaintiff intensified; Defendants redirected the matter toward Plaintiff through accusation, investigation, leave, stigma, and termination-related action. *Id*. pg. 4-7. Under *Constantine*, 411 F.3d 474, 501 (4th Cir. 2005), that is sufficient to plead retaliatory causation.

**D. The Complaint therefore states a plausible First Amendment retaliation claim**

The First Claim for Relief incorporates the preceding factual allegations and then pleads, in terms tracking *Constantine,* 411 F.3d 474 (4th Cir. 2005), that Plaintiff engaged in protected speech; Defendants knew of that speech; Defendants imposed adverse employment actions including administrative leave, coercive investigation, reputational smearing, and constructive discharge; those actions would chill a person of ordinary firmness; and Plaintiff's speech was a substantial or motivating factor in the retaliation. *Id.* pg. 6-7. Defendants' arguments improperly ask the Court to draw inferences against Plaintiff and to resolve factual disputes about the nature of speech, Defendants' motives, and meaning of the retaliatory acts. Under *Constantine*, 411 F.3d 474 (4th Cir. 2005), the Noble Complaint alleges protected activity, adverse action, and causation. The motion to dismiss the First Amendment claim should therefore be denied.

**IV. The Garcetti issue cannot be conclusively resolved against Plaintiff on the pleadings.**

Defendants' argument asserts Plaintiff's report was unprotected because Plaintiff acted "pursuant to his job responsibilities." The inquiry is more specific: whether the speech itself was within the scope of the employee's duties, not merely whether the subject matter was learned through employment. *Lane v. Franks*, 573 U.S. 228, 240 (2014). A practical inquiry occurs, focused on the employee's actual ordinary duties and whether the speech occurred in the usual course of those duties. *Hunter v. Town of Mocksville*, 789 F.3d 389, 397-99 (4th Cir. 2015).

Here, the Complaint does allege that Plaintiff's duties included reviewing access logs and surveillance systems. It dos not follow that retaliatory action is insulated whenever an employee reports official misconduct discovered through work. The Complaint alleges Plaintiff reported serious wrongdoing by a sitting mayor involving public facilities, police response, security breaches, and misuse of public resources. Whether Plaintiff's reporting to supervisors and other proper channels was routine technical reporting, or instead citizen speech exposing official misconduct, is a fact-intensive question not suited for dismissal. Fourth Circuit precedent recognizes constitutional protection for employee speech exposing government misconduct and abuse of office. See *Durham v. Jones*, 737 F.3d 291 (4th Cir. 2013); *Hunter v. Town of Mocksville*, 789 F.3d 389. Defendants rely on Plaintiff's allegation that his reports were made pursuant to job responsibilities. A complaint is read as a whole, and alternative reasonable inferences must favor Plaintiff. The allegations permit the inference that Plaintiff went beyond maintenance and reported misconduct implicating public integrity and public safety.

**V. Plaintiff Has Plausibly Stated a Fourteenth Amendment Stigma-Plus Claim.**

In order to properly state a stigma-plus claim, a plaintiff must allege: (1) false stigmatizing charges; (2) publication or likely dissemination affecting future employment; (3) a sufficient

alteration of legal status such as discharge, and (4) lack of due process. See *Sciolino v. City of Newport News*, *Va.*, 480 F.3d 642, 646-50 (4th Cir. 2007); *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006). Defendants made and disseminated false, misleading, and stigmatizing accusations that Plaintiff leaked confidential information and engaged in misconduct; that those accusations were made in connection with suspension, investigation, and removal from employment; that they harmed his reputation and foreclosed future employment opportunities; and that Defendants denied him a meaningful opportunity to clear his name.

**A. Defendants' no-publication argument is premature.**

Defendants read the Complaint too narrowly by isolating one interview allegation and insisting the accusation was purely private. But the Complaint alleges more broadly that stigmatizing accusations were made and disseminated, that Plaintiff was publicly and internally stigmatized, and that his standing and future employment opportunities were harmed. Under *Sciolino*, a plaintiff need not prove completed public broadcast at the pleading stage; allegations supporting likely dissemination to prospective employers or others with a need to know can suffice. *Sciolino.*, 480 F.3d 642, 646-50 (4th Cir. 2007).

