| | | |
|---|---|---|
| JEFFREY NOBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF DEFENDANTS' MOTION TO** |
| TOWN OF MOORESVILLE, NORTH | ) | **DISMISS PLAINTIFF'S AMENDED** |
| CAROLINA; CHRISTOPHER QUINN, In | ) | **COMPLAINT** |
| his Individual Capacity, TRACEY | ) | **Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6)** |
| JEROME, In her Individual Capacity; | ) | |
| CHRIS CARNEY, In his Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**NOW COME** Defendants Town of Mooresville, Christopher Quinn, Tracey Jerome, and Chris Carney, (collectively "Defendants"), by and through undersigned counsel, and pursuant to Local Rule 7.1, Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), and file this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## STATEMENT OF THE CASE

Plaintiff filed an Amended Complaint on April 2, 2026, and brings claims against Defendants under 42 U.S.C. § 1983 for (1) First Amendment Retaliation; (2) Fourteenth Amendment Due Process; (3) a *Monell* claim; (4) Civil Conspiracy to Violate Civil Rights; (5) and Declaratory and Injunctive relief. *See generally*, (DE 10). Defendants now timely move to dismiss Plaintiff's Amended Complaint, in its entirety.

## STATEMENT OF RELEVANT FACTS

Plaintiff alleges he was employed by the Town in its Innovation and Technology Department where his responsibilities included administration and support of access-control and surveillance systems. (DE 10, ¶¶ 21-23). He contends that on or about October 7, 2024, while performing assigned duties related to an internal IT ticket, he reviewed access logs and surveillance footage reflecting after-hours entry into Town Hall by Mayor Carney accompanied by an adult woman. *Id.* ¶¶ 26-32. Plaintiff alleges he reported the incident internally through supervisory channels beginning on or about October 15, 2024, and he believed the incident implicated security concerns and matters of public importance. *Id.* ¶¶ 43-46.

Plaintiff further alleges that after his report, Town officials restricted access to the footage, that he was accused of leaking confidential information, he was placed on administrative leave, and he was subjected to an internal investigation, including an interview conducted on June 17, 2025. *Id.* ¶¶ 64–76. He contends that, "upon information and belief" the accusation he leaked confidential information was incorporated into employment-related investigative or personnel records and communicated to others within Town government. *Id.* ¶¶ 79–80. On July 3, 2025, he alleges he was informed that termination of his employment was being recommended, though he pleads he was not formally terminated and instead characterizes his separation as a constructive discharge. *Id.* ¶¶ 81–87.

Plaintiff further alleges that in or around November 2024, a media outlet submitted a public-records request for the surveillance footage and related records, and that the Town became involved in separate state-court litigation concerning disclosure of those materials. *Id.* ¶¶ 51–57. According to Plaintiff, the Town's litigation positions and internal handling of the footage reflected an effort to limit disclosure rather than investigate the underlying conduct. *Id.* ¶¶ 55–61.

**<u>STANDARD OF REVIEW</u>**

2

4921-6835-5746, v. 2

Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 479-80 (4th Cir. 2005). Generally, a motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448,452 (4th Cir. 2012). In ruling on a motion made under Rule 12(b)(1), the Court may "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted).

A motion made pursuant to Rule 12(b)(2) challenges a Complaint for lack of personal jurisdiction. Under Rule 12(b)(2), the Plaintiff must prove by a preponderance of the evidence that the Court can exercise personal jurisdiction. *See, e.g., Grayson v. Anderson,* 816 F.3d 262, 267 (4th Cir. 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Further, a claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

The Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v.*

4921-6835-5746, v. 2

*U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

## <u>ARGUMENT</u>

**I.     Plaintiff's Individual Capacity Claims Against Mayor Carney Should Be Dismissed Because Plaintiff Fails to Meet the Pleading Requirements of Rule 8.**

A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Merely offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor are "naked assertions devoid of further factual enhancement" sufficient. *Id.*

Despite amending the Complaint, Plaintiff still fails to plead facts sufficient to state any claim against Mayor Carney in his individual capacity as required by Rule 8 and the plausibility standards of *Iqbal* and *Twombly*. The Amended Complaint does not allege a single concrete act by Mayor Carney establishing personal involvement in any employment decision affecting Plaintiff. Plaintiff does not allege Mayor Carney placed him on administrative leave, initiated, directed or participated in the administrative investigation, made or approved accusations against Plaintiff, or exercised decision-making authority over discipline, termination, or constructive discharge. Instead, Plaintiff relies on vague, conclusory assertions, pled "upon information and belief", that

4921-6835-5746, v. 2

Mayor Carney's "personal interest" in suppressing or avoiding "scrutiny" may have "influenced", "encouraged", or "benefitted from" alleged retaliatory actions taken by others. (DE 10, ¶¶ 18, 70, 109). Rule 8 requires factual allegations showing personal participation, not speculation about motive or indirect benefit.

