# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NORTH CAROLINA

### Statesville Division

JEFFREY NOBLE,
      Plaintiff,

v.                            Civil Action No. 5:26-cv-00006

TOWN OF MOORESVILLE, NORTH CAROLINA;
CHRISTOPHER QUINN,
in his official and individual capacities;
TRACEY JEROME, in her official capacity;
and CHRIS CARNEY, in his individual capacity,
      Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**NOW COMES** the Plaintiff, Jeffrey Noble (hereinafter Plaintiff), Pursuant to Local Civil Rule 7.1 of the Western District of North Carolina and Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

### INTRODUCTION

This case originates from Defendants' retaliation against Plaintiff Jeffrey Noble after Plaintiff reported and refused to participate in the suppression or minimization of evidence concerning misconduct by the Mayor of Mooresville, Chris Carney. The Amended Complaint alleges that Plaintiff, during his employment in the Town of Mooresville's Innovation and Technology Department, discovered municipal surveillance

footage, badge-access logs, alarm activity, and related records showing irregular and arguably unpermitted after-hours use of Town Hall by Mayor Chris Carney. (Am. Comp. ¶¶ 1–5, 21–46). Plaintiff reported those matters internally and, when requested to do so refused to mischaracterize, conceal, alter, delete, omit, or otherwise suppress related municipal evidence. (*Id*. ¶¶ 43–46, 97–102).

Defendants' motion depends on a competing factual narrative. Defendants ask this Court to treat the Town's conduct as a neutral investigation into an alleged leak, to disregard and further take Plaintiff's allegations of pretext and retaliatory motive as untrue, to isolate administrative leave from the broader pled retaliatory course of conduct, and to resolve factual questions concerning constructive discharge, publication of stigmatizing accusations, policymaker involvement, and conspiracy. That is not the Rule 12 standard as illustrated throughout this memorandum of law.

Taking the Amended Complaint's allegations as true, Plaintiff has plausibly pled: 1) First Amendment retaliation for reporting matters of significant public concern and refusing to assist in concealment of misconduct by local town and political figures; 2) a targeted and calculating deprivation of protected liberty interests through false stigmatizing accusations made in connection with Plaintiff's forced separation without a meaningful name-clearing hearing; 3) municipal liability based on final policymaker involvement, ratification, and unconstitutional customs and practices; 4) a well pled civil conspiracy to violate Plaintiff's constitutional rights; and 5) a clear entitlement to declaratory relief for continuing constitutional consequences. Accordingly, Defendants' Motion to Dismiss should be denied.

**STATEMENT OF FACTS**

Plaintiff Jeffrey Noble was employed by the Town of Mooresville in its Innovation and Technology Department. (Am. Comp. ¶ 14). Plaintiff's responsibilities included informational technology administration and support of Town Hall access-control systems, badge credentials, surveillance systems, and related technology infrastructure. (*Id*. ¶¶ 21–23). The standard and ordinary duties of the Plaintiff required him to identify and flag technical and security irregularities; they did not require him to investigate, suppress, evaluate, or conceal potential misconduct by elected officials. (*Id*. ¶ 24).

On or about October 7, 2024, an IT ticket was created requesting modifications to Town Hall door-access permissions. (*Id*. ¶ 26). Plaintiff, acting in accordance with his ordinary employment duties, reviewed badge-access logs and surveillance footage. (*Id*. ¶¶ 26–29). On or about October 15, 2024, Plaintiff identified irregular after-hours entries associated with Mayor Chris Carney's credentials. (*Id*. ¶ 28). The footage showed Mayor Carney entering Town Hall after midnight with an adult woman, later identified as a Town-affiliated consultant. *Id*. ¶ 29. The Mayor remained in Town Hall for an extended period of time, long after the closure of Town Hall, triggering security alarms, and moving throughout the facility in circumstances implicating municipal property, security, public integrity, and evidence-preservation concerns. (*Id*. ¶¶ 29–42).

On or about October 15, 2024, Plaintiff reported the findings to appropriate internal channels, including his supervisory personnel. (*Id*. ¶¶ 43–46). Plaintiff did not provide surveillance footage, access-control records, or any related municipal evidence to any media outlet. (*Id*. ¶ 41). Instead, Plaintiff refused to mischaracterize, minimize, conceal,

alter, delete, omit, or acquiesce in suppression of the footage, access-control records, alarm activity, CAD-related information, or related evidence. (*Id.* ¶¶ 98–102).