**B. Defendants cannot defeat the claim by relabeling constructive discharge as resignation.**

The Complaint alleges that Plaintiff's separation constituted a constructive discharge after indefinite leave, stigmatization, coercive investigation, and elimination of any meaningful path back to employment. The assertion Plaintiff simply resigned is a mischaracterization contrary to the pleaded allegations. At the motion-to-dismiss stage, the Court must accept the constructive-discharge allegation as true. See generally *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.* 637 F.3d 435 (4th Cir. 2011) wherein on a Rule 12(b)(6) motion the judge accepts all factual allegations in the complaint as true and draws reasonable inferences for the plaintiff.

**C. The Complaint plausibly alleges denial of a name-clearing opportunity.**

First, the Complaint alleges Plaintiff was accused of serious misconduct—specifically, that he was accused "without evidence" of leaking information to the media and that, during the June 17, 2025 interview, he was accused "based on assertions by Jamie Gatton's legal counsel" of leaking information. *Noble* at pg. 5. It also pleads, in the due-process count itself, that Defendants made "false, misleading, and stigmatizing accusations" that Plaintiff leaked confidential information and engaged in misconduct. *Id*. at 7.

Second, Plaintiff was not given notice before the interview. The Complaint says he "had not been provided advance notice of the allegations against him" before he was compelled to attend the interview. *Id*. at 5. Plaintiff alleges Defendants imposed adverse employment consequences "without providing adequate notice [or] a meaningful opportunity to respond." *Id.* at 8.

Third, the Complaint alleges the interview was intimidating and coercive. It says Plaintiff was "compelled" to attend the June 17, 2025 "administrative interview," that the Plaintiff was required to answer questions as a condition of employment, and that he was prohibited from recording it. *Id.* at pg. 5. Present at the interview were third-party investigators, a Mooresville Police Department detective, police K-9 unit, and that the "setting, personnel, and tactics" were "intimidating and punitive, not neutral or fact-finding," including the "deliberate placement of a police K-9 immediately adjacent to Plaintiff during questioning." Id.

Fourth, the Complaint alleges Plaintiff was never given a meaningful name-clearing hearing. The due-process count expressly states that Defendants imposed "indefinite administrative leave and constructive discharge, without providing adequate notice, a meaningful opportunity to respond, or a name-clearing hearing." *Id.* at pg. 8. The Complaint reinforces the allegation by

requesting injunctive relief including "a prompt and meaningful name-clearing hearing," which reflects the Complaint's position that no such hearing had been provided. *Id.* at pg. 13. So, as pled, the Complaint does not merely state a conclusory due-process theory; it identifies the allegedly stigmatizing accusation, the absence of advance notice, the coercive circumstances of the compelled interview, and the lack of any name-clearing process. *Id*. at pg. 7-8.

**VI. Plaintiff Has Plausibly Stated a Monell Claim.**

Defendants argue the Monell claim fails because Plaintiff has not identified policy or custom with sufficient specificity. Defendants demand far more than Fed. Civ. P. Rule 8 requires. Liability attaches under § 1983 where a constitutional injury results from an official policy, a decision by a final policymaker, ratification by final policymakers, or a custom or practice. See *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Starbuck v. Williamsburg James City Cnty. Sch. Bd*., 28 F.4th 529 (4th Cir. 2022).

The Complaint alleges the Town acted through policies, customs, and practices of retaliating against employees who report misconduct by politically connected officials, suppressing access to evidence of official wrongdoing, using police and investigative resources to protect leadership rather than investigate misconduct, and failing to train or supervise regarding whistleblower protections and constitutional rights. The Complaint also alleges ratification by final policymakers, including senior administrative leadership, and identifies Tracey Jerome as Town Manager and final policymaker sued in her official capacity. At the pleading stage, Plaintiff need not identify every prior identical incident or attach internal municipal directives. The Fourth Circuit has rejected heightened pleading demands for *Monell* claims. See *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014).