Allegations pled on information and belief may satisfy Rule 8 where the relevant facts are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Capital LLC*, 615 F. Supp. 3d 379, 384–85 (M.D.N.C. 2022) (noting that a litigant cannot merely "plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.") (citations omitted). Courts consistently reject the use of "information and belief" pleading to substitute for factual content or to salvage claims resting on speculation and conclusory assertions. *See Exela Pharma Scis., LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1007 n.2 (W.D.N.C. 2020) (noting that conclusory allegations based "upon information and belief" are no substitute for plausible factual allegations that wrongdoing has occurred.); *see Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009) (stating that allegations that included the phrase "upon information and belief" were insufficient to defeat a motion to dismiss because the allegations at issue were "conclusory"). The inquiry turns on the factual substance of the allegation itself; not the prefatory use of the phrase. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Here, Plaintiff's "information and belief" allegations as to Mayor Carney contain no supporting factual details whatsoever. The Amended Complaint identifies no communications by Mayor Carney, no directive he issued, no meeting he attended, and no employment decision he influenced. At most, Plaintiff alleges Mayor Carney could have benefitted from employment actions taken by others because he was the subject of Plaintiff's report. That type of attenuated,

4921-6835-5746, v. 2

speculative inference is precisely what Rule 8 does not permit and cannot be transformed into a plausible claim merely by prefacing it with "information and belief".

Moreover, the Amended Complaint does not allege that Mayor Carney possessed legal authority to make employment decisions regarding Town employees. North Carolina law vests employment authority in the Town Manager, not the Mayor. *See* N.C.G.S. § 160A-67 (defining the Mayor's powers and specifying that, except as otherwise provided by law, the government and general management of the town is vested in the council); *see also* N.C.G.S. § 160A-148 (vesting employment authority over town employees with the Town manager); *Branch v. Guida*, No. 3:09CV417, 2011 WL 1770074, at *4 (W.D.N.C. May 9, 2011) ("North Carolina law requires the town manager to make the ultimate decision on employment decisions."). Plaintiff's theory thus improperly seeks to impose individual liability based not on actual conduct, but on the Mayor's status and his role as the subject of Plaintiff's report. Rule 8 does not permit claims to proceed on such attenuated and conjectural allegations.

## II. Plaintiff Fails to State a First Amendment Retaliation Claim.

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee must plausibly allege that:

(1) they spoke as a citizen about a public concern and not a personal interest;

(2) they had an interest in speaking out that outweighed the government's interest in providing public services; and

(3) their speech was a substantial factor in the adverse employment action.

*Penley v. McDowell Cnty. Bd. of Educ.,* 876 F.3d 646, 654 (4th Cir. 2017) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)).

Plaintiff's First Amendment claim fails at the pleading stage because he has not plausibly alleged either (a) a qualifying adverse employment action under governing Fourth Circuit

4921-6835-5746, v. 2

precedent, or (b) that any challenged action was taken because of, much less but for, his alleged protected speech.

### A. Plaintiff's Amended Complaint Fails to Allege a Qualifying Adverse Employment Action.

A municipal employer engages in unconstitutional retaliation under the First Amendment when "it discharges or 'refuses to rehire [the] employee,' or when it makes decisions relating to "promotion, transfer, recall, and hiring based on the exercise of" that employee's free speech rights." *Ridpath v. Bd. of Governors Marshall Univ*. 447 F.3d 292, 316 (4th Cir. 2006) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

Here, Plaintiff's allegations center on accusations of a "leak," administrative leave, an investigation, and a recommendation toward termination. (DE 10, ¶¶ 65, 67, 72, 76, 78, 81-82). These interim and investigatory measures, without a consummated termination or comparable change in employment status, do not constitute adverse employment actions as a matter of law. Courts in this Circuit have repeatedly held that neither placement on administrative leave nor employer investigations constitute an actionable adverse employment action. *See Lacasse v. Didlake, Inc.*, 712 Fed. Appx. 231, 239 (4th Cir. 2018); *Sturdivant v. Geren*, No. CIV.A. 1:09-CV-586, 2009 WL 4030738, at *6 (E.D. Va. Nov. 19, 2009), *aff'd sub nom. Sturdivant v. McHugh*, 450 Fed. Appx. 235 (4th Cir. 2010) (unpublished) (collecting cases and finding "no reasonable employee would have been dissuaded from making or supporting a charge of discrimination if he was put on paid administrative leave").[1]

---

[1] These authorities apply the Title VII standard for adverse employment actions. Defendants contend the adverse employment standard in Title VII claims should apply in this context as Plaintiff was not deprived of any employment opportunity and an investigation coupled with administrative leave pending an investigation is commonplace.