After Plaintiff's report, Town leadership, in their initial campaign against the Plaintiff, restricted Plaintiff's access to the footage and limited who could be informed about the Mayor's afterhours incident. (*Id.* ¶ 47). Mayor Carney then took a multi-week leave of absence. (*Id.* ¶ 50). The Amended Complaint further alleges that Town officials participated in withholding, removing, omitting, or limiting responsive materials after media requests for Town Hall surveillance footage and related records. (*Id.* ¶¶ 51–58). Town officials then resisted independent scrutiny and failed to seek an independent SBI investigation despite reasons and public calls to do so. (*Id.* ¶¶ 59–63).

Defendants shifted scrutiny away from the underlying misconduct and toward Plaintiff by falsely accusing him of leaking confidential information, even though they had no information proving Plaintiff had done so. (*Id.* ¶¶ 64–80). Plaintiff was placed on administrative leave, subjected to employment-based restrictions, employment isolation, and compelled to attend a coercive administrative interview conducted by an outside investigator with police presence with the threatening presence of a K-9 unit. (*Id.* ¶¶ 64–76). The leak accusation was false, pretextual, designed to discredit him, justify the Towns unlawful and intrusive investigation, and to redirect scrutiny away from politically damaging conduct by a senior town elected official. (*Id.* ¶¶ 4–6, 73–80).

Plaintiff was later informed on or about July 3rd, 2024, by Defendant Quinn that termination of his employment was being recommended. (*Id.* ¶ 81). Plaintiff has been falsely accused, placed on administrative leave, stripped of access and duties, isolated,

subjected to a coercive investigation, and given no realistic path back to employment. (*Id*. ¶¶ 81–87). And shockingly so, was being recommended for termination after such stigmatizing actions by Town senior officials. *Id*. Plaintiff's separation was in no way voluntary, and the conduct by senior town officials constituted constructive discharge. (*Id*. ¶¶ 84–87).

Defendants made, adopted, repeated, endorsed, recorded, and disseminated false and stigmatizing accusations that Plaintiff leaked confidential information and engaged in misconduct warranting adverse employment action. (*Id*. ¶¶ 115–127). As alleged throughout the Amended Complaint, the accusations were so stigmatizing that they impugned Plaintiff's honesty, loyalty, professional integrity, and fitness for employment in municipal technology, systems administration, security infrastructure, and related fields. (*Id*. ¶¶ 117–120). Plaintiff was never provided a constitutionally adequate name-clearing hearing, nor was any name-clearing procedure ever meaningfully provided to him. (*Id*. ¶¶ 123–127).

The Town's conduct reflected municipal policies, customs, practices, decisions, omissions, ratified by final policymakers. (*Id*. ¶ 88–95, 130–142). This practice of shielding politically connected officials, further suppressing evidence of elected Town official wrongdoing, retaliating against employees who report misconduct involving Town leadership, and using police, administrative, and outside investigative resources to punish employees rather than neutrally investigate reflected a targeted course of conduct to attack the Plaintiff's employment. (*Id*. ¶¶ 88–95, 130–142). Adverse treatment of other Town employees who had raised similar concerns regarding the same incident, records, evidence handling, or misconduct involved senior Town leadership as well. (*Id*. ¶¶ 8–9, 61–62, 94).

## STANDARD OF REVIEW

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. Subject-matter jurisdiction is a threshold issue because it concerns the Court's power to hear the case. The plaintiff has the burden of establishing whether subject-matter jurisdiction exists. See *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(1) motion may present either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, defendant must demonstrate that the complaint has failed to allege facts sufficient to establish subject-matter jurisdiction. *Id.* In those limited circumstances, the Court is required to accept the complaint's well-pleaded allegations as true and affords the plaintiff the same procedural protections he would receive under Rule 12(b)(6). *Id.*

In a factual challenge, a defendant is required to dispute the truth of the jurisdictional allegations themselves. *Id.* In those circumstances, the Court may consider evidence outside the pleadings without converting the motion into one for summary judgment. *Id.* As here, "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute," a presumption of truthfulness should attach to the plaintiff's allegations." *Id.* at 193.

Here, to the extent Defendants challenge Plaintiff's standing to seek declaratory or injunctive relief, that challenge should be treated as facial because it rests on the allegations of the Amended Complaint, and accordingly, the Court therefore should accept Plaintiff's allegations as true and draw reasonable inferences in his favor.