The Court must ask whether the Complaint contains sufficient factual matter, accepted as true, to state a plausible claim for relief; not resolve factual disputes, weigh competing explanations, or demand evidentiary proof of a policy. See *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014); *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529 (4th Cir. 2022); and *Jordan by Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994). A plaintiff must plead facts making it plausible that the municipality's policy, custom, or ratification caused the constitutional injury. *Owens*, 767 F.3d 379 (4th Cir. 2014). The Complaint does not merely recite the word "policy." The Complaint identifies acts of Town officials and Town-retained actors, identifies the objectives served by the acts, and states the Town's policies, customs, and ratification were the "moving force" behind the constitutional violations. *Noble.* at pg. 6, 8, and 9.

A municipality may be liable under 42 U.S.C. § 1983 when execution of its policy or custom inflicts the constitutional injury. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Fourth Circuit recognizes several paths to *Monell* liability, including an express policy, a widespread custom or practice, decisions of final policymakers, ratification, and deliberate indifference in training or supervision. See *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987); *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529 (4th Cir. 2022); *Hunter v. Town of Mocksville*, 897 F.3d 538 (4th Cir. 2018). The Complaint plausibly pleads several of those routes. The Complaint states after Plaintiff reported surveillance footage and access-control records reflecting the Mayor's after-hours presence in Town Hall, "Town leadership restricted access to the surveillance footage and limited who within the Town and within the Police Department could be briefed on its contents." *Id.* at pg. 4. The Complaint states the Town refused to release the footage in response to a public-records request, admitted footage existed, and that

the Town's litigation posture "mirrored its internal approach: suppress the video, not investigate the conduct." *Id*. The Complaint states as scrutiny increased, the "Defendants shifted focus away from the Mayor's conduct and toward Plaintiff," accused him without evidence of leaking information, placed him on leave, escalated restrictions and intimidation, and compelled him to sit for a coercive interview involving Town-retained investigators, a Town police detective, and a police K-9 unit. *Id.* at pg. 5. These are not isolated, unexplained acts by line employees. They are alleged coordinated governmental responses involving Town leadership, the Police Department, and a third-party investigator retained by the Town. *Id*. The Complaint states Defendants acted pursuant to "policies or customs tolerating retaliation against whistleblowers; failure to discipline politically connected officials; and ratification by final policymakers," and "[t]he Town used police and investigative resources to protect the Mayor and punish the employee who reported misconduct." *Id.* at pg. 6.

In *Monell* claims, Plaintiff plead the challenged policies and customs included "retaliating against employees who report misconduct by politically connected officials; suppressing or restricting access to evidence of official wrongdoing; utilizing police and investigative resources to protect Town leadership rather than investigate misconduct; [and] failing to train, supervise, or discipline employees regarding whistleblower protections and constitutional rights." *Id.* at pg. 8. Pursuant to *Owens*, 767 F.3d 379 (4th Cir. 2014), a *Monell* claim survives dismissal where the complaint pleads facts permitting a reasonable inference of a municipal custom or practice; it need not set out the full evidentiary history before discovery. The allegations as raised by the Plaintiff in the Complaint more than adequately satisfy this standard at the pleading phase.

The Complaint pleads municipal liability through final policymaker action and ratification. The Complaint names the Town Manager, Tracey Jerome, in her official capacity and alleges she is sued "as a final policymaker." *Id*. at pg. 2. Complaint states Defendant Quinn is a senior Town official with authority over Plaintiff's employment. *Id*. The Complaint states the unconstitutional acts were "ratified and approved by final policymakers of the Town, including senior administrative leadership." *Id*. at pg. 9. At the pleading stage, the allegations are enough when read together with the detailed factual narrative. The Complaint alleges Town leadership restricted access to the video, controlled internal briefing within both the Town and Police Department, retained a third-party investigator, used police resources during Plaintiff's compelled interview, placed Plaintiff on indefinite leave, and recommended termination culminating in constructive discharge. *Id.* at pg. 4-6. The Complaint pleads the challenged retaliation was not merely tolerated after the fact; it was executed through municipal decisionmakers, then ratified by final policymakers. A basis for municipal liability exists as described under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) and *Hunter v. Town of Mocksville*, 897 F.3d 538 (4th Cir. 2018).