4921-6835-5746, v. 2

Plaintiff attempts to recharacterize these routine measures as "escalating restrictions, isolation, and intimidation," But offers no factual detail beyond the inherent consequences of administrative leave itself. (DE 10, ¶ 67). If the ordinary incidents of administrative leave were sufficient to establish constitutional retaliation, public employers would be functionally barred from investigating alleged misconduct pending resolution.

Plaintiff further relies on a recommendation of termination and generalized "progression toward termination," but he does not allege a final termination decision by his employer. (DE 10, ¶¶ 81, 85). Plaintiff alleges that on or about July 3, 2025, Defendant Quinn informed him that "termination of his employment was being recommended," and that "the decision to remove him had effectively already been made" (DE 10, ¶¶ 81), yet he pleads his separation as constructive rather than an actual termination and pleads "in the alternative" that he was not formally terminated. (DE 10, ¶¶ 86-87). A recommendation, without a consummated adverse action, is not a materially adverse employment action, and alleged movement toward termination that does not culminate in termination is insufficient under controlling Fourth Circuit principles. *See Ridpath*, 447 F.3d at 316; *Suarez*, 202 F.3d at 686.

Finally, Plaintiff's allegations related to administrative leave, investigation, and a termination recommendation are not adverse actions as they reflect interim, non-dispositive employment steps that do not themselves alter the terms and conditions of employment in a materially adverse way and thus cannot sustain the adverse-action element under Fourth Circuit law. *See Lacasse*, 712 Fed. Appx. at 239.

### B. Plaintiff Fails to Plausibly Allege Causation Under the Rigorous Standards Applicable to First Amendment Claims.

Even if Plaintiff had plausibly alleged a qualifying adverse employment action, his claim independently fails because he has not pled facts establishing causation. The Fourth Circuit applies

4921-6835-5746, v. 2

a rigorous causation standard: protected speech must be the but-for cause of the challenged action – not merely a motivating factor among others. *Ridpath*, 447 F.3d at 318 (citing *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990)); *Porter v. Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 584 (4th Cir. 2023).

Here, Plaintiff pleads causation only in conclusory terms, asserting that Defendants retaliated against him "because of" his speech. (DE 10, ¶ 103). But the Amended Complaint's own allegations undermine any plausible inference of but-for causation. Plaintiff expressly alleges that the administrative investigation and his placement on leave were initiated in response to accusations that he leaked confidential information—conduct distinct from the alleged protected speech itself. (DE 10, ¶¶ 65-67, 72-73, 76).

Where an employer undertakes administrative action based on intervening concerns about employee conduct, even if the employee disputes those concerns, a retaliation claim cannot rest on speculation that the real motive was protected speech. *See Huang*, 902 F.2d at 1140 (rejecting causation where allegations showed other legitimate, non-speech-based reasons for employer action). This case therefore stands in stark contrast to *Ridpath*, where the plaintiff alleged direct evidence that his termination was imposed *because of* his speech. *Ridpath*, 447 F.3d at 318–19. Plaintiff here alleges no direct or circumstantial facts plausibly linking any Defendant's actions to retaliatory animus or showing that his speech was the determinative cause of the challenged conduct.

Plaintiff asserts he reported concerns internally beginning on or about October 15, 2024, and thereafter alleges a series of events: restricted access to footage, a "false leak" narrative, administrative leave, an outside investigative interview on June 17, 2025, and a July 3, 2025 communication that termination was being recommended. (DE 10, ¶¶ 65-66, 72, 76, 81). That

4921-6835-5746, v. 2

temporal sequence, standing alone, cannot satisfy the Fourth Circuit's demanding causation standard; particularly where Plaintiff himself alleges intervening investigative processes and multiple decisionmakers. *See Ridpath*, 447 F.3d at 318; Porter, 72 F.4th at 584.

Finally, Plaintiff asserts that Defendants "shifted focus" to him, "falsely accused" him of leaking information, and "progressed toward termination" (DE 10, ¶¶ 65–67, 71–73, 81–83), but he does not plead facts showing that any final adverse employment decision was made because of his speech rather than because of the stated (even if disputed) leak-related concerns or other non-retaliatory reasons explored during the investigation. That is insufficient under the rigorous causation requirement. *See Ridpath*, 447 F.3d at 318; *Porter*, 72 F.4th at 584.

## III.    Plaintiff's Fourteenth Amendment Stigma-Plus Claim Still Fails.

To establish a protected liberty interest and proceed on his Fourteenth Amendment claim, Plaintiff must plead facts sufficient to show the charges against him "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). A protected liberty interest exists only if the plaintiff pleads facts satisfying all four elements of the *Sciolino* test; absent such a showing, no right to a name-clearing hearing arises under the Due Process Clause. *Harrell v. City of Gastonia*, 392 F. App'x 197, 203 (4th Cir. 2010). "Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." *Board of Regents v. Roth*, 408 U.S. 564, 573 n. 12 (1972).