A motion under Rule 12(b)(2) challenges the Court's personal jurisdiction over a defendant. When a court decides a Rule 12(b)(2) motion without conducting an evidentiary hearing, the plaintiff is required to only make a prima facie showing of personal jurisdiction. In determining whether this prima facie showing has been made, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and also draw the most favorable inferences for the existence of jurisdiction. See *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Personal jurisdiction can be established via a showing that the defendant has sufficient minimum contacts with the forum such that exercising jurisdiction comports with due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). Presently before Court, the individual Defendants are alleged to have acted under color of state law in North Carolina, in connection with municipal employment decisions made in North Carolina, municipal records, and alleged constitutional violations occurring in North Carolina, Plaintiff's allegations are sufficient at the pleading stage to establish personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); Am. Comp. ¶¶ 16–19, 64–87, 97–127.

Accordingly, Defendants' Rule 12(b)(2) challenge should be denied as the Amended Complaint alleges Defendants were Town of Mooresville officials or employees who acted in North Carolina, under color of North Carolina municipal authority, and caused injuries to Plaintiff in North Carolina.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint only. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). The Court is required to accept as true all well-pleaded factual allegations and draw all reasonable inferences in the Plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). A complaint is only required to contain such sufficient factual matters to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Probability is not a prerequisite to plead plausibility; and the standard only asks for more than a sheer possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Court should not at the 12(b)(6) stage of this case resolve factual disputes, weigh competing inferences, or credit Defendants' asserted justification over Plaintiff's well-pleaded allegations. *Kensington Volunteer Fire Dep't*, 684 F.3d at 467; *Edwards*, 178 F.3d at 243–44.

The Amended Complaint passes such scrutiny under the challenges of Defendant's elected requested relief under Rule 12(b)(1), 12(b)(2), and 12(b)(6).

**ARGUMENT**

**I. Plaintiff Plausibly States a First Amendment Retaliation Claim.**

To plead First Amendment retaliation by a public employer, Plaintiff must allege that: 1) Plaintiff spoke as a citizen on a matter of public concern; 2) Plaintiff's interest in

speaking outweighed the government's interest in efficient operations; and 3) Plaintiff's protected speech was a substantial or but-for cause of the retaliatory action. See *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316–18 (4th Cir. 2006); *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004). The Amended Complaint satisfies this under the 12(b)(6) pleading standard.

### *A. Plaintiff's reports concerned matters of public concern.*

Defendants attempt to reduce Plaintiff's speech to an internal employment matter. Clearly, this was not the case. The Amended Complaint alleges the opposite. Plaintiff reported irregular after-hours use of a secured government facility, misuse of municipal property, building-security issues, alarm activity, police-response records, potential official misconduct by the sitting Mayor, and possible suppression or selective handling of municipal evidence. (Amend. Comp. ¶¶ 1–6, 28–46, 51–63, 97–102). Those are matters of public concern.

The Fourth Circuit has repeatedly recognized that speech exposing governmental misconduct, abuse of public office, public safety concerns, and official wrongdoing occupies the core of First Amendment protection. In *Hunter v. Town of Mocksville*, 789 F.3d 389, 396–397 (4th Cir. 2015), the Fourth Circuit held that police officers who reported governmental misconduct engaged in protected speech even though they were government employees. Likewise, in *Durham v. Jones*, 737 F.3d 291, 299–303 (4th Cir. 2013), the Fourth Circuit recognized protection for speech reporting official misconduct even though the reporting parties were government employees. And in *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 353–354 (4th Cir. 1999), the Court recognized speech

concerning public safety and the functioning of public services can constitute speech on matters of public concern.

Plaintiff's reports were not personal workplace grievances. They concerned the conduct of a high-ranking elected official, the use of public property, the integrity of municipal records, and public accountability. That is precisely the kind of speech the First Amendment protects.

### B. Plaintiff plausibly alleges that he spoke outside his ordinary job duties.

Defendants suggest that Plaintiff's speech was unprotected because he discovered the information through his employment. That is not the test, and that point is well illustrated through current jurisprudence. The standard inquiry is whether Plaintiff spoke pursuant to his ordinary professional duties, not whether his employment provided access to the information. The Amended Complaint shows Plaintiff's ordinary duties included administration and support of access-control and surveillance systems, but did not include investigating, reporting, evaluating, suppressing, or concealing potential misconduct by elected officials. (Amend. Comp. ¶¶ 21–24).