If Defendants contend Plaintiff has not yet proven who held final policymaking authority under North Carolina law, that is not a Rule 12(b)(6) defect. Whether Jerome or other senior Town officials possessed final authority over the relevant employment and investigative decisions is, at minimum, a mixed question better resolved on a developed record, and possibly during the summary judgment phase. At this stage, the Court must credit the Complaint's allegations that Jerome was a final policymaker and that senior leadership ratified the retaliation. *Id.* at pg. 2 and 9.

A *Monell* claim requires the municipal policy or custom be the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987). The Complaint pleads causational requirements under *Monell*. The Complaint pleads the Town's "policies, customs, and ratification were the moving force behind the constitutional violations suffered by Plaintiff." *Id*., pg. 9. According to the allegations as pled, Plaintiff reported evidence of misconduct by a politically connected official; Town leadership then restricted access to the evidence, limited internal briefing, refused release of the footage, shifted focus from the Mayor to Plaintiff, accused Plaintiff without evidence of leaking information, placed him on administrative leave, subjected him to an intimidating investigation using police and outside investigators, and then moved to terminate him, resulting in constructive discharge. *Id.* at pg. 3-6. Complaint plausibly alleges the municipal practices of suppressing evidence and retaliating against whistleblowers directly caused the First Amendment and due-process injuries.

Defendants argue that the Plaintiff's Complaint describes only a single incident involving one employee. It is well settled law though that a *Monell* claim may rest on a single decision by a final policymaker, and the movant is not required at the pleading stage to identify a catalogue of prior identical incidents before discovery. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529 (4th Cir. 2022); *Hunter v. Town of Mocksville*, 897 F.3d 538 (4th Cir. 2018). Here, Plaintiff pleads both a single coordinated course of action by senior leadership and final policymakers, conduct constituting a broader municipal custom tolerating retaliation against whistleblowers and protecting politically connected officials. *Id*. at pg. 6-9.

Plaintiff's Complaint specifically alleges the Town's customs included "failing to train, supervise, or discipline employees regarding whistleblower protections and constitutional rights." *Id.* at 8. A "failure-to-train" theory ultimately requires proof of deliberate indifference, and the liberal pleading requirements under Fed. R. Civ. P. Rule 12(b)(6) does not require the Plaintiff to plead the Town's internal training manuals or disciplinary histories before discovery. Such information likely in any case would only become available during the discovery. Litigants similarly situated to Plaintiff Jeffery Noble would be forever barred from bringing these claims if every litigant was required to plead internal training manuals or disciplinary histories when bringing their initial actions.

Further, Considering the holdings in *City of Canton v. Harris*, 489 U.S. 378 (1989) and *Connick v. Thompson*, 563 U.S. 51 (2011), deliberate indifference may be inferred where the need for training is obvious in light of the constitutional risk. The Complaint states Town leadership and local law enforcement resources were deployed against Plaintiff for reporting municipal misconduct rather than toward neutral investigation of the reported wrongdoing. *Id.* at pg. 6. Plaintiff's Complaint pleads underlying constitutional violations for First Amendment retaliation and Fourteenth Amendment stigma-plus due process. *Id.* at pg. 6-9. The *Monell* claim then links those violations to Town policies, customs, and ratification. *Id.* If the Court concludes those underlying constitutional claims are plausibly pleaded—and the Complaint plainly alleges they are—the municipal-liability claim should not be dismissed simply because Defendants dispute the Town's role. That dispute is factually based, and appropriate for remedy after discovery occurs. The factual allegations are more than sufficient to state a plausible *Monell* claim. The motion to dismiss Count Three should be denied.

**VII. The Civil Conspiracy Claim Is Sufficiently Pleaded.**

In order to plead a §1983 conspiracy claim, the movant must show Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy" that ultimately resulted in constitutional harm. *Hinkle v. City of Clarksburg*, 81 F.3d 416 (4th Cir. 1996). The Complaint properly pleads an agreement or understanding among Defendants to retaliate against Plaintiff for protected activity, suppress evidence of official misconduct, shift scrutiny to Plaintiff, accuse him of leaking information, use police and investigative authority to intimidate him, and force him from employment. Overt acts in furtherance of that conspiracy were plead. Those allegations are sufficient at this stage. Defendants' likely reliance on the intra-corporate conspiracy doctrine is premature, particularly where the Complaint alleges involvement of police personnel and outside investigators in addition to Town officials, and alleges conduct undertaken for retaliatory and improper purposes rather than legitimate municipal interests.