The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions". *Sciolino,* 480 F.3d at 649 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Rather, "due process requires simply the opportunity to be heard 'at a

4921-6835-5746, v. 2

meaningful time and in a meaningful manner.'" *Harrell*, 392 F. App'x at 203 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

In the Amended Complaint, Plaintiff continues to rely on accusations allegedly made during an internal administrative interview and related investigative proceedings. (DE 10, ¶¶ 72-76, 79-80, 118-119). Such allegations, even if accepted as true, do not establish public dissemination as a matter of law. The Fourth Circuit has made clear that "that a *purely private* communication of the reasons for an employee's termination" cannot support a stigma-plus claim because they do not implicate a protected liberty interest. *Sciolino*, 480 F.3d at 647; *Bishop*, 426 U.S. at 348. This is because a private communication, even a false one, has no different impact on a person's reputation than if it was true, because it never reaches the public. *Bishop*, 426 U.S. at 341.

Plaintiff attempts to avoid this rule by alleging that Defendants "allowed" or "created" stigmatizing accusations that could affect future employment prospects. (DE 10, ¶¶ 118-119). But speculative allegations regarding possible future disclosure do not satisfy the publication element required to establish a protected liberty interest under *Sciolino*. 480 F.3d at 646–47. Plaintiff does not allege that any Defendant publicly disclosed accusations against him to prospective employers, the media, or the general public.

This theory is legally implausible. Under North Carolina law, only limited categories of basic employment information maintained by a municipality constitute public records. *See* N.C. Gen. Stat. § 160A-168(b). Those categories are confined to information such as an employee's name, age, salary, date and type of employment action, and, in limited circumstances, the fact of a dismissal. *Id.* All other personnel information – including internal investigative materials, interview summaries, and disciplinary evaluations – is confidential and expressly excluded from public inspection. N.C. Gen. Stat. § 160A-168(c). North Carolina courts have consistently held

4921-6835-5746, v. 2

that internal investigation files and reports maintained in or associated with a public employee's personnel file are not public records and are shielded from disclosure. *See Release of Silk Plant Forest Citizen Review Comm.'s Report & Appendices v. Barker*, 216 N.C. App. 268, 272 (2011) (noting that the natural meaning of the language of the statute indicates "a clear intent to maintain the privacy of a city employee's personnel file except under limited circumstances where examination of only the relevant portion of the file is allowed."). Accordingly, Plaintiff's conclusory allegation that internal investigative accusations are "reasonably likely" to be disclosed (DE 10, ¶ 118), does not establish public dissemination and cannot support a stigma-plus due process claim.

Plaintiff also fails to plead the required nexus to termination or demotion. The Amended Complaint repeatedly characterizes Plaintiff's separation as not voluntary or as a constructive discharge (DE 10, ¶¶ 81-87). The Amended Complaint goes to great lengths to avoid explicitly acknowledging that Plaintiff resigned; however, the facts, even if taken as true, make clear that Plaintiff was not terminated by the Town. (DE 10, ¶¶ 82-85, 87, 121). Under Fourth Circuit precedent, a plaintiff's voluntary resignation may defeat a liberty-interest claim where the resignation is found to be voluntary, a determination that turns on whether the employer had good cause to believe grounds for termination existed. *Harrell*, 392 F. App'x at 20 (citation omitted).

**IV.      Individual Defendants Are Entitled to Qualified Immunity As to Plaintiff's First and Fourteenth Amendment Claims.**

Even if Plaintiff had adequately alleged a violation of his constitutional rights, which he has not, the individual Defendants are still entitled to qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Officials sued in

4921-6835-5746, v. 2

their individual capacities are entitled to qualified immunity unless (1) the complaint sufficiently alleges a violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). The right at issue must be defined with specificity, not at a high level of generality. *City of Escondido, Cal v. Emmons,* ---U.S.----, 139 S.Ct. 500, 503, 202 L.Ed.2d 455 (2019).

Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In the First Amendment retaliation context, Defendants are unaware of any Fourth Circuit case where our courts have ruled that a public employee has a constitutional right to be free from paid administrative leave, internal investigation, or progression toward separation following internal reporting of concerns discovered through the course of employment.

Nor has any clearly established law recognized a constitutional right to refuse participation in a workplace investigation or to be insulated from adverse employment measures while such an investigation is pending, particularly where the employee's speech concerns matters encountered through job duties and is reported internally.