Plaintiff's protected activity included reporting misconduct; as well as refusing to participate in concealment or controlling, altering, or deleting municipal evidence. (*Id*. ¶¶ 97–102). Whether that speech fell within Plaintiff's ordinary duties is a practical, fact-intensive question. At the pleading stage, Plaintiff's allegations must be accepted as true and construed in his favor.

*Hunter* is instructive. In that case public employees did not lose First Amendment protection because their speech was learned through government employment. *Hunter*, 789

F.3d 389. Plaintiff went beyond routine IT work by reporting and refusing to conceal politically sensitive misconduct and raising poignant and significant evidence-integrity concerns. That is sufficient under the authority cited and the long-standing pleading standard established by our Fourth Circuit.

### C. Plaintiff plausibly alleges materially adverse retaliatory action.

Defendants isolate administrative leave and an internal investigation and argue that neither is actionable. Plaintiff has pled a broader retaliatory campaign: false accusations of leaking confidential information, administrative leave, restriction of employment duties and employment related systems access, professional isolation, coercive and punitive investigative tactics, reputational smearing, repeated progression toward termination, and forced separation from employment. (Amend. Comp. ¶¶ 64–87, 103–109).

The Fourth Circuit does not limit First Amendment retaliation claims to formal termination. In *Ridpath*, the court recognized that retaliatory action may include employment consequences that materially alter responsibilities, damage professional standing, or would deter a person of ordinary firmness from exercising protected rights. *Ridpath*, 447 F.3d at 316–17. *Love-Lane* likewise supports retaliation liability where the adverse employment action is reassignment or other materially adverse treatment rather than only discharge. *Love-Lane*, 355 F.3d 766, 779–80.

Plaintiff has pled not only a failure to conduct a neutral investigation by senior town officials, but a retaliatory sequence designed to discredit him and force him out. Whether Defendants' actions were materially adverse, retaliatory, or justified is a factual question unsuitable for dismissal at the pleading stage.

### D. Plaintiff plausibly alleges causation.

Defendants knew of Plaintiff's protected reporting and refusal to participate in concealment. (Amend. Comp. ¶ 102). Plaintiff as further pled that, following and because of that protected activity, Defendants subjected him to adverse actions. (*Id.* ¶¶ 103–109). The alleged timeline contained throughout the Amended Complaint supports causation: Plaintiff reported the Mayor-related incident; Town leadership restricted access to the footage; Mayor Carney took leave; the Town resisted disclosure and independent scrutiny; Plaintiff was then accused of leaking, placed on administrative leave, subjected to a coercive investigation, and moved toward termination. (*Id.* ¶¶ 43–87).

Defendants' alternative explanation—that Plaintiff was investigated because of a leak accusation—does not defeat causation because Plaintiff alleges the accusation was false and pretextual. (*Id.* ¶¶ 4–6, 73–80). Pretext, retaliatory motive, and causation are factual issues. Plaintiff's allegations plausibly support the inference that his protected activity was the cause of Defendants' retaliatory actions.

## II. Plaintiff Plausibly States a Fourteenth Amendment Stigma-Plus Due Process Claim.

A public employee plaintiff makes a protected liberty-interest claim when the plaintiff alleges that charges: 1) placed a stigma on his reputation; 2) were made public by the employer; 3) were made in conjunction with termination, demotion, or comparable alteration of legal status; and 4) were false. *Sciolino v. City of Newport News, Va*., 480 F.3d 642, 646 (4th Cir. 2007). Plaintiff has more than sufficiently pled enough throughout the Amended Complaint to satisfy each element.

### A. The alleged accusations are stigmatizing.

As pled throughout the Amended Complaint, Defendants made, adopted, repeated, endorsed, recorded, and disseminated false accusations that Plaintiff leaked confidential information and engaged in misconduct warranting adverse employment action. (Am. Comp. ¶ 115). Those accusations directly impugn Plaintiff's honesty, loyalty, discretion, and professional integrity. Plaintiff worked in municipal technology, systems administration, surveillance, and access-control functions. Accusing such an employee of leaking confidential municipal information is plainly stigmatizing and bears directly on fitness for future employment, especially advancement in the current town employment he so occupied during the time of the adverse actions. (*Id*. ¶¶ 117–120).