**VIII. Plaintiff's Wrongful-Discharge Claim Should Not Be Dismissed at the Pleading Stage.**

A wrongful discharge claim in violation of public policy requires that the employee was discharged for a reason that contravenes a well-established North Carolina public policy. *Coman v. Thomas Mfg. Co.*, 325 N.C. 172 (1989) recognizes the claim where an employee is terminated for refusing conduct contrary to public policy, and *Amos v. Oakdale Knitting Co.*, 331 N.C. 348 (1992) confirms that the public-policy exception protects employees discharged for reasons offending the public policy of North Carolina. The Complaint pleads that theory by alleging: (1) an employment relationship with the Town; (2) discharge or, alternatively, constructive discharge; (3) protected conduct tied to identified North Carolina public policies; and (4) causation between that protected conduct and the separation from employment. *Noble* pg. 10-12. The Complaint states that the Plaintiff "was employed by the Town of Mooresville in its Innovation and Technology

Department," and later states Defendants "terminated Plaintiff's employment, or in the alternative, subjected Plaintiff to working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign, constituting a constructive discharge." *Id.* pg. 2, and 11. The Plaintiff's Complaint pleads conduct by Plaintiff that ties to recognized North Carolina public policy. The Complaint alleges that the Plaintiff discovered and internally reported conduct he believed reflected "misuse of municipal property, security breaches, ethical violations, and matters of significant public concern," and further alleges his reports were made "pursuant to his job responsibilities and consistent with Town whistleblower and ethics policies." *Id*. pg. 4. The Complaint pleads that North Carolina public policy prohibits discharge for "reporting governmental misconduct" or "refusing to suppress, conceal, or misrepresent evidence relating to public wrongdoing," and that Plaintiff acted in furtherance of that policy "by internally reporting governmental misconduct and by refusing to participate in or acquiesce to the suppression, concealment, or misrepresentation of evidence." *Id*. pg. 11-12.

The Complaint identifies the specific sources of North Carolina public policy that the discharge allegedly violated. The policy is expressed in the North Carolina Constitution, North Carolina General Statutes, and controlling judicial decisions. The Complaint specifically identifies the North Carolina Whistleblower Act, the North Carolina Public Records Act, and Article I, Sections 14 and 18 of the North Carolina Constitution as embodying the relevant policy of governmental integrity, transparency, preservation of evidence, and protection against retaliation for reporting misconduct. *Id*. pg. 11-12.

The Complaint pleads causation as it alleges Defendants accused Plaintiff without evidence of leaking information, placed him on administrative leave, subjected him to escalating restrictions

and intimidation, and ultimately informed him that termination was being recommended after he had internally reported the Mayor's conduct. *Id*. pg. 5-6. In the wrongful-discharge count itself, the Complaint expressly alleges that Defendants discharged Plaintiff, or forced his constructive discharge, "because of Plaintiff's protected conduct and refusal to violate public policy," and that Plaintiff's protected conduct "was a substantial and motivating factor in Defendants' decision to terminate his employment." *Id*. pg. 12.

As framed through the cases of *Coman v. Thomas Mfg. Co*., 325 N.C. 172 (1989) and *Amos v. Oakdale Knitting Co*., 331 N.C. 348 (1992), the Noble Complaint pleads a wrongful discharge in violation of public policy by alleging that Plaintiff was a Town employee, that he was discharged or constructively discharged, that he engaged in conduct protected by clearly identified North Carolina public policies favoring disclosure of governmental misconduct and preservation/transparency of public records, and that Defendants separated him from employment because of that conduct. *Id*. at pg. 11-12.