Plaintiff's Fourteenth Amendment claim fails for similar reasons. Defendants are unaware of any controlling precedent that provides a public employee with a clearly defined constitutional right to a name-clearing hearing where alleged stigmatizing accusations arise during internal investigative proceedings, are not publicly disseminated, and the plaintiff alleges constructive

4921-6835-5746, v. 2

discharge or forced separation rather than formal termination. Fourth Circuit precedent makes clear that private or internal accusations—even if false—do not give rise to a protected liberty interest absent public dissemination, and that due process is not triggered by internal personnel investigations or disputed employment decisions. *See, e.g., Sciolino*, 480 F.3d at 646–47; *Harrell*, 392 F. App'x at 203.

**V.      Plaintiff Fails to State a Cognizable *Monell* Claim Against the Town of Mooresville.**

Plaintiff's claim for Municipal Liability under 42 U.S.C. § 1983 fails as a matter of law and should be dismissed. A municipality may not be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, municipal liability attaches only where a plaintiff plausibly alleges that an official municipal policy or custom was the "moving force" behind a constitutional violation. *Id.*; *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

To survive dismissal, Plaintiff must plead facts plausibly establishing: (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the Town; and (3) that the policy or custom proximately caused the alleged constitutional injury. *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The Amended Complaint does not meet these requirements.

**A.  Plaintiff Does Not Allege an Express Municipal Policy.**

A municipal policy may arise: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority;" or "(3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens[.]" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). Alternatively, a municipal custom arises if a practice is so "persistent and

4921-6835-5746, v. 2

widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force

of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. The policies or customs must be the "moving

force" behind the constitutional violation. *Id.*, 436 U.S. at 694, 98 S.Ct. at 2037-38.

As in the original Complaint, Plaintiff does not allege that any constitutional injury arose

pursuant to an express municipal policy, ordinance, regulation, or written directive. The Amended

Complaint again relies on broad and abstract references to "policies, customs, and practices,"

without identifying any formally adopted Town policy governing whistleblower retaliation,

evidence suppression, or investigative procedures. (DE 10, ¶¶ 88–95, 130–141). Such generalized

references are insufficient. Allegations that merely characterize conduct as a municipal "policy"

or "practice," without facts identifying an officially adopted policy or a decision attributable to a

final policymaker, do not establish the existence of an express policy for purposes of *Monell*. See

*Lytle*, 326 F.3d at 471. Accordingly, Plaintiff cannot proceed under an express-policy theory.

**B.  Plaintiff Fails to Plausibly Allege a Widespread and Persistent Municipal Custom.**

Plaintiff next attempts to plead municipal liability based on an alleged "custom" of

suppressing evidence, protecting politically connected officials, and retaliating against employees

who report misconduct. (DE 10, ¶¶ 88–95, 131–133). These allegations, however, consist almost

entirely of conclusory characterizations and speculation, and are not supported by well-pled factual

content sufficient to establish municipal custom under *Monell*.

To establish a municipal custom, Plaintiff must allege a practice that is "persistent and

widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force

of law." *Monell*, 436 U.S. at 691. Isolated incidents, or misconduct arising from a single internal

employment dispute, are categorically insufficient. *Lytle*, 326 F.3d at 474; *Carter*, 164 F.3d at 220.

"[P]roof of a single incident of the unconstitutional activity charged is not sufficient to prove the

4921-6835-5746, v. 2

existence of a municipal custom." *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999) (citation omitted); *see also Howard v. City of Durham*, 68 F.4th 934, 954 (4th Cir. 2023) ("[b]ut fatally to his claim, Howard offers evidence of only a single incident of unconstitutional activity: the incident in this very case. And 'proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom'") (citing *Semple*, 195 F.3d at 713–14).

In addition, *Monell* requires Plaintiff to allege facts sufficient to show (1) the Town had "'actual or constructive knowledge' of the custom and usage by its responsible policymakers,' and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 210 (4th Cir. 2002) (quoting *Spell,* 824 F.2d at 1391).

Here, notwithstanding the Amended Complaint's expanded rhetoric, Plaintiff's factual narrative remains centered on a single sequence of events arising from one October 2024 Town Hall incident and the employment actions taken against him thereafter. Plaintiff attempts to transform that discrete dispute into a "municipal pattern" by invoking unnamed "other Town employees", unspecified "related allegations," and generalized claims of similar retaliation without identifying specific comparators, dates, decisionmakers, investigations, or adjudicated outcomes.[2] (DE 10, ¶¶ 7–9, 62–63, 94, 132–133). Such allegations do not plausibly establish a widespread or persistent practice; they merely restate the elements of a *Monell* claim in narrative form.

---

[2] As noted above, Plaintiff continues to impermissibly rely on factual allegations conditioned "on information and belief" (DE 10, ¶¶ 62–63, 133) in an ineffective attempt to satisfy the pleadings standard. *See Mystic Retreat*, 615 F. Supp. 3d at 384–85; *Exela*, 486 F. Supp. 3d at 1007 n.2; *Harman*, 356 F. App'x at 640.