### B. Plaintiff adequately pleads publication under Sciolino.

Defendants argue that the accusations were confined to an internal investigation. That misstates the pleading and the law. Plaintiff alleges that the accusations were not confined to a private investigative setting; rather, they were incorporated into investigative materials, personnel records, disciplinary documents, or other records that may foreseeably be accessed, relied upon, or disclosed in connection with background checks, reference inquiries, or future employment opportunities. (Am. Comp. ¶ 118). Plaintiff further alleges that the leak accusation was communicated beyond a single private interview to supervisory personnel, administrative officials, law-enforcement personnel, and related professional circles, foreseeably impairing his reputation and employability. (*Id*. ¶ 119).

*Sciolino* is directly on point. The Fourth Circuit held that a plaintiff may satisfy the publication requirement by alleging a likelihood that prospective employers or the public will inspect the stigmatizing information in the personnel file. *Sciolino*, 480 F.3d at 650.

Therefore, Plaintiff need not allege that every prospective employer has already seen the stigmatizing materials. *Sciolino* expressly states the opposite and supports Plaintiff's well-pleaded complaint. *Id*. Accordingly, Plaintiff need only plausibly plead likely access or disclosure, which Plaintiff has clearly made those allegations throughout his Amended Complaint.

Defendants' reliance on personnel-record confidentiality under North Carolina law does not warrant dismissal. Confidentiality rules do not eliminate the pleaded likelihood of disclosure through reference checks, background investigations, internal communications, law-enforcement channels, litigation, or future employment inquiries. Nor do they defeat Plaintiff's allegation that the accusation already spread beyond a single private interview. Furthermore, the mere existence of this law does not mean that Defendant's did not violate such confidentiality in and of itself. The existence of one does not rule out the plausibility of the other.

## C. Plaintiff adequately pleads the "plus" element through forced separation and constructive discharge.

Defendants argue that Plaintiff was not formally terminated. The Amended Complaint alleges that Defendant Quinn informed Plaintiff that termination was being recommended, and that Plaintiff's separation was the foreseeable and intended result of Defendants' retaliatory actions. (Am. Comp. ¶¶ 81–87). Plaintiff also pleads constructive discharge in the alternative, alleging that Defendants deliberately made his working conditions and employment status so intolerable, coercive, and professionally ruinous that his separation could not in any way have been voluntary. (*Id*. ¶¶ 84–87).

A public employer cannot avoid due process by forcing an employee out while avoiding the word "termination." Whether Plaintiff's separation was voluntary or coerced is a factual question. At the pleading stage, the allegations of progression toward termination and constructive discharge satisfy the "plus" requirement.

### D. Plaintiff alleges denial of a meaningful name-clearing hearing.

Plaintiff alleges that Defendants made, recorded, endorsed, and disseminated false stigmatizing accusations in connection with his removal from employment without providing constitutionally adequate process or a meaningful name-clearing opportunity. (Am. Comp. ¶¶ 123–127). Under *Sciolino*, that states a due process claim. Plaintiff is entitled to discovery on the contents of the investigative materials, the scope of dissemination, the Town's personnel practices, and the availability and adequacy of any name-clearing procedure.

## III. The Individual Defendants Are Not Entitled to Qualified Immunity at the Pleading Stage.

Qualified immunity should be denied where, accepting the complaint's allegations as true, the plaintiff plausibly alleges violation of a clearly established constitutional right. Defendants' qualified-immunity argument depends on defining the right at a narrow interpretation of the events, in lieu of the supposed right to be free from administrative leave or internal investigation. Plaintiff alleges far more throughout his Amended Complaint.

The Amended Complaint alleges that Plaintiff reported matters of public concern involving official misconduct, misuse of municipal property, security irregularities, and

evidence integrity; that Defendants knew of this protected activity; that Defendants falsely accused him of leaking confidential information; that Defendants stripped him of access and duties, isolated him, subjected him to coercive investigative tactics, moved toward termination, and forced his separation; and that Defendants maintained and disseminated stigmatizing accusations without a meaningful name-clearing hearing. (Am. Comp. ¶¶ 1–10, 43–87, 97–127).

It was clearly established well before the events alleged here that public officials may not retaliate against public employees for protected speech on matters of public concern. *Hunter*, 789 F.3d 389; *Durham*, 737 F.3d 291; *Ridpath*, 447 F.3d 292; *Love-Lane*, 355 F.3d 766. It was also clearly established that a public employer may not place false stigmatizing charges in circumstances likely to damage future employment opportunities without affording a meaningful name-clearing opportunity. *Sciolino*, 480 F.3d 642.