The present Complaint does not warrant dismissal under Fed. R. Civ. P. Rules 12(b)(1) or 12(b)(2). Defendants' memorandum reflects the existence of municipal insurance for the relevant period, including liability coverages. Defendants point to a non-waiver endorsement, the scope and effect of that endorsement as applied to the specific state-law claim and requested relief is not properly resolved at the pleading stage. Defendants rely on extrinsic materials and Plaintiff has not yet had discovery regarding coverage, endorsements, and the Town's handling of the claim. See, e.g., *Parker v. Town of Erwin*, 243 N.C. App. 84, 776 S.E.2d 710 (2015).

A motion made under Fed. R. Civ. P. Rule 12(b)(1) may present either a facial challenge or a factual challenge to subject-matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982);

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009). Where the challenge is facial, the Court shall accept the Complaint's jurisdictional allegations as true and determine only whether those allegations are sufficient to invoke federal jurisdiction. Kerns, 585 F.3d 187, 192 (4th Cir. 2009). Where the challenge is factual, the Court may consider evidence outside the pleadings, but dismissal remains inappropriate where jurisdictional facts are disputed or intertwined with the merits. *Adams* at 1219 (4th Cir. 1982); and *Kerns* at 193 (4th Cir. 2009). The Complaint invokes federal subject-matter jurisdiction, asserting constitutional claims under 42 U.S.C. § 1983, First Amendment retaliation, Fourteenth Amendment due-process/stigma-plus, *Monell* liability, conspiracy claims, alongside North Carolina claims. The Complaint alleges the Court has federal-question jurisdiction over those federal claims and supplemental jurisdiction over the related state-law claims. Those allegations are sufficient.

Defendants attempt a factual Fed. R. Civ. P. Rule 12(b)(1) challenge by recasting immunity or merits issues as jurisdictional defect. The Fourth Circuit has made clear where jurisdictional facts overlap with the merits, the Court should not resolve those disputes against the plaintiff on a pre-answer motion. *Kerns* a*t* 193 (4th Cir. 2009). Defendants' arguments concerning immunity, waiver, nature of Plaintiff's separation, causation, policymaker status, and existence of constitutional violations turn on factual issues that overlap with the merits of Plaintiff's claims.

Further, when the Court decides a Fed. R. Civ. P. Rule 12(b)(2) motion without an evidentiary hearing and on the basis of the complaint, affidavits, and motion papers, the plaintiff need only make a prima facie showing of personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The Court must

construe the allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences in the Plaintiff's favor. *Combs* at 676 (4th Cir. 1989). At the pleading stage, the allegations made in the Complaint are more than sufficient to make at least a prima facie showing of personal jurisdiction in this Court.

**IX. Qualified Immunity Does Not Support Dismissal.**

Qualified immunity does not justify dismissal where the Complaint plausibly alleges violation of clearly established rights. Long before the events alleged here, it was clearly established that public employers may not retaliate against employees for citizen speech on matters of public concern, and may not impose stigmatizing charges in connection with separation from employment without constitutionally adequate process. See *Lane v. Franks*, 573 U.S. 228, 240 (2014).  Defendants' immunity argument depends on factual premises the Court cannot accept on a motion to dismiss: that Plaintiff was speaking only as an employee, that no meaningful publication occurred, that the investigation was wholly independent, and that Plaintiff voluntarily resigned. Because those are disputed merits questions, qualified immunity cannot be resolved in Defendants' favor at this stage.

**X. Declaratory and Injunctive Relief Remain Viable.**

The Complaint alleges an actual controversy concerning the legality of Defendants' acts, policies, customs, and practices, and alleges ongoing reputational harm and impairment of future employment prospects. It seeks prospective relief, including a meaningful name-clearing hearing and correction or annotation of personnel records. Those requests are not moot on the face of the pleadings and remain viable.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. In the alternative, if the Court determines that any aspect of the Complaint requires more particularity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

Respectfully submitted, this 27TH day of March, 2026.

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

**CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE**

The undersigned submits that the foregoing Plaintiff's Memorandum of Law in Further Opposition to Defendant's Motion to Dismiss, was not:

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 27TH day of March, 2026

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

**CERTIFICATE OF SERVICE**

       This is to certify that the undersigned has this day electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

/s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Kayla N. McDaniel, NC Bar #57995 *Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
mcdaniel@cshlaw.com

This the 27TH day of March, 2026

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com