4921-6835-5746, v. 2

Critically, Plaintiff also fails to allege facts showing that the Town's policymakers had actual or constructive knowledge of any purported custom extending beyond Plaintiff's own circumstances. The Amended Complaint does not identify prior incidents sufficient to place policymakers on notice of recurring constitutional violations, nor does it allege when, how, or through what channels such knowledge was allegedly obtained. Absent well-pled facts demonstrating notice of a pattern of similar misconduct, Plaintiff cannot satisfy the knowledge requirement essential to custom liability. *See Carter*, 164 F.3d at 220 ("[M]ere proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").

Nor does Plaintiff plead facts supporting deliberate indifference. The Amended Complaint does not allege that Town policymakers consciously disregarded a known, ongoing practice of constitutional violations, or that they made a deliberate choice not to act in the face of repeated misconduct. At most, Plaintiff alleges disagreement with how Town officials handled his own report—which is legally insufficient to transform case-specific decisions into evidence of an entrenched municipal custom. *See Randall*, 302 F.3d at 210.

Plaintiff's reliance on public reporting, pending litigation, and disputes concerning records disclosure does not cure these defects. Allegations regarding media coverage, public-records litigation, or the Town's asserted litigation positions, even if controversial, do not plausibly establish a widespread and persistent municipal custom, nor do they demonstrate policymaker knowledge or deliberate indifference to ongoing constitutional violations. Disagreement over document preservation, disclosure strategy, or public-relations consequences does not convert a single, internally focused employment dispute into a constitutionally actionable municipal practice.

### C. Plaintiff Does Not Plausibly Allege Policymaker Liability or Ratification.

4921-6835-5746, v. 2

As a threshold matter, Plaintiff fails to plausibly allege that Defendant Jerome possessed final policymaking authority under North Carolina law with respect to the personnel actions at issue—a question determined by state law, not by Plaintiff's characterization of her role. *See Riddick v. Sch. Bd.*, 238 F.3d 518, 523 (4th Cir. 2000); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Plaintiff further attempts to rely on a final-policymaker or ratification theory, primarily focusing on Town Manager Jerome. (DE 10, ¶¶ 91, 134–137). Plaintiff offers only conclusions rather than facts. For a decision to constitute municipal policy, the official must possess final policymaking authority with respect to the challenged action and must have made a deliberate choice among alternatives such that the decision itself may fairly be said to represent official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986); *Lorbacher v. Housing Auth.*, 127 N.C. App. 663, 670 (1997); *see also Lambert v. Town of Sylva*, 259 N.C. App. 294, 304, 816 S.E.2d 187 (2018) (municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered).

The Amended Complaint does not identify a specific policymaking decision by Defendant Jerome that constitutes municipal policy. Instead, Plaintiff generally alleges that Defendant Jerome "approved," "condoned," or "failed to stop" alleged retaliation after learning of Plaintiff's report. (DE 10, ¶¶ 91, 137). Allegations that a senior official knew of events and failed to intervene are insufficient as a matter of law to establish municipal liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) ("A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability.")

Nor does Plaintiff adequately plead ratification. Ratification requires facts showing that a final policymaker affirmatively approved the specific unconstitutional basis for the subordinate's action. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 99 L. Ed. 2d 107 (1988). Alternatively,

4921-6835-5746, v. 2

it requires the Plaintiff to plead that the municipalities' own decision to uphold the act of a subordinate ratified the unconstitutional behavior. *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022). This type of ratification must be the "moving force" behind the injury. *Id.*, 28 F.4th at 535. Post hoc approvals or failure to discipline do not constitute ratification. *Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023) ("the City Manager's post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation"); *Fox v. City of Greenville*, No. 4:23-CV-00133-M, 2024 WL 3093583, at *7 (E.D.N.C. June 21, 2024) ("[f]ailing to punish a completed (alleged) constitutional violation does not give rise to municipal liability under a ratification theory for the related reason that 'post-facto approval ... cannot possibly have caused the constitutional violation.'"); *Mitchell v. City of Charlotte*, No. 323CV00006RJCSCR, 2024 WL 1509675, at *11 (W.D.N.C. Mar. 1, 2024), *report and recommendation adopted*, No. 323CV00006RJCSCR, 2024 WL 1342612 (W.D.N.C. Mar. 29, 2024) ("Plaintiff cannot demonstrate a causal link between post-facto actions which could not have caused the alleged constitutional violations that occurred on May 30, 2020.").