Defendants qualified-immunity arguments turn on factual disputes: what Plaintiff's duties were, whether the leak accusation was pretextual, who participated in the retaliation, whether Defendants caused or approved the adverse actions, whether the stigmatizing accusations were disseminated or likely to be disclosed, and whether Plaintiff was constructively discharged. Those issues cannot be resolved on a motion to dismiss and instead should be reserved for discovery and later summary judgment if applicable.

### IV. Plaintiff Plausibly Pleads Municipal Liability Against the Town.

Defendants argue that Plaintiff pleads only a single incident and seeks respondeat superior liability. The Amended Complaint alleges otherwise.

A municipality may be liable under 42 U.S.C. § 1983 where a constitutional violation is caused by an official policy, custom, practice, decision of a final policymaker, or ratification by final policymakers. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986); *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533–34 (4th Cir. 2022).

Plaintiff has pled that the Town or Mooresville's unconstitutional actions were undertaken pursuant to municipal policies, customs, practices, and ratification by final policymakers. (Am. Comp. ¶¶ 88–95, 130–142). Those alleged customs included shielding politically connected officials, restricting or suppressing evidence reflecting official wrongdoing, retaliating against employees who report misconduct involving Town leadership, and using police, administrative, and outside investigative resources to discredit and punish employees who raise protected concerns. (*Id.* ¶¶ 88–95, 133).

Plaintiff has also clearly pled that these practices were not isolated, random, or accidental, but were reflected in the Town's handling of the October 2024 incident. The Town's public-records response, its resistance to independent investigation, its treatment of Plaintiff, and related adverse treatment of other Town employees who raised concerns regarding the same incident, related records, evidence handling, or misconduct involving senior Town leadership. (*Id.* ¶¶ 7–10, 59–63, 88–95, 134–139).

Further, Plaintiff has pled final policymaker involvement on behalf of Town actors. Defendant Jerome was the Town Manager and allegedly exercised final or effectively final authority over personnel decisions affecting Plaintiff's employment. (Am. Comp. ¶ 18). Plaintiff alleges that the Town's constitutional violations were caused by decisions,

omissions, and ratification by final policymakers. (*Id*. ¶¶ 88–95, 130–142). Under *Pembaur* and *Starbuck*, such allegations are sufficient at the pleading stage, and Plaintiff has pled more than enough at this juncture to survive Rule 12(b)(6) scrutiny.

Defendants' multiple arguments that the Amended Complaint describes only one employment dispute narrowly tailors the pleading more than the current Rule 12(b)(6) scrutiny standard would permissibly allow. As cited throughout this writing, Plaintiff has pled a municipal response to politically damaging evidence, suppression and selective handling of records, retaliatory use of investigative resources, similar treatment of other employees, and final policymaker ratification. These allegations plausibly plead that municipal policy or custom was the moving force behind Plaintiff's injuries.

### V. Plaintiff Plausibly Pleads Individual-Capacity Liability Against Mayor Carney.

Defendants argue that the claims against Mayor Carney fail because North Carolina law vests formal employment authority in the Town Manager rather than the Mayor. That argument misses the point of this suit entirely. Section 1983 liability is not limited to the official who signs a termination letter. An individual defendant may be liable where he personally participates in, causes, encourages, influences, approves, or conspires in unconstitutional conduct. See generally *Ashcroft v. Iqbal*, 556 U.S. 662, (2009); and *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, (4th Cir. 2022).

The Amended Complaint as pled alleges that the underlying incident involved Mayor Carney personally, that Plaintiff's reporting exposed politically damaging conduct by Mayor Carney, and that Mayor Carney had a personal and official interest in suppressing scrutiny of the incident. (Am. Comp. ¶¶ 28–42, 50, 109). Plaintiff further alleges that

Mayor Carney influenced, encouraged, participated in, or benefited from the retaliatory actions taken against Plaintiff after Town personnel reviewed and reported the relevant evidence. (*Id.* ¶ 109).

At the pleading stage, those allegations support a reasonable inference of personal involvement. Whether Mayor Carney in fact influenced the response, participated in the retaliatory course of conduct, or conspired with others is a discovery issue, not a basis for dismissal.

## VI. Plaintiff Plausibly Pleads Civil Conspiracy.

To state a § 1983 conspiracy claim, Plaintiff must allege that Defendants acted jointly in concert, reached an agreement or meeting of the minds to violate constitutional rights, and committed overt acts in furtherance of the conspiracy. *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421–23 (4th Cir. 1996). Plaintiff satisfies that standard.