Taken together, Plaintiff's allegations fail to plausibly establish municipal liability under either a final-policymaker or ratification theory. Plaintiff does not allege facts showing that Defendant Jerome made a specific, deliberate policy decision directing the alleged constitutional violations, nor that she exercised final policymaking authority to choose among lawful alternatives such that her conduct itself may fairly be said to represent official municipal policy. *Pembaur*, 475 U.S. at 483–84; *Lytle*, 326 F.3d at 471. At most, Plaintiff alleges that Jerome was aware of subordinate actions and did not intervene or later acquiesced in decisions already taken; allegations that are insufficient as a matter of law to establish municipal policy or ratification. *Wellington*, 717 F.2d at 936; *Praprotnik*, 485 U.S. at 127.

4921-6835-5746, v. 2

Nor does Plaintiff plausibly allege that any purported ratification by Defendant Jerome was the "moving force" behind the alleged constitutional injury. *Starbuck*, 28 F.4th at 535. Alleged post hoc approvals, failure to discipline, or defensive litigation positions taken after the challenged conduct cannot supply the required causal link, because actions occurring after an alleged violation "cannot possibly have caused" it. *Franklin*, 64 F.4th at 537; *Fox*, 2024 WL 3093583, at *7; *Mitchell*, 2024 WL 1509675, at *11. Absent factual allegations tying a final policymaker's affirmative decision or ratification to the timing and commission of the alleged constitutional violation, Plaintiff's Monell claim fails to state a plausible basis for municipal liability.

### D. Plaintiff's Failure to Train Theory is Inadequately Pled.

Plaintiff also invokes a failure-to-train theory, alleging that the Town failed to train personnel on whistleblower protections, constitutional rights, and evidence preservation. (DE 10, ¶ 131(e)). These allegations are insufficient to state a plausible failure-to-train claim under *Monell*.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 179 L. Ed. 2d 417 (2011) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")). A viable failure-to-train claim requires factual allegations showing: (1) a specific deficiency in training; (2) deliberate indifference by the municipality, typically demonstrated by a pattern of similar constitutional violations; and (3) a causal link between the training deficiency and the constitutional injury. *Connick*, 563 U.S. at 61–62 .

The Amended Complaint does not identify what training existed, how it was deficient, how policymakers were on notice of recurring violations, or how any training deficiency caused

4921-6835-5746, v. 2

Plaintiff's alleged harm. Instead, Plaintiff offers only a conclusory recitation of failure-to-train elements, which is insufficient under *Iqbal* and *Twombly*.

### E.  Plaintiff Fails to Allege Municipal Causation.

Even assuming arguendo that Plaintiff had adequately identified a policy or custom, he must still plausibly allege that it was the "moving force" behind the alleged constitutional violations. *Monell*, 436 U.S. at 694.

Plaintiff's causation allegations amount to labels and conclusions that the Town's policies and practices "were the moving force" behind his injuries. (DE 10, ¶¶ 95, 141). The Amended Complaint does not bridge the gap between abstract municipal practices and the specific employment actions taken against Plaintiff. Without concrete facts linking a particular policy decision to the alleged retaliation, Plaintiff fails to meet the causation requirement.

### VI.    The Intracorporate Conspiracy Doctrine Still Bars Plaintiff's Civil Conspiracy Claim.

First, Plaintiff's civil conspiracy claim against Defendants Quinn, Jerome, and Carney must fail since he has failed to plead a claim under § 1983, as noted above. There must be an underlying Constitutional deprivation to prevail on a conspiracy claim under § 1983. *See Nance v. City of Albemarle, North Carolina*, 520 F.Supp.3d 758, 801 (M.D.N.C. 2021) (dismissing § 1983 civil conspiracy claim where plaintiffs "failed to plausibly allege" constitutional deprivations); *Byrd v. Hopson*, 265 F.Supp. 2d 594, 599 (W.D.N.C. 2003) (Under North Carolina law, "there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct.").

Even assuming arguendo the existence of an underlying constitutional violation, Plaintiff does not plead facts sufficient to satisfy the "weighty burden" required to state a § 1983 conspiracy claim. *See Penley v. McDowell Ctys. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017). To state a cognizable conspiracy claim, Plaintiff must allege specific facts plausibly showing that Defendants

4921-6835-5746, v. 2

"acted jointly in concert," reached a "meeting of the minds," and committed an overt act in furtherance of an unlawful objective. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421-22 (4th Cir. 1996). "[R]ank speculation and conjecture" are insufficient. *Id.* at 422.

The Amended Complaint does not plausibly allege such an agreement. Plaintiff relies on conclusory assertions that Defendants acted with a shared retaliatory motive, but continues to plead no specific facts identifying when, where, or how any Defendant entered into an agreement to violate Plaintiff's constitutional rights.

The intracorporate conspiracy doctrine remains fatal to Plaintiff's conspiracy claim. Under settled Fourth Circuit law, a municipality and its officers or employees acting within the scope of their official duties constitute a single legal entity incapable of conspiring with itself. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013); *Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011). As the Supreme Court has explained, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769–71 (1984)). Put simply, "a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986).