The Amended Complaint alleges that Defendants reached an agreement, understanding, or meeting of the minds to retaliate against Plaintiff for protected activity and to deprive him of First and Fourteenth Amendment rights. (Am. Comp. ¶¶ 144). The object of the conspiracy included suppressing or limiting access to evidence of misconduct by a politically connected official, shifting scrutiny away from that misconduct and toward Plaintiff, falsely accusing Plaintiff of leaking confidential information, using administrative and investigative processes to punish him, and forcing his separation from employment. (Id. ¶¶ 145–151). Plaintiff further alleges overt acts, including restricting access to evidence, making or adopting false accusations, placing Plaintiff on

administrative leave, subjecting him to coercive investigation, progressing toward termination, and denying a name-clearing opportunity. (Id. ¶¶ 64–87, 145–151).

Defendants' intracorporate-conspiracy argument is premature. Plaintiff has pled that Defendants acted with personal and political motives to protect a politically connected official, suppress scrutiny, and punish Plaintiff. (Am. Comp. 10 ¶¶ 1–10, 88–95, 143–151). Plaintiff also pled coordination with non-Town participants and other participating actors acting under color of state law. (*Id.* ¶¶ 143, 147). Whether all alleged conduct occurred within the legitimate scope of municipal employment, whether Defendants acted from an independent personal stake, and whether non-Town actors participated are factual questions. Accordingly, those factual questions are not relevant for weighing under a Rule 12(b)(6) standard and should be reserved for discovery and later summary judgment practice if appropriate.

Moreover, Defendants' argument that the conspiracy claim fails because there is no underlying constitutional violation fails for the reasons stated above. Plaintiff has plausibly pleaded First Amendment retaliation and a Fourteenth Amendment stigma-plus due process violation. The conspiracy claim should therefore proceed.

## VII. Plaintiff's Claims for Declaratory and Injunctive Relief Are Properly Pleaded.

Defendants contend that Plaintiff seeks relief only for past conduct. The Amended Complaint alleges continuing consequences. Plaintiff alleges ongoing maintenance of false and stigmatizing accusations in municipal records, the absence of a constitutionally adequate name-clearing process, continuing impairment of his professional reputation and employment opportunities, and ongoing risk that Defendants will publish, repeat, rely

upon, maintain without correction, or otherwise give effect to the false accusations. (Am. Comp. ¶¶ 154–160).

Plaintiff seeks prospective relief tailored to those continuing injuries, including a meaningful name-clearing hearing, correction, removal, expungement, sealing, or annotation of false stigmatizing statements, and an order preventing Defendants from continuing to publish, repeat, rely upon, maintain without correction, or give effect to false accusations. *Id*. Such relief is directly connected to the stigma-plus due process claim recognized in *Sciolino*. *Sciolino*, 480 F.3d 642.

This is not a request for an advisory opinion about completed conduct. Plaintiff alleges continuing legal and practical consequences from Defendants' maintenance and dissemination of stigmatizing allegations and the continuing denial of a name-clearing process. Those allegations support standing and state a claim for prospective relief.

### VIII. Dismissal with Prejudice Would Be Improper.

Even if the Court were to identify any pleading deficiency, dismissal with prejudice would be unwarranted at this stage. Plaintiff has already pleaded detailed factual allegations supporting each claim. To the extent the Court concludes that any allegation requires further specificity—such as additional facts concerning dissemination, policymaker ratification, Mayor Carney's involvement, or non-Town conspirators— Plaintiff should be granted leave to amend under Rule 15(a)(2). The Fourth Circuit favors resolving cases on the merits and leave to amend should be freely given when justice so requires.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint in its entirety. In the alternative, Plaintiff requests leave to amend.

This the 30th day of April, 2026.

/s/ C. Christopher Adkins
C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

**CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE**

The undersigned submits that the foregoing Plaintiff's Memorandum of Law in Further Opposition to Defendant's Motion to Dismiss, was not:

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 30th day of April, 2026.

/s/ C. Christopher Adkins
C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this day electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Jake W. Stewart, NC Bar #51157
Kayla N. McDaniel, NC Bar #57995
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
mcdaniel@cshlaw.com

This the 30th day of April, 2026.

/s/ C. Christopher Adkins
C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com