Here, Plaintiff's own allegations confirm that the challenged conduct consists of personnel decisions, internal investigations, administrative actions, and policy responses undertaken by Town officials acting under color of state law and within their official roles. (DE 10, ¶¶ 16-18, 64-71, 81-87, 107-110, 144-145). Such conduct falls squarely within the intracorporate conspiracy doctrine. Recognizing this defect, Plaintiff now attempts to evade the intracorporate conspiracy doctrine by alleging—without factual support—that the conspiracy "extended beyond purely

4921-6835-5746, v. 2

internal Town actors" and involved unspecified "non-Town participants." (DE 10, ¶ 147). This allegation fails for at least three reasons.

First, Plaintiff does not identify any specific non-Town actor who purportedly entered into an agreement with Defendants to violate his constitutional rights. Nor does he plead facts showing what role any such actor played, what agreement was reached, or how that agreement furthered an unlawful objective. Second, conclusory invocations of "outside actors" or "coordination" are insufficient as a matter of law to overcome the intracorporate conspiracy doctrine. Third, even as pled, Plaintiff's allegations describe actions taken in the context of an internal employment investigation and related administrative processes. The participation of investigators, attorneys, or consultants retained by the Town—acting within the scope of their professional engagement— does not convert internal municipal decision-making into an actionable conspiracy. *See Painter's Mill,* 716 F.3d at 352–53.

Allowing Plaintiff to avoid dismissal based on vague references to unidentified outside actors would eviscerate the intracorporate conspiracy doctrine entirely.

## VII.    Plaintiff is not entitled to Declaratory or Injunctive Relief.

Finally, Plaintiff's claim for declaratory or injunctive relief fails because Plaintiff lacks Article III standing and alleges no ongoing or imminent violation of federal law. Plaintiff's allegations concern discrete past employment actions that concluded with his separation from employment. (DE 10, ¶¶ 67–87). Past exposure to alleged misconduct, without a real and immediate threat of recurrence, is insufficient to support prospective equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *see also Lancaster v. Sec'y of Navy*, 109 F.4th 283, 290 (4th Cir. 2024). "Abstract injury is not enough." *Id.* The same immediacy and reality requirements govern requests for declaratory relief. *See Preiser v. Newkirk*, 422 U.S. 395, 402,

23

4921-6835-5746, v. 2

95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

Here, Plaintiff pleads a series of discrete employment events that allegedly occurred in 2024–2025, including administrative leave, an internal investigation, a termination recommendation, and his eventual separation from employment. (DE 10, ¶¶ 67–87). Plaintiff does not allege that he remains employed by the Town, that any investigation is ongoing, or that Defendants are likely to take future action against him. Alleged reputational effects or continuing dissatisfaction with past employment decisions do not constitute an ongoing constitutional violation. *See Preiser v. Newkirk*, 422 U.S. 395, 402 (1975).

Because Plaintiff seeks declarations concerning completed conduct and injunctive relief untethered to any imminent injury, his claim presents no live case or controversy and should be dismissed.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that their Motion to Dismiss be GRANTED and that each of Plaintiff's claims be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

This 16th day of April, 2026.

CRANFILL SUMNER LLP

BY:   /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Ariella Z. Walsh, NC Bar #55047
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
awalsh@cshlaw.com

4921-6835-5746, v. 2

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 16th day of April, 2026.

CRANFILL SUMNER LLP


BY:    /s/ *Jake W. Stewart*
         Jake W. Stewart, NC Bar #51157
         Ariella Z. Walsh, NC Bar #55047
         *Attorneys for Defendants*
         P.O. Box 30787
         Charlotte, NC 28230
         Telephone (704) 332-8300
         Facsimile (704) 332-9994
         jstewart@cshlaw.com
         awalsh@cshlaw.com

4921-6835-5746, v. 2

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this day electronically filed the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

C. Christopher Adkins
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, NC 28078
Telephone: (704) 274-5677
Facsimile: (877) 208-7577
Emails: chris@huntersvillelawyer.com
*Attorney for Plaintiff*

Christerfer R. Purkey
Rech Law, P.C.
18125 W. Catawba Avenue
Cornelius, NC 28031
Telephone: (704) 228-2790
Facsimile: (704) 909-7410
Email: cpurkey@rechlaw.com
*Attorney for Plaintiff*

This the 16th day of April, 2026.

**CRANFILL SUMNER LLP**

BY:     /s/ *Jake W. Stewart*
        Jake W. Stewart, NC Bar #51157
        Ariella Z. Walsh, NC Bar #55047
        *Attorneys for Defendants*
        P.O. Box 30787
        Charlotte, NC 28230
        Telephone (704) 332-8300
        Facsimile (704) 332-9994
        jstewart@cshlaw.com
        awalsh@cshlaw.com

4921-6835-5746, v. 